UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and<br><br>COMMONWEALTH OF PENNSYLVANIA,<br>by ATTORNEY GENERAL JOSH SHAPIRO,<br><br>     Plaintiffs,<br><br>     v.<br><br>AMERICAN FUTURE SYSTEMS, INC., a corporation, also d/b/a Progressive Business Publications, Progressive Business Publications, Inc., and Center for Education & Employment Law,<br><br>PROGRESSIVE BUSINESS PUBLICATIONS OF NEW JERSEY, INC., a corporation, also d/b/a Progressive Business Publications, Progressive Business Publications, Inc., and Center for Education & Employment Law,<br><br>INTERNATIONAL CREDIT RECOVERY, INC., also d/b/a ICR,<br><br>EDWARD M. SATELL, individually and as an officer of American Future Systems, Inc.,<br><br>RICHARD DIORIO JR., individually and as an officer of International Credit Recovery, Inc., and<br><br>CYNTHIA POWELL, individually and as a manager of International Credit Recovery, Inc.,<br><br>     Defendants. | **Case No. 2:20-cv-02266**<br><br><br><br>**FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |

Plaintiffs, the Federal Trade Commission ("FTC"), and the Commonwealth of

Pennsylvania, by Attorney General Josh Shapiro ("Commonwealth"), for their Amended

Complaint allege:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the Unordered Merchandise Statute, 39 U.S.C. § 3009, to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Unordered Merchandise Statute, in connection with Defendants' deceptive selling of and collection of payment for publication subscriptions.

2.      The Commonwealth brings this action pursuant to § 201-4 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") to restrain, by temporary or permanent injunction, any unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce declared unlawful by § 201-2(4)(i) through (xxi) of the UTPCPL and to obtain restitution and other relief, as this Court deems appropriate, pursuant to 73 P.S. § 201-1, *et seq*.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(2) and 15 U.S.C. § 53(b).

5.      The Court has supplemental jurisdiction over the Commonwealth's claims pursuant to 28 U.S.C. § 1367.

## PLAINTIFFS

6.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41–58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Unordered Merchandise Statute, 39 U.S.C. § 3009.

7.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the Unordered Merchandise Statute and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. § 53(b), 39 U.S.C. § 3009.

8.     The Commonwealth of Pennsylvania, through its Attorney General, is authorized to initiate proceedings in the public interest to restrain unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, seek restitution, and obtain any other relief, as this Court deems appropriate.  73 P.S. § 201-1, *et seq*.

## DEFENDANTS

9.     Defendant American Future Systems, Inc., also doing business as Progressive Business Publications, Progressive Business Publications, Inc., and Center for Education & Employment Law ("AFS"), is a Pennsylvania corporation, incorporated in March 1973, with its principal place of business at 370 Technology Drive, Malvern, Pennsylvania.  AFS transacts or has transacted business in this District and throughout the United States.

10.     Defendant Progressive Business Publications of New Jersey, Inc., also doing business as Progressive Business Publications, Progressive Business Publications, Inc., and Center for Education & Employment Law ("PBPNJ"), is a New Jersey corporation, incorporated in September 2005, with its headquarters or principal place of business at 370 Technology Drive, Malvern, Pennsylvania.  PBPNJ transacts or has transacted business in this District and throughout the United States.

11.     Defendant Edward M. Satell is the Chief Executive Officer and sole owner of AFS and PBPNJ.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of AFS and PBPNJ, including the acts and practices set forth in this Complaint. Defendant Satell, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

12.     Together, AFS, PBPNJ, and Satell shall be referred to as "the AFS Defendants."

13.     Defendant International Credit Recovery, Inc., also doing business as ICR ("ICR"), is a company with its principal place of business at 300 Main Street, Vestal, New York. ICR registered as a domestic business corporation with the state of New York in 1991, but has not had a valid corporate registration with the state of New York since 2004.  At the present time, it does not maintain a valid corporate registration in any state.  Despite not having a valid corporate registration, ICR continues its operations as a collection agency, continues to operate its premises, and holds itself out as a corporation.  ICR transacts or has transacted business in this District and throughout the United States.

14.     Defendant Richard Diorio Jr. is the Vice President of ICR.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ICR, including the acts and practices set forth in this Complaint.  Defendant Diorio, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

15.     Defendant Cynthia Powell is the manager of ICR.  At all times material to this Complaint, acting alone or in concert with others, she has formulated, directed, controlled, had

the authority to control, or participated in the acts and practices of ICR, including the acts and

practices set forth in this Complaint.  Defendant Powell, in connection with the matters alleged

herein, transacts or has transacted business in this District and throughout the United States.

16.    Together, ICR, Diorio, and Powell shall be referred to as "the ICR Defendants."

## COMMON ENTERPRISE

17.    Defendants AFS and PBPNJ (collectively, "AFS Corporate Defendants") have

operated as a common enterprise while engaging in the unlawful acts and practices alleged

below.  The AFS Corporate Defendants have conducted the business practices described below

through interrelated companies that have common ownership, officers, addresses, and business

functions.  Because the AFS Corporate Defendants have operated as a common enterprise, each

of them is jointly and severally liable for the acts and practices alleged below.  Defendant Satell

has formulated, directed, controlled, had the authority to control, or participated in the acts and

practices of the AFS Corporate Defendants that constitute the common enterprise.

## COMMERCE

18.    At all times material to this Complaint, Defendants have maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

### The AFS Defendants' Scheme

19.    Since at least 2014, the AFS Defendants have contacted organizations nationwide,

including businesses, schools, fire and police departments, and nonprofits, to offer a series of

business-related newsletters and school or employment law books that the AFS Defendants

publish.  The AFS Defendants market the publications under one of two trade names:

Progressive Business Publications or Progressive Business Publications, Inc., ("PBP") (newsletters) or the Center for Education & Employment Law ("CEEL") (newsletters and books). Each newsletter and book focuses on a specific topic, such as human resources, environmental compliance, or employment law. The AFS Defendants typically charge several hundred dollars for a PBP newsletter annual subscription or for the CEEL newsletter annual subscription with accompanying book.

20. The AFS Defendants contact the organizations via unsolicited telephone calls. If the AFS Defendants reach the organization's reception desk, the AFS Defendants do not disclose that they are selling subscriptions, but instead tell the receptionist that they have questions or have some information that they want to discuss or send. The AFS Defendants' scripted response to the question, "Are you selling something?" is to respond, "No, that's not it."

21. During this initial call, the AFS Defendants ask to speak with an employee who is responsible for the topic area addressed by the particular newsletter or book the AFS Defendants intend to market to the organization. Typically, when the AFS Defendants reach the employee, they state that they are sending a couple of copies of a PBP newsletter or a few copies of a CEEL newsletter and reference guide at "no risk" for the employee's review. The AFS Defendants typically inform the employee that an email with an offer in writing will be forthcoming, and give a cost associated with a subscription. The AFS Defendants promise to send some samples so "you can see if it is a good fit with what you're already doing there." The AFS Defendants typically further state that, while they hope the organization will become a paid subscriber, they know that they have to prove themselves first, and will be following up with the employee to see how he or she likes the sample. At the conclusion of their calls, the AFS Defendants typically ask the employee for the employee's month and date of birth "just to verify that I spoke to you."

The AFS Defendants do not ask if the employee is authorized to enter into financial obligations on behalf of his or her employing organization.  The AFS Defendants create the impression that they are sending free samples with no obligation and do not disclose that, in reality, they have enrolled the organization into the AFS Defendants' subscription service and they will charge the organization for the samples unless affirmative action is taken to cancel, including returning the CEEL book.

22.     The AFS Defendants send an invoice with or soon after the first or second issue of the PBP newsletter or CEEL combo, within 60 days of the initial sales call.  The invoice informs the organization that it has subscribed to the PBP newsletter or CEEL combo and that there is a "balance due" of several hundred dollars.  The invoice does not include any reference to or method for cancellation of the subscription to avoid a monetary obligation.  It does not include a telephone number or an email address for either AFS Corporate Defendant.

23.     The AFS Defendants continue to send additional iterations of the PBP or CEEL newsletter and additional invoices.  Subsequent invoices state that payment is overdue and that a 60-day cancellation period has expired.  Invoices may include a reference to an employee's birthdate as purported proof of the original order.  Invoices eventually threaten that the matter will be referred to a collection agency if left unpaid.

24.     About a year after the initial contact, organizations that pay for the CEEL book receive a postcard that must be sent back within a certain period of time to avoid the AFS Defendants' sending and billing for subsequent editions of the book.

25.     Consumers (both organizations and their employees) complain that they receive invoices to pay the AFS Defendants for PBP and CEEL newsletter and book subscriptions they did not order and never agreed to purchase.

26.    Consumers also complain that their cancellation requests are ignored and that the AFS Defendants claim to not have received their book returns.

27.    Around 1998, the Better Business Bureau ("BBB") placed an alert on AFS's publicly-available BBB profile, which remains there today, advising the public that AFS has an unsatisfactory business performance record due to a pattern of complaints alleging billing for unordered merchandise.   AFS sued the BBB for defamation based on the alert in 2001.  In 2004, the jury returned a verdict against AFS and in favor of the BBB, and judgment was entered accordingly.

28.    In 2013, the BBB issued another alert titled "Progressive Business Publications Continues to Receive Complaints Nationwide," advising that the AFS Corporate Defendants and ICR, one of the AFS Corporate Defendants' collection agencies, each have demanded payment for publications and newsletter subscriptions that were never ordered and, in many cases, never received.  The alert advised that some complainants said that the publications were marketed as free trials, but the complainants were nonetheless billed later.  The alert states that the BBB had received more than 2,400 complaints against Progressive Business Publications and more than 900 complaints against ICR.  The AFS Defendants were aware of this alert concerning itself and its collection agency at least as early as 2016.

29.    The BBB and many state Attorneys General forwarded complaints to the AFS Defendants claiming that consumers who were billed had no agreements with the AFS Defendants for paid subscriptions.

30.    Consumers who were billed also complained directly to the AFS Defendants that they had no agreements with the AFS Defendants for paid subscriptions.

31.     The AFS Defendants have known for years of a pattern of complaints against them regarding subscriptions that were never ordered, yet continue their nationwide scheme. Except for a period of time during which AFS changed the wording on its mailings due to a settlement in 1995 with the United States Postal Service related to billing for unordered business publications, the AFS Defendants have not changed their practices to address the pattern of complaints.

### Escalation to and Threats by the AFS Defendants' Collection Agency

32.     After approximately six months, the AFS Defendants send any unpaid accounts to one of two collection agencies. ICR is the collection agency for unpaid accounts relating to PBP publications, but not for CEEL publications. ICR collects from consumers throughout the United States, even though it is only licensed to collect in the State of Washington.

33.     The AFS Defendants have consistently been ICR's largest client, accounting for more than 99% of its revenue. ICR is a small company, consisting of fewer than 10 employees.

34.     Soon after receiving an account, the ICR Defendants send a letter to the contact for the account, which states, "Your past due account has been referred to us for immediate collection …. Action on your part is needed now!!!  Do not make the mistake of delaying any longer."

35.     ICR collectors then telephone consumers and demand payment of purported AFS Defendants' debts.

36.     The ICR Defendants have represented to consumers during the collection process that failure to pay the debt would impact their credit rating or would result in legal action or referral to collections.

37.    In truth and in fact, the ICR Defendants do not report the nonpayment of PBP accounts to credit bureaus and do not initiate litigation against or "refer to collections" consumers who do not pay.  The ICR Defendants also know that the AFS Defendants will not take further action to collect accounts turned over to the ICR Defendants.

38.    When ICR collectors represent that the organizations owe the purported AFS Defendants' debt, the ICR Defendants know or have reason to know that many of them had not agreed to any financial obligation for the AFS Defendants' publications.

39.    The ICR Defendants, although aware of BBB's 1998 alert, did not discuss it with the AFS Defendants and did not conduct any additional investigation or due diligence regarding the AFS Defendants.  The ICR Defendants have not changed their collection practices as a result of the alert.

40.    The ICR Defendants have known for years that AFS sued the BBB, but did not discuss the lawsuit with the AFS Defendants, did not find out the outcome of the lawsuit, and did not conduct any additional investigation or due diligence regarding the AFS Defendants.  The ICR Defendants have not changed their collection practices as a result of the lawsuit.

41.    In October 2009, the U.S. Department of Agriculture issued an alert, which remains readily available today, advising of a scam involving ICR's collection efforts for payment for publications that people claim not to have purchased.  The ICR Defendants became aware of the alert in 2009 or 2010, but did not discuss it with the AFS Defendants and did not conduct any additional investigation or due diligence into the AFS Defendants.  The ICR Defendants have not changed their collection practices as a result of the alert.

42.    In May 2016, the BBB notified ICR that it was concerned about a pattern of complaints against ICR concerning collection attempts for the AFS Defendants.  The notice

stated specifically that consumers advised the BBB that they had not ordered any publications from the AFS Defendants and therefore did not owe the debt that ICR was attempting to collect. ICR responded to the BBB's notice by stating that it was aware that the AFS Defendants' customers were upset about being billed for a product they felt they did not order and that they thought was free. Also around May 2016, the BBB placed an alert in its publicly-available profile on ICR, emphasizing the pattern of complaints and noting that ICR responds identically to many of them. This alert remains on the BBB's profile for ICR today.

43. The ICR Defendants did not discuss this alert with the AFS Defendants and did not conduct any additional investigation or due diligence regarding the AFS Corporate Defendants. The ICR Defendants have not changed their collection practices as a result of the alert.

44. Defendant ICR was the top generator of BBB complaints in its geographical region, many of which contained statements by consumers that they did not owe the AFS Corporate Defendants' alleged debts. The BBB generally forwarded these complaints to ICR, as did the New York and other state Attorneys General, who received similar complaints. Consumers also complained directly to the ICR Defendants during collection efforts that they had no agreements with the AFS Corporate Defendants for paid subscriptions.

45. The ICR Defendants did not discuss the pattern found in the complaints with the AFS Defendants and did not conduct any additional investigation or due diligence into the AFS Corporate Defendants. The ICR Defendants have not changed their collection practices as a result of the complaints.

46. Defendants Powell and Diorio met with the New York Attorney General's office several years ago to discuss complaints against ICR regarding collection of the AFS Corporate

Defendants' debts.  The ICR Defendants did not talk with the AFS Defendants about the meeting and did not conduct any further investigation or due diligence into the AFS Corporate Defendants.  The ICR Defendants have not changed their collection practices as a result of the meeting.

47.     The ICR Defendants do not review, compile data on, or convey to the AFS Defendants the reasons that consumers refuse to pay ICR on their alleged AFS Corporate Defendants' debts.

48.     In numerous instances, the ICR Defendants continue collection efforts even after consumers challenge the legitimacy of the purported debts, telling consumers that the AFS Corporate Defendants had told the consumer that the subscription would be for one year if not cancelled within a certain time period and that the employee's birthdate and email address were provided to the AFS Defendants as verification of the order.

**Individual Defendants**

49.     Defendant Satell is the founder, sole owner, and Chief Executive Officer of the AFS Corporate Defendants.  Satell has actual knowledge of the AFS Corporate Defendants' deceptive conduct, has been recklessly indifferent to its deceptiveness, or has had an awareness of a high probability of deceptiveness and intentionally avoided learning the truth.  Satell has knowledge of the longstanding pattern of complaints against the AFS Corporate Defendants, including the BBB alerts and complaints made directly to him.  For instance, an associate counsel for one of the largest retailers in the United States sent numerous cease and desist letters to the AFS Defendants, including directly to Satell, regarding the AFS Defendants' invoicing for alleged orders of publications.  The Assistant General Counsel for another company sent a letter directly to Satell regarding the fraudulent invoice his employer had received, and referred in that

letter to the "voluminous complaints that have been lodged against ICR and PBP for similar deceptive trade practices." Satell served as AFS's chief witness in its failed defamation lawsuit against the BBB, which was based on the BBB alert about AFS. Satell also was a defendant in a case brought by the United States Postal Service ("USPS"), in which the USPS alleged his involvement in a scheme in which AFS employees sent unsolicited invoices to businesses for publication subscriptions and for publications that were offered as free issues. As part of the settlement in that case, Satell and AFS agreed to revise the wording in their mailings for a specific period. That period has ended and the revisions no longer appear in the AFS Defendants' mailings.

50.     Defendant Powell started at ICR as a collector in the 1990s and became the manager within several years. She also performs collections for the AFS Defendants.

51.     Defendant Diorio also started at ICR in the 1990s. He performed collections for the AFS Defendants for approximately six years prior to becoming Vice President of ICR. Diorio makes corporate-level decisions for ICR.

52.     Defendants Diorio and Powell are both involved in the day-to-day operations and employee training for ICR. Diorio and Powell both set collection policies and procedures. They can both hear all of ICR's collection calls. Powell and Diorio both handle calls when a consumer wants to speak to a supervisor.

53.     Defendants Diorio and Powell are both aware of the longstanding pattern of consumer complaints relating to the collection of purported AFS Defendants debts for publications that consumers claimed they did not order. Powell is aware that consumers expressed to the BBB, to state Attorneys General, and directly to ICR collectors that consumers thought the AFS Defendants had offered them a free trial. Powell communicated directly with

the BBB regarding the BBB's report on and rating of ICR.  Diorio is aware that the majority of complaints were that the consumer never ordered a subscription or never received a publication.

54.     Defendants Diorio and Powell have actual knowledge of the AFS Defendants' and ICR's deceptive conduct, have been recklessly indifferent to its deceptiveness, or have had an awareness of a high probability of deceptiveness and intentionally avoided learning the truth.

55.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

56.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

57.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I
### AFS Defendants' Misrepresentation of Trial Offers
### (By Plaintiff Federal Trade Commission)

58.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of newsletters or books, the AFS Defendants represent, directly or indirectly, expressly or by implication, that consumers will receive publications for free with no risk.

59.     In truth and in fact, in numerous instances in which the AFS Defendants have made the representation set forth in Paragraph 58, consumers do not receive publications for free with no risk.

60.     Therefore, the AFS Defendants' representation as set forth in Paragraph 58 is false or misleading and constitutes deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II
### AFS Defendants' Failure to Disclose Negative Option Terms
### (By Plaintiff Federal Trade Commission)

61.     In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of newsletters or books, the AFS Defendants represent, directly or indirectly, expressly or by implication, that consumers will receive publications for free with no risk.

62.     In numerous instances in which the AFS Defendants make the representation set forth in Paragraph 61, the AFS Defendants fail to disclose or disclose adequately to consumers material terms and conditions of the offer, including;

   a. That consumers must cancel before a trial period ends to avoid charges for publication subscriptions;

   b. That consumers must return books to avoid charges for publication subscriptions;

   c. That acceptance of the offer will financially bind the consumer;

   d. That Defendants will automatically enroll consumers in continuity plans; and

   e. The steps consumers must take to cancel the continuity plans to avoid additional charges.

63.     In light of the representation described in Paragraph 61, the AFS Defendants' failure to disclose or disclose adequately the material information as set forth in Paragraph 62

constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act,

15 U.S.C. § 45(a).

**Count III**
**ICR Defendants' False or Unsubstantiated Representations to Induce Payment**
**(By Plaintiff Federal Trade Commission)**

64.     Through the means described in Paragraphs 32-48, the ICR Defendants represent,

directly or indirectly, expressly or by implication, that (a) the AFS Defendants' debts are valid;

(b) consumers have a legal obligation to pay the AFS Defendants' debts; and (c) failure to pay

will result in a negative impact on a credit rating or will result in legal action.

65.     In truth and in fact, in numerous instances in which the ICR Defendants make the

representations set forth in Paragraph 64, these representations are false or misleading or are not

substantiated at the time the representations are made.

66.     Therefore, the making of the representations as set forth in Paragraph 64

constitutes a deceptive act or practice, in or affecting commerce in violation of Section 5(a) of

the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE UNORDERED MERCHANDISE STATUTE**

67.     The Unordered Merchandise Statute, 39 U.S.C. § 3009, generally prohibits

sending unordered merchandise, unless such merchandise is clearly and conspicuously marked as

a free sample, or is sent by a charitable organization soliciting contributions.  The statute also

prohibits sending consumers dunning communications or bills for unordered merchandise.

68.      In accordance with Section (a) of the Unordered Merchandise Statute, 39 U.S.C.

§ 3009(a), a violation of the Unordered Merchandise Statute constitutes an unfair method of

competition and an unfair trade practice, in violation of Section 5(a)(1) of the FTC Act,

15 U.S.C. § 45(a)(1).

**Count IV**
**AFS Defendants' Sending and Billing for Unordered Merchandise**
**(By Plaintiff Federal Trade Commission)**

69.     In numerous instances, in connection with the marketing of newsletters and books, the AFS Defendants, who are not charitable organizations soliciting contributions, have shipped newsletters and books without the prior express request or consent of the recipients, and without identifying the merchandise as free samples.

70.      In numerous instances, in connection with the marketing of newsletters and books, the AFS Defendants have sent to the recipients of such merchandise one or more bills or dunning communications for such goods.

71.     Therefore, the AFS Defendants' acts or practices, as set forth in Paragraphs 69-70, violate the Unordered Merchandise Statute, 39 U.S.C. § 3009.

**<u>VIOLATIONS OF THE PENNSYLVANIA UNFAIR</u>**
**<u>TRADE PRACTICES AND CONSUMER PROTECTION LAW</u>**

72.     Section 201-2(3) of the UTPCPL defines "trade" and "commerce" to mean the "advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

73.     Defendants have engaged in trade and commerce in the Commonwealth of Pennsylvania by marketing, offering for sale, and selling newsletters and other publications to persons/entities within Pennsylvania and then seeking to collect monies from these persons/entities.

74.     Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of Section 201-2(4)

of the UTPCPL are declared unlawful, and whenever the Attorney General has reason to believe that any person is using or is about to use any method, act, or practice declared unlawful, Section 201-4 of the UTPCPL authorizes the Attorney General to bring an action against such person to restrain these methods, acts, or practices.

75.     The acts and practices described below constitute unfair methods of competition or unfair or deceptive acts or practices, as prohibited by Section 201-3 of the UTPCPL as defined by subclauses (ii), (iii), (v), (xvii), and (xxi) of Section 201-2(4) as follows:

a.  Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, 73 P.S. § 201-2(4)(ii);

b.  Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another, 73 P.S. § 201-2(4)(iii);

c.  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have, 73 P.S. § 201-2(4)(v);

d.  Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating:

i.   the identity of the seller;

ii.  that the purpose of the call is to sell goods or services;

iii. the nature of the goods or services; and

iv.   that no purchase or payment is necessary to be able to win a prize or participate if a prize promotion is offered…, 73 P.S. § 201-2(4)(xvii); and

e.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, 73 P.S. § 201-2(4)(xxi).

## Count V
## AFS Defendants' Deceptive Misrepresentations
## (By Plaintiff Commonwealth of Pennsylvania)

76.   In numerous instances, in the course of advertising, marketing, promoting, offering for sale, and selling newsletters and other publications, the AFS Defendants represent, directly or indirectly, expressly or by implication, that consumers will receive publications for free with no risk.

77.   In truth and in fact, in numerous instances in which the AFS Defendants have made the representation in Paragraph 76, consumers do not receive publications for free with no risk.

78.   The AFS Defendants have therefore engaged in unfair or deceptive acts or practices in violation of 73 P.S. § 201-3 and defined by 73 P.S. § 201-2(4)(ii), (iii), (v), and (xxi).

## Count VI
## AFS Defendants' Failure to Disclose Material Terms
## (By Plaintiff Commonwealth of Pennsylvania)

79.   In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of newsletters or other publications, the AFS Defendants represent, directly or indirectly, expressly or by implication, that consumers will receive publications for free with no risk.

80. In numerous instances in which the AFS Defendants make the representation set forth in Paragraph 79, the AFS Defendants fail to disclose or disclose adequately to consumers material terms and conditions of the offer, including:

    a. That consumers must cancel before a trial period ends to avoid charges for publication subscriptions;

    b. That consumers must return books and newsletters to avoid charges for publication subscriptions;

    c. That acceptance of the offer will financially bind the consumer;

    d. That Defendants will automatically enroll consumers in continuity plans; and

    e. The steps consumers must take to cancel the continuity plans to avoid additional charges.

81. In other instances, the AFS Defendants do not in the initial telephone call at the outset clearly and affirmatively state the identity of AFS as the sellers; instead, the caller claims to be from the publication being offered.

82. Also in other instances, the AFS Defendants do not in the initial telephone call at the outset clearly and affirmatively state that the purpose of the call is to sell the newsletter or other publications; instead they indicate they have some information they want to discuss or send.

83. The AFS Defendants have therefore engaged in unfair or deceptive acts or practices in violation of 73 P.S. § 201-3 and defined by 73 P.S. § 201-2(4)(ii), (iii), (v), (xvii) and (xxi).

## Count VII
## ICR Defendants' False, Misleading, Deceptive or Unsubstantiated Representations to Induce Payment
### (By Plaintiff Commonwealth of Pennsylvania)

84.     Through the means described in Paragraphs 32-48, the ICR Defendants represent, directly or indirectly, expressly or by implication, that (a) the AFS Defendants' debts are valid; (b) consumers have a legal obligation to pay the AFS Defendants' debts; and (c) failure to pay will result in a negative impact on a credit rating or will result in legal action.

85.     In truth and in fact, in numerous instances in which the ICR Defendants make the representations set forth in Paragraph 84, these representations are false, misleading, deceptive, or are not substantiated at the time the representations are made.

86.     The ICR Defendants have therefore engaged in unfair or deceptive acts or practices in violation of 73 P.S. § 201-3 and defined by 73 P.S. § 201-2(4)(ii), (iii), (v), and (xxi).

## Count VIII
## AFS Defendants' Sending and Billing for Unordered Merchandise
### (By Plaintiff Commonwealth of Pennsylvania)

87.     The Unordered Merchandise Statute, 39 U.S.C. § 3009, generally prohibits sending unordered merchandise, unless such merchandise is clearly and conspicuously marked as a free sample, or is sent by a charitable organization soliciting contributions.  The statute also prohibits sending consumers dunning communications or bills for unordered merchandise.

88.     The Unordered Merchandise Statute further generally provides that any merchandise mailed in violation of that law may be treated as a gift by the recipient who shall have the right to retain, use, discard, or dispose of it in any manner he sees fit without any obligation whatsoever to the sender.  39 U.S.C. § 3009(b).

89.     In numerous instances, in connection with the marketing of newsletters and other publications, the AFS Defendants, none of which is a charitable organization soliciting

contributions, have shipped newsletters and publications without the prior express request or consent of the recipients, and without identifying the merchandise as free samples.

90. In numerous instances, in connection with the marketing of newsletters and other publications, the AFS Defendants have sent to the recipients of such merchandise one or more bills or dunning communications for such goods.

91. Therefore, the AFS Defendants' acts or practices as set forth in Paragraphs 89-90 violated the Unordered Merchandise Statute. 39 U.S.C. § 3009.

92. Because of that violation, consumers were entitled to treat the newsletters or other publications as gifts, without any obligation to the AFS Defendants.

93. The AFS Defendants nonetheless sought payment for that merchandise, thereby misleading consumers.

94. Further, by misrepresenting, directly or indirectly, expressly or by implication, compliance with the Unordered Merchandise Statute, the AFS Defendants misrepresented, directly or indirectly, expressly or by implication, the legality of their business practices.

95. The AFS Defendants have therefore engaged in unfair or deceptive acts or practices in violation of 73 P.S. § 201-3 and defined by 73 P.S. § 201-2(4)(ii), (iii), (v), and (xxi).

## **CONSUMER INJURY**

96. Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the Unordered Merchandise Statute, and the UTPCPL. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THIS COURT'S POWER TO GRANT RELIEF**

97.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

98.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff Commonwealth's claims based on the UTPCPL, and the Court may award relief under UTPCPL pursuant to 73 P.S. § 201-1, *et seq.*

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, the FTC and the Commonwealth, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Unordered Merchandise Statute, 39 U.S.C. § 3009, the UTPCPL, 73 P.S. § 201-1, *et seq*., and the Court's own equitable powers, request that the Court:

A.  Enter a permanent injunction to prevent future violations of the FTC Act, the Unordered Merchandise Statute, and the UTPCPL by Defendants;

B.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the Unordered Merchandise Statute and the UTPCPL, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

C.  Award Plaintiffs FTC and the Commonwealth the attorney fees and costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated:  July 23, 2020                        /s/ Amy Hocevar

AMY C. HOCEVAR (Ohio Bar #0075510)
JONATHAN L. KESSLER (Colo. Bar #15094)
NICOLE J. GUINTO (Ohio Bar #0089319)
CHRISTIAN M. CAPECE (W.V. Bar #10717)
DEREK E. DIAZ (Ohio Bar #0069755)
Federal Trade Commission
1111 Superior Ave., Suite 200
Cleveland, Ohio 44114
Hocevar Phone: (216) 263-3409
Kessler Phone: (216) 263-3436
Guinto Phone:  (216) 263-3435
Capece Phone:  (216) 263-3419
Diaz Phone: (216) 263-3421
Fax: (216) 263-3426
ahocevar@ftc.gov
jkessler@ftc.gov
nguinto@ftc.gov
ccapece@ftc.gov
ddiaz@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

Josh Shapiro
Attorney General


Dated:  July 23, 2020            /s/ Sarah A. E. Frasch_____
SARAH A. E. FRASCH
Chief Deputy Attorney General
PA Attorney I.D. No. 203529
15th Floor, Strawberry Square
Harrisburg, PA 17120
Tel: (717) 497-5123
Fax: (717) 705-3795
Email: sfrasch@attorneygeneral.gov


/s/ John M. Abel_____
JOHN M. ABEL
Senior Deputy Attorney General
PA Attorney I.D. No. 47313
15th Floor, Strawberry Square
Harrisburg, PA 17120
Tel: (717) 497-5931
Fax: (717) 705-3795
Email: jabel@attorneygeneral.gov

Attorneys for Plaintiff
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL