UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN FUTURE SYSTEMS, INC., *et al.,*<br><br>Defendants. | Case No. 2:20-cv-02266<br><br>Judge Joel H. Slomsky |

**PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**

Whether at home or at work, every member of the public deserves protection from the sort of relentless mass deception-based scheme described in the First Amended Complaint (ECF 43). The common theme of the Defendants' motions to dismiss (ECF 48, 55) is that each and every business, school, fire department, church, and homeless shelter has to go it alone against them, leaving Defendants secure in the knowledge that the overwhelming majority of their thousands of targets do not have the time, energy, or resources to carry the fight. Defendants ask the Court to invent for them a novel shelter from the federal and Pennsylvania laws that prohibit deceptive commercial practices. But neither the statutes nor the case law excuse their behavior.

As set forth in the Amended Complaint, Plaintiffs the Federal Trade Commission and the Commonwealth of Pennsylvania, by Attorney General Josh Shapiro, have the statutory authority to step in and stand up against Defendants' deceptive telemarketing scheme, and to seek relief from the Court. The FTC and the Commonwealth have properly brought this action to protect the public from Defendants' widespread and persistent unlawful practices. The motions to dismiss are meritless.

## I. BACKGROUND

Plaintiffs filed the Amended Complaint on January 21, 2021, alleging that Defendants have violated the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), the Unordered Merchandise Statute, 39 U.S.C. § 3009, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq*., which is the Pennsylvania state law equivalent of the FTC Act. (ECF 43.) As described in the Amended Complaint, there are two groups of Defendants – the AFS Defendants[1] and the ICR Defendants.[2] The AFS Defendants operate a nationwide deceptive telemarketing scheme in which they make unsolicited phone calls to people at work. The telemarketers make false and misleading statements about the purpose of the calls, often tricking people into believing that AFS is just calling to offer them free samples of publications. After hanging up the phone, however, Defendants claim that whoever spoke with the telemarketer had instead agreed to a binding, paid subscription on behalf of the business, nonprofit, or local governmental entity where they work. ICR then acts as a collection agency, dunning and deceiving the targets into paying. Over the years, Defendants' business practices have led to thousands of consumer complaints.

Plaintiffs allege eight counts in the Amended Complaint. On the basis of federal law, the FTC alleges three of those counts (I, II, and IV) against the AFS Defendants and one (Count III) against the ICR Defendants. On the basis of Pennsylvania law, the Commonwealth alleges three

---

[1] The AFS Defendants are corporate Defendants American Future Systems, Inc., and Progressive Business Publications of New Jersey, Inc., and individual Defendant Edward M. Satell. As alleged in the Amended Complaint, the two corporate AFS Defendants have operated as a common enterprise, and Plaintiffs refer to the two of them collectively as "AFS" for purposes of this Memorandum. (ECF 43 at ¶¶ 11, 17.)

[2] The ICR Defendants are corporate Defendant International Credit Recovery, Inc. ("ICR") and individual Defendants Richard Diorio Jr. and Cynthia Powell.

counts against the AFS Defendants (V, VI, and VIII) and one (Count VII) against the ICR Defendants.

On February 4, 2021, the ICR Defendants moved to dismiss the Amended Complaint as against them, which is to say seeking dismissal of Counts III and VII. (ECF 48.) The central themes of their arguments are:

1. Count III, which alleges FTC Act violations, fails to state a claim because the targets of the scheme are "commercial entities, not individuals."

2. Count VII, which alleges UTPCPL violations, fails to state a claim because the Commonwealth cannot bring an action under the UTPCPL regarding "business-to-business transactions."

3. Both counts fail to state a claim because the ICR Defendants "have no legal obligation or duty to independently verify a debt prior to attempting collection efforts."

4. Both counts fail to state a claim because the ICR Defendants "have no legal obligation or duty to independently verify a commercial debt if the business disputes the commercial debt."

5. Count III fails to state a claim because the Amended Complaint does not allege that the ICR Defendants engaged in "any deceptive acts or practices" that violate the FTC Act.

The AFS Defendants, for their part, have adopted and expanded upon the ICR Defendants' argument that the Commonwealth supposedly cannot bring an action under the UTPCPL regarding business-to-business transactions.[3] Although their proposed order (ECF 55-1) appears to seek dismissal of the entire Amended Complaint as against them, the AFS Defendants' brief discusses only counts alleged against them by the Commonwealth under the UTPCPL (Counts V, VI, and VIII).[4] The AFS Defendants challenge these counts solely by

---

[3] The ICR Defendants have, in turn, adopted all of the AFS Defendants' arguments. (ECF 59.)

[4] The AFS Defendants offer no argument at all in support of dismissal of the counts against them alleging violations of federal law (Counts I, II, and IV), and so we do not address those counts in

asking the Court to read an implied business-to-business exception into the statutory language that authorizes the Attorney General to bring actions under the UTPCPL in the public interest.

Due to the primacy and commonality of Defendants' business-to-business arguments, Plaintiffs address those arguments here first, in a consolidated discussion. Our responses to the remainder of the ICR Defendants' arguments follow that discussion.

## II. LAW AND ARGUMENT

### A. To Prevail on their Motions to Dismiss, Defendants Must Treat the Factual Allegations of the Amended Complaint as True.

Defendants duly note in their respective filings that, on a Rule 12(b)(6) motion to dismiss, the Court will consider the Amended Complaint on its own and will accept as true the Plaintiffs' well-pleaded factual allegations. (ECF 48-2 at 3-5; ECF 55 at 5.) *E.g., Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (summarizing the Rule 12(b)(6) standard). Nevertheless, Defendants present unsupported factual assertions in their memoranda.

The most significant implied (and sometimes express) factual misrepresentation that Defendants ask the Court to rely on is an assertion that Defendants carefully targeted their activities so that they had dealings only with sophisticated and well-resourced businesses. This is not true. More to the point, it is not what Plaintiffs allege.

As described in the Amended Complaint, Defendants' telemarketing scheme has targeted "organizations nationwide, including businesses, schools, fire and police departments, and nonprofits[.]" (ECF 43 at ¶ 14.) While there is nothing inherently wrong with Defendants using

---

this brief. We do not read their motion to seek dismissal of those counts. If they do seek such dismissal, we respectfully request that the Court deny dismissal on the grounds that the counts properly state claims for relief under federal law and the AFS Defendants have not made any argument in support of dismissing them.

the term "businesses" in their filings as a catch-all to mean the extremely wide variety of organizations they have targeted, they appear to shift in their arguments between using the term in this very broad sense and using it in a narrower sense to signify a commercially sophisticated for-profit actor. For the sake of simplicity, the Court should read Defendants' use of the term "businesses" throughout their presentations in the sense of any organization, anywhere, of any type, and of any level of sophistication. To read and accept the term in a narrower sense would erroneously grant factual underpinnings to Defendants' arguments that would be inconsistent with reality and with the allegations of the Amended Complaint.

### B. The FTC and the Attorney General Are Authorized to Protect the Public, Including Defendants' Targets.

Both the FTC Act and the UTPCPL, by their express terms, empower law enforcers to take action against deceptive practices in commerce. The ICR Defendants argue that the FTC cannot challenge their deceptive practices under the FTC Act because ICR has targeted only organizations (not individuals) with those deceptive practices. All Defendants argue that the Commonwealth cannot challenge their deceptive practices under the UTPCPL because they target only organizations (not individuals) with those deceptive practices. None of these arguments survives scrutiny.

#### 1. The FTC Act contains no business-to-business exception.

As the Third Circuit has noted, "the purpose of the Federal Trade Commission Act is to protect the public[.]" *Regina Corp. v. FTC,* 322 F.2d 765, 768 (3d Cir. 1963) (citation omitted). Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Conduct violates that law if (1) there was a representation, (2) that was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material. *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003); *see also, e.g.*, *FTC v.*

*Magazine Sols., LLC*, Civil Action No. 7-692, 2010 U.S. Dist. LEXIS 145377, *30-31 (W.D. Pa. Mar. 15, 2010) (citing *Tashman*).[5] Both express and implied representations that are false or misleading are actionable under Section 5 of the FTC Act. *Regina Corp.*, 322 F.2d at 768 ("deception may be accomplished by innuendo rather than by outright false statements"); *FTC v. Figgie Int'l*, 994 F.2d 595, 604 (9th Cir. 1993) (noting there is "nothing in statute or case law which protects from liability those who merely imply their deceptive claims; there is no such loophole").[6]

The ICR Defendants cite nothing in the FTC Act that would exempt them or their misleading activities from its scope. Nor do they cite any case holding that businesses like theirs, or deceptive activities like theirs, are exempt from the FTC Act.

In fact, the FTC has long enforced the FTC Act against those who engage in deceptive and unfair tactics against businesses and other organizations. *E.g.*, *Indep. Directory Corp. v. FTC*, 188 F.2d 468 (2d Cir. 1951) (deceptive practices in selling directory advertisements to businesses). For example, in *FTC v. IFC Credit Corp*., 543 F. Supp. 2d 925, 928 (N.D. Ill. 2008), cited by the ICR Defendants in their brief, the FTC asserted claims under the FTC Act based on equipment leases sold to "small businesses, religious and other non-profit organizations[.]" The defendant contended that these organizations should not be treated as "consumers" under the FTC Act. In a detailed analysis, the *IFC Credit* court agreed with the

---

[5] Both *Tashman* and *Magazine Solutions* use the term "customer" in the second element, while other courts have used the term "consumer." As discussed in more detail below, for purposes of the FTC Act the terms are interchangeable.

[6] The FTC need not prove that Defendants' misrepresentations were made with an intent to deceive. *Regina Corp.*, 322 F.2d at 768. It is sufficient that "the representations made have a capacity or tendency to deceive." *Id*. Moreover, courts have long recognized that the fact that a defendant may have had some satisfied customers is not a defense to a law enforcement action alleging deceptive practices. *E.g.*, *Indep. Directory Corp. v. FTC*, 188 F.2d 468, 471 (2d Cir. 1951). *See also Commonwealth v. Hush-Tone Indus., Inc.*, 4 Pa. Commw. 1, 22-23 (1971).

FTC that such consumers are protected under the FTC Act. *Id*. at 934-41.[7] As another example, in *FTC v. Inc21.com Corp.*, 688 F. Supp. 2d 927, 929 (N.D. Cal. 2010), the FTC brought claims under the FTC Act to bring a halt to a deceptive billing scheme that targeted only businesses and organizations. After a preliminary injunction hearing, the *Inc21* court held that the FTC had properly shown a likelihood of success on its FTC Act claims. *Id*. at 936-39.

The FTC brought an action against a deceptive billing scheme similar to the *Inc21* scheme in this District, as described in *FTC v. Mercury Mktg. of Del., Inc.*, No. 00-3281, 2004 U.S. Dist. LEXIS 23707 (E.D. Pa. Nov. 22, 2004). The referenced opinion pertains to contempt, but the underlying application of the FTC Act to a deceptive scheme targeting businesses is evident: "Defendants continued to engage in a telemarketing scheme designed to mislead unsuspecting small businesses into receiving its introductory internet package and without consent of the businesses to bill and collect monthly charges added to their telephone accounts." *Id*. at *2-4.

For decades, the FTC has employed the FTC Act to fight deceptive practices against small businesses, and the agency maintains a publicly-accessible list of business protection cases going back to 1997 on its website. *See* Fed. Trade Comm'n, *Protecting Small Businesses: Cases*, https://www.ftc.gov/node/1211663 (last visited Mar. 4, 2021). *See also* FED. TRADE COMM'N, PREPARED STATEMENT OF THE FEDERAL TRADE COMMISSION ON OFFICE SUPPLY FRAUD (Mar. 28, 2000),

[7] Defendants assert that the Court should not rely on the *IFC Credit* analysis because that court was only examining the meaning of the term "consumer" as used in the unfairness provision of Section 5 of the FTC Act. (ECF 48-2 at 7.) In making this argument, Defendants ignore the fact that the term "consumer" is not used in Section 5 of the FTC Act in any context other than for unfairness – a basis for liability distinct from deception and one not at issue in this case. There is no "consumer" element in the deception language. *Compare* 15 U.S.C. § 45(a) to 15 U.S.C. § 45(n). *See also IFC Credit*, 543 F. Supp. 2d at 935, n.3.

https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-office-supply-fraud/officesuptest.pdf (last visited Mar. 4, 2021).

Due to the frequency with which deceptive marketers have targeted small businesses, the agency has made it a top priority "to stem the tide of fraud" against them. *See* Press Release, Fed. Trade Comm'n, *FTC, BBB, and Law Enforcement Partners Announce Results of Operation Main Street: Stopping Small Business Scams Law Enforcement and Education Initiative* (June 18, 2018), https://www.ftc.gov/news-events/press-releases/2018/06/ftc-bbb-law-enforcement-partners-announce-results-operation-main (last visited Mar. 4, 2021). In fact, the FTC's public website dedicates multiple webpages to educating small business owners on identifying and reporting scams. *See* Fed. Trade Comm'n, *Protecting Small Businesses*, https://www.ftc.gov/tips-advice/business-center/small-businesses (last visited Mar. 4, 2021); Fed. Trade Comm'n, *Scams and Your Small Business: A Guide For Business*, https://www.ftc.gov/tips-advice/business-center/guidance/scams-your-small-business-guide-business (last visited Mar. 4, 2021).

In tacit acknowledgment of the weakness of their argument under the FTC Act, the ICR Defendants focus on a separate statute under which the FTC has made no claim in this case, the Fair Debt Collection Practices Act (FDCPA). The ICR Defendants' argument on the purported intersection of the FDCPA and FTC Act as applied to their conduct is essentially this: (a) the FDCPA addresses many unlawful debt collection activities targeting individuals; (b) the FDCPA does not apply to collection activities against organizations; (c) because ICR has targeted organizations, ICR's activities are not subject to the FDCPA; therefore, (d) ICR's activities are not subject to the FTC Act.

There is a large gap here that cannot be bridged. The ICR Defendants can only sustain this argument if the FDCPA preempts the FTC Act or exempts debt collection activities against organizations from the FTC Act. If it did, the ICR Defendants would cite the relevant statutory provision or case so declaring. Plainly, the FDCPA does not preempt the FTC Act, nor does it exempt from the FTC Act debt collection activities against organizations.

The language of the FDCPA establishes that a violation of the FDCPA is a violation of the FTC Act. 15 U.S.C. § 1692*l*(a). Thus, by its express terms, the FDCPA serves as a supplement to the FTC Act, not as a replacement for it. Those who engage in deceptive practices to obtain money from targets by misrepresenting that they owe debts or that their failure to pay will result in a negative impact on a credit rating or legal action violate the FTC Act, regardless of whether the practices could also violate the FDCPA. *See*, *e.g.*, *FTC v. Swatsworth*, No. 3:17-cv-340-GCM, 2018 U.S. Dist. LEXIS 142696, at *7-9 (W.D.N.C. Aug. 22, 2018) (misrepresenting that targets of scheme owed debts was a deceptive practice in violation of the FTC Act; FDCPA allegations analyzed separately); *FTC v. Magazine Sols., LLC*, Civil Action No. 7 -692, 2010 U.S. Dist. LEXIS 145377, at *30-33 (W.D. Pa. Mar. 15, 2010) (misrepresenting that targets of scheme had a legal obligation to pay and that defendants would initiate legal action if targets failed to pay were deceptive practices in violation of the FTC Act; no FDCPA violations alleged).

### 2. The UTPCPL contains no business-to-business exception to the Attorney General's authority.

The FTC Act does not create any private right of action. The UTPCPL, on the other hand, authorizes both law-enforcement actions by the Commonwealth and private actions under its terms, setting forth certain additional requirements for private plaintiffs. Defendants urge the Court to impose the private-right-of-action conditions on law-enforcement actions by the

Attorney General. Such a rewriting of the statute would contradict its plain language and settled Pennsylvania law.

As the Supreme Court of Pennsylvania has held, under the UTPCPL "Commonwealth actions and private actions are distinguishable." *Weinberg v. Sun Co.*, 565 Pa. 612, 617, 777 A.2d 442, 445 (2001). The operative law enforcement provision of the UTPCPL is at 73 P.S. § 201-4. That section reads:

> Whenever ***the Attorney General or a District Attorney*** has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act [73 P.S. § 201-3] to be unlawful, and that proceedings would be ***in the public interest***, he may bring an action ***in the name of the Commonwealth*** against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

73 P.S. § 201-4 as quoted in *Weinberg*, 777 A.2d at 445 (emphasis in *Weinberg*).[8]

The private-right-of-action provision of the UTPCPL, which contains restrictive language relied upon by Defendants, is in a *different* part of the statute, at 73 P.S. § 201-9.2. Section 201-9.2 restricts the private right of action to matters involving goods or services obtained "primarily for personal, family or household purposes." 73 P.S. § 201-9.2(a). Section 201-4, quoted above, does not cite, incorporate, or rely on § 201-9.2 in any way. There is no statutory basis to graft the particular restrictions of § 201-9.2(a) onto the separate law-enforcement provision at § 201-4.

Indeed, consistent with the Pennsylvania Supreme Court's holding in *Weinberg*, an *en banc* panel of the Commonwealth Court recently emphasized the distinction between the elements of a law-enforcement action authorized by § 201-4 and the elements of a private action under § 201-9.2(a):

---

[8] For purposes of § 201-4, the word "person" includes corporations and other legal entities. 73 P.S. § 201-2(2). Defendants do not dispute that they fall within the meaning of the word "person" as used in § 201-4.

> [W]hile the UTPCPL places restrictions on the ability of private parties to file suit, the Law creates no such impediment for the Attorney General. Instead, the Attorney General is imbued with the express authority to file suit against "any person," whenever the Attorney General determines that such a person "is using or is about to use any method, act or practice declared by [73 P.S. § 201-3] to be unlawful, and that proceedings would be in the public interest[.]"

*Anadarko Petro. Corp. v. Commonwealth*, 206 A.3d 51, 58-59 (Pa. Commw. Ct. 2019) (quoting 73 P.S. § 201-4), *appeal granted*, 218 A.3d 1205 (Pa. 2019).[9] *See also Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 393 Pa. Super. 339, 346, 574 A.2d 641, 644 (1990) (noting that the statute authorizes the Attorney General to "protect the citizenry" from unfair and deceptive practices, doing so in provisions distinct from the private right of action provisions).

Moreover, the Pennsylvania Supreme Court has explicitly rejected limitations on what classes of persons or entities are eligible for protection through an action brought under § 201-4. In *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1031-34 (Pa. 2018), a case Defendants cite (ECF 55 at 7), the Pennsylvania Supreme Court considered the question of whose injury a court may act to remedy when the Attorney General brings an action under § 201-4 in the name of the Commonwealth.

Pursuant to 73 P.S. § 201-4.1, whenever a court issues a permanent injunction pursuant to § 201-4, it "may in its discretion direct that the defendant or defendants restore to any person in interest any moneys or property … which may have been acquired by means of any violation of [the UTPCPL]." In *Golden Gate*, the Pennsylvania Supreme Court held that ***the Commonwealth itself*** is eligible for a monetary remedy under this provision. 194 A.3d at 1034. The opinion

---

[9] A dissent in the *Andarko* matter takes issue with the Commonwealth Court's holding that the Attorney General could act against nominal purchasers under the UTPCPL. In doing so the dissent emphasizes the view that the purpose of the UTPCPL is to protect "consumers," but draws no distinction between individual and organizational purchasers in this regard. 206 A.3d at 62-66. Indeed, the dissent refers to the business entities in the *Andarko* case as "consumers." *Id*. at 63, 66.

follows "the long-recognized directive that the UTPCPL be construed liberally to achieve its objective of preventing fraud or unfair or deceptive business practices," and notes that it would be "anomalous" to prohibit the Commonwealth "from seeking restoration where [the Commonwealth] lost money or property because of the improper conduct." *Id*.

Of course, the Commonwealth is not an individual natural person who buys things for personal or household use. With the Pennsylvania Supreme Court having recognized that the Attorney General may take action against deceptive practices prohibited under the UTPCPL that cause injury to the Commonwealth, it is no leap at all to understand that businesses, nonprofits, and local governmental entities fall under the law enforcement protection of the statute, as well. Indeed, in the face of *Golden Gate*, it would be directly contrary to "the long-recognized directive that the UTPCPL be construed liberally to achieve its objective of preventing fraud or unfair or deceptive business practices" to hold otherwise. *Id.*

In *Danganan v. Guardian Prot. Servs.*, 645 Pa. 181, 179 A.3d 9 (2018), the Pennsylvania Supreme Court held that the UTPCPL protects those who reside outside Pennsylvania as well as Pennsylvania residents. The opinion underscores the breadth of conduct that falls within the scope of the UTPCPL and the importance of construing the statute in a way that advances its purpose of promoting honest commerce.

> [W]e recognize, as we previously have, the wide range of conduct the [UTPCPL] was designed to address, including equalizing the bargaining power of the seller and consumer, ensuring the fairness of market transactions, and preventing deception and exploitation, all of which harmonize with the statute's broad underlying foundation of fraud prevention.

179 A.3d at 16 (citing *Commonwealth by Creamer v. Monumental Props., Inc.*, 459 Pa. 450, 458-59, 329 A.2d 812, 815-16 (1974)). Moreover, *Danganan* holds that it is improper to impose restrictions on the protections of the UTPCPL on the basis of "policy" arguments outside of the

text of the statute itself: "the Court may not supply additional terms to, or alter, the language that the Legislature has chosen." *Id*. at 17 (citation omitted).[10]

The plain language of the statute and the reasoning of relevant Pennsylvania cases all point to a simple conclusion. If the legislature had intended actions under § 201-4 to be limited to the purpose of protecting only individual natural persons, it would have said so. It did not.

Against the clear statutory language, and against unequivocal case law, Defendants mount a series of insubstantial arguments. Primarily, they cite cases that discuss elements of the UTPCPL's private right of action and assert that the Court should rely on those cases to import the private action restrictions onto the law enforcement provision. *E.g.*, ECF 48-2 at 10-11, citing *Elansari v. Best Buy, LP*, 2019 Pa. Super. Unpub. LEXIS 3933, 222 A.3d 843 (Pa. Super. Ct. 2019) (discussing limitations on private right of action under UTPCPL). But this, of course, assumes away the very distinction Defendants seek to overcome.

Defendants also raise arguments about the dictionary definition of the word "consumer." Notably, the word "consumer" does not actually appear in § 201-4, or in § 201-3, or in any of the provisions of § 201-2 cited in paragraphs 72 and 75 of the Amended Complaint. That said, even to the extent that the Court finds a dictionary definition of the word "consumer" relevant to its

[10] Defendants cite *Danganan*, but do so in a way that is hard to follow. They take the position that *Danganan* reversed "on other grounds" the opinion in *Commonwealth v. Ziomek*, 145 Pa. Commw. 675, 352 A.2d 235 (1976), which Defendants quote in their briefs. (ECF 48-2 at 11, ECF 55 at 9.) *Danganan* discussed *Ziomek* to point out that a federal district court had wrongly applied *Ziomek* to support a narrow (rather than a broad) reading of the purposes and protections of the UTPCPL. 179 A.3d at 11. As described in the text above, *Danganan* stands squarely for the longstanding proposition that the law is to be construed broadly, in accordance with its plain text, thus rejecting any reliance on *Ziomek* for the contrary proposition. However, in their briefs, Defendants ask the Court to rely on *Ziomek* for the proposition that the scope of the UTPCPL is to be construed *narrowly*. That is to say, Defendants are citing *Ziomek* for just the purpose *Danganan* rejects. Thus, it is not clear what "other grounds" Defendants are referring to in their citation, and the single-judge Commonwealth Court opinion in *Ziomek* can only be properly read in light of the more recent Pennsylvania Supreme Court opinion in *Danganan*.

analysis, Defendants' dictionary arguments are not well supported. Their primary dictionary citation is to Black's Law Dictionary. The *IFC Credit* court also considered the Black's Law Dictionary definition of the term, but that court was not convinced that Black's Law Dictionary should carry the day on the meaning of an ordinary word in common usage, instead citing more common dictionary definitions to the effect that the term "consumer" simply signifies one who uses the goods or services in question:

> In contrast to what is an undeniably specialized dictionary, there is *Merriam-Webster Collegiate Dictionary*'s definition of consumer: "one that consumes: as a.: one that utilizes economic goods." (Eleventh Ed. 2003). The *Oxford English Dictionary* defines consumer as: "He or that which consumes, wastes, squanders, or destroys. One who uses up an article produced, thereby exhausting its exchangeable value; One who purchases goods or pays for services; a customer, purchaser." (2nd ed. 1984). The *American Heritage Dictionary* defines consumer as: "One that consumes; especially one that acquires goods or services for direct use or ownership rather than for resale or use in production and manufacturing." (4th ed. 2000).

543 F. Supp. 2d at 938.[11] *Cf. AFSCME v. Cephalon, Inc.* (*In re Actiq Sales & Mktg. Practices Litig.*), 790 F. Supp. 2d 313, 325-26 (E.D. Pa. 2011) (applying Merriam-Webster's definition of "consumer" – "one that utilizes economic goods" – where "consumer" was not defined in an Indiana statute). To the ordinary definitions listed in the 2008 *IFC Credit* opinion, we now add definitions currently available to any user on the web. Merriam-Webster's online dictionary defines a "consumer" as "one that utilizes economic goods." *Consumer*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/consumer (last visited Mar. 4, 2021). The website Dictionary.com defines "consumer" to be "a person or thing that consumes" and as a "person or organization that uses a commodity or service." *Consumer*, *Dictionary.com*,

[11] In their brief, the AFS Defendants make an additional reference to a definition from "the Oxford Dictionary" (ECF 55 at 8), but the source is unclear and the proffered definition is inconsistent with the *Oxford English Dictionary* citation in the *IFC Credit* opinion as quoted above.

https://www.dictionary.com/browse/consumer (last visited Mar. 4, 2021). Dictionary definitions thus provide no basis to restrict the Attorney General's authority under § 201-4.

Defendants offer two additional arguments extraneous to the law-enforcement provision of the UTPCPL. They cite 71 P.S. § 307-2(1)-(2), a provision of Pennsylvania's Administrative Code setting forth the powers and duties of the Bureau of Consumer Protection established within the Office of the Attorney General. That provision is irrelevant. Section 201-4 makes no reference to it, and indeed makes no reference to the Bureau of Consumer Protection at all. Section 201-4 is about the *Attorney General's* authority to enforce the UTPCPL. Any asserted limits on the Bureau of Consumer Protection's investigatory authority do not limit the Attorney General's enforcement authority. *See, e.g., Commonwealth v. Patel*, No. 116 M.D. 2019, 2019 WL 5561412, at *3 (Pa. Commw. Ct. Oct. 29, 2019) (unpublished) ("*The provisions of the [UTPCPL] neither mention the Bureau nor grant the Bureau enforcement powers*") (italics in original).[12] Similarly, Defendants' confusing citation to the Independent Regulatory Review Commission's ("IRRC") comments on a recent proposed rulemaking ask the Court to rely on something that is not there. Defendants argue that the IRRC has conveyed "in no uncertain terms" that business-to-business transactions do not fall within § 201-4. (ECF 55 at 11.) This is false. Nowhere in its comments does the IRRC say that business-to-business transactions are excluded from § 201-4. *See* Independent Regulatory Review Commission, Comments of the Independent Regulatory Review Commission (Oct. 30, 2019), http://www.irrc.state.pa.us/docs/3242/IRRC/3242%2010-30-19%20COMMENTS.pdf.

[12] Defendants' argument here, taken to its logical conclusion, is that the legislature intends § 201-4 to confer broader authority on District Attorneys than on the Attorney General because the Attorney General's Office includes a Bureau of Consumer Protection. They offer no support for such an odd reading of the statutory scheme.

Finally, Defendants raise a single argument that sounds directly in the language of § 201-4. The argument is based on the statutory requirement that the Attorney General must determine that law enforcement proceedings under the UTPCPL would be "in the public interest." 73 P.S. § 201-4.

Defendants' assertion is that an action by the Attorney General to protect businesses, nonprofits, and local governmental entities from a deceptive telemarketing scheme can never be in the public interest. Phrased so directly, this is not an appealing position. Not surprisingly, Defendants do not phrase their argument so directly. Instead, they seek to recast this action as an attempt by the Attorney General to weigh in on specific disputes between particular businesses, favoring the interests of some particular businesses over the Defendants. (ECF 55 at 10.)

The fallacy of this argument is plain on the face of the Amended Complaint. The Attorney General has joined in this action to protect *every* business and nonprofit, bar none, from a deceptive scheme that Defendants have employed against *every* business and nonprofit that they have targeted. Taking the allegations of the Amended Complaint as true, Defendants have engaged in widespread unlawful deceptive conduct. It is well within the public interest that the Attorney General act to protect the public at large from that conduct.

### C. The ICR Defendants Have a Duty Not to Make Deceptive Representations to Induce Payment.

Beyond the business-to-business argument, the ICR Defendants contend that the Amended Complaint fails to state claims against them under the FTC Act and under the UTPCPL because they allegedly had no freestanding obligation to verify each of the supposed debts they were collecting. In one section of their brief, they make this argument about verifying each supposed debt before attempting collection, and in the following section they make this argument about verifying each supposed debt after each specific businesses complained to them.

(ECF 48-2 at 12-18.) As with their business-to-business argument discussed above, the ICR Defendants spend substantial time referring the Court to the FDCPA, which is not the basis of any of the Plaintiffs' allegations in this matter. As neither the FTC nor the Commonwealth relies on the FDCPA, the Court should reject the ICR Defendants' arguments on that ground alone.

In any event, these arguments are straw men. The Amended Complaint does not allege that the ICR Defendants violated some hypothetical freestanding obligation to verify each debt, one by one, in a hypothetical vacuum of other information. The Amended Complaint alleges that the ICR Defendants violated the FTC Act and the UTPCPL by making deceptive representations to induce payment.

Specifically, the Amended Complaint alleges that the ICR Defendants engaged in widespread deceptive practices by tricking consumers into paying for supposed AFS debts that consumers did not actually owe. (*See* ECF 43 at ¶¶ 36-48, 50-54, 64-66, 84-86.) The ICR Defendants accomplished that deception by representing, directly or indirectly, expressly or by implication, (a) that the supposed debts were valid; (b) that consumers had a legal obligation to pay the supposed debts; and (c) that failure to pay would result in a negative impact on a credit rating or would result in legal action. (*Id*. at ¶¶ 64, 84.) In fact, as alleged in the Amended Complaint, the ICR Defendants knew or had reason to know that many consumers had not actually agreed to accept any financial obligation for the AFS Defendants' publications. (*Id*. at ¶¶ 38-48, 50-54.) Moreover, the ICR Defendants never took (nor do they ever take) any action to affect a consumer's credit rating, nor do the supposed debts ever result in legal action. (*Id*. at ¶ 37.) These allegations, taken as true, describe unlawful deceptive practices. *See*, *e.g.*, *Swatsworth*, 2018 U.S. Dist. LEXIS 142696 at *7-9 (misrepresenting that targets of scheme owed debts was a deceptive practice in violation of the FTC Act); *FTC v. Magazine Sols., LLC*,

No. 7-692, 2008 WL 11383877, at *4-5, *6 (W.D. Pa. Dec. 1, 2008) (misrepresenting that targets of scheme had a legal obligation to pay and that defendants would initiate legal action if targets failed to pay were deceptive practices in violation of the FTC Act).

Fundamentally, what the ICR Defendants are arguing in these two points is that the Court should hold that as a matter of law the ICR Defendants were engaging in honest commerce in collecting for AFS, that as a matter of law the ICR Defendants reasonably believed – year after year, complaint after complaint after hundredth complaint – that all of the supposed debts that AFS referred were valid. (ECF 48-2 at 14 ("ICR is properly relying on the information provided by the AFS Defendants that the debts are valid"), 18 ("There is nothing deceptive or unfair about relying upon the information provided by the AFS Defendants as to the nature and amount of the commercial debts")). This is, however, a factual contention. It is a factual contention that is completely at odds with the specific allegations of the Amended Complaint. Therefore it cannot provide a basis for dismissal. *Guidotti*, 716 F.3d at 772 (dismissal to be granted only if "accepting all factual allegations as true and construing the complaint in the light most favorable to the plaintiff, we determine that the plaintiff is not entitled to relief under any reasonable reading of the complaint") (internal quotation and citation omitted).

**D. The Amended Complaint Alleges That The ICR Defendants Engaged In Deceptive Practices.**

Finally, the ICR Defendants assert that the federal claim against them must be dismissed because the Amended Complaint does not allege that they engaged in any deceptive acts or practices within the meaning of the FTC Act. For purposes of this argument the ICR Defendants accept the premise that they made false or misleading representations, as detailed in the Amended Complaint. Their argument here is not that the Court should assume that Defendants

were honest, but rather that the Court must find as a matter of law that no business, nonprofit, or local governmental entity could have reasonably believed they were honest.

The ICR Defendants assert, without citation, that a "business that pays for a debt it does not believe it actually owes is not acting reasonably under the circumstances." (ECF 48-2 at 20.) One premise of this sentence is that no organization would ever make a payment to end the time and energy draining nuisance, and to cut a potential longer term risk, presented by Defendants' tactics. That is to say, according to the ICR Defendants, no rational organization would ever make a calculation that it would be worth it to take a financial hit just to be able to move on from a bad experience. The ICR Defendants offer no citation in support of this conclusory presumption, and there can be none. Of course organizations – like individuals – make such decisions routinely. *See generally, e.g.*, *Estate of Meriano v. C.I.R.*, 142 F.3d 651, 662 (3d Cir. 1998) ("The fact that the estate attempted to cut its losses by negotiating a deal with Reardon does not negate the fact that it was the victim of theft.")

But another, perhaps more insidious, premise of that assertion is that if Defendants' deceptive tactics successfully tricked a person who pays the bills at a target organization into "believ[ing]" that the organization owed the debt, then there could be no deception. A target that was sophisticated enough to "ignore the [Defendants'] letter or call as an error or possible scam" did not have to pay. (ECF 48-2 at 20-21.) But as for any organization that employed people who were trusting enough, or naïve enough, or confused enough, or felt threatened enough to pay? That organization deserved to have its money taken. This is a form of "blame the customer" argument expressly rejected in *Tashman*, where the court examined similar arguments (accepted by the district court in that case) that anyone who was misled was not acting reasonably under the FTC Act's deception standard. In that case, the Eleventh Circuit Court of

Appeals held that, "*caveat emptor* is simply not the law, and the district court's conclusion to the contrary is incorrect." *Tashman*, 318 F.3d at 1277. As the Supreme Court has held:

> The fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced. There is no duty resting upon a citizen to suspect the honesty of those with whom he transacts business. ***Laws are made to protect the trusting as well as the suspicious.*** The best element of business has long since decided that honesty should govern competitive enterprises, and that the rule of *caveat emptor* should not be relied upon to reward fraud and deception.

*FTC v. Standard Educ. Soc.*, 302 U.S. 112, 116 (1937) (emphasis added). *See also Indep. Directory Corp*, 188 F.2d at 470 (applying *Standard Educ.* principles quoted above to "the careless business man who is also entitled to protection from deception"); *Commonwealth v. Hush-Tone Indus., Inc.*, 4 Pa. Commw. 1, 21-22 (1971) (adopting *Standard Educ.* principles quoted above into Pennsylvania law in first reported decision under UTPCPL).

## III. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss the Amended Complaint. A proposed form of order is submitted herewith.

Respectfully submitted,

Dated: March 4, 2021

/s/ Harris A. Senturia
AMY C. HOCEVAR (Ohio Bar #0075510)
JONATHAN L. KESSLER (Colo. Bar #15094)
DEREK E. DIAZ (Ohio Bar #0069755)
HARRIS A. SENTURIA (Ohio Bar #0062480)
Federal Trade Commission
1111 Superior Ave., Suite 200
Cleveland, Ohio 44114
Hocevar Phone: (216) 263-3409
Kessler Phone: (216) 263-3436
Diaz Phone: (216) 263-3421
Senturia Phone: (216) 263-3420
Fax: (216) 263-3426
ahocevar@ftc.gov
jkessler@ftc.gov
ddiaz@ftc.gov
hsenturia@ftc.gov

*Attorneys for Plaintiff*
*Federal Trade Commission*

/s/ Sarah A. E. Frasch
SARAH A. E. FRASCH (PA Atty I.D. #203529)
JOHN M. ABEL (PA Atty I.D. #47313)
15th Floor, Strawberry Square
Harrisburg, PA 17120
Frasch Phone: 717.497-5123
Abel Phone: 717.497-5931
Fax: 717.705-3795
sfrasch@attorneygeneral.gov
jabel@attorneygeneral.gov

*Attorneys for Plaintiff*
*Commonwealth of Pennsylvania*
*Office of Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2021, the foregoing **PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt who may access this filing through the Court's system.

*/s/ Harris A. Senturia*
Attorney for Plaintiff