IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br>*Plaintiffs*<br>v.<br><br>AMERICAN FUTURE SYSTEMS, INC., *et al.*,<br>*Defendants* | Case No. 2:20-cv-02266 |

**REPLY BRIEF OF DEFENDANTS', INTERNATIONAL CREDIT RECOVERY, INC., RICHARD DIORIO, JR., AND CYNTHIA POWELL, IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

International Credit Recovery, Inc. ("ICR"), Richard Diorio, Jr. ("Mr. Diorio") and Cynthia Powell ("Ms. Powell" and collectively, the "ICR Defendants"), hereby file this Reply Brief in support of their Motion to Dismiss Plaintiffs' Amended Complaint (the "Amended Complaint").

Since the inception of this action, the Federal Trade Commission ("FTC") (and now the Commonwealth of Pennsylvania), repeatedly rely upon assertions designed specifically to appeal to emotion rather than law. The very first page of what is titled as a "Joint Memorandum in Opposition to Defendants' Motion to Dismiss" (hereafter, the "Opposition Memorandum") is an outright invitation to accept that these governmental bodies should be permitted to sue a small business and its officer / employee simply because, if this Court does not permit it, "each and every business, school, fire department, church and homeless shelter has to go it alone." The FTC and the Commonwealth have to resort to such characterizations as they want this Court to ignore the law and read non-existent powers into their enforcement agency agendas. The statutes relied upon by Plaintiffs simply do not permit this type of action against the ICR Defendants.

## I. THE COMMONWEALTH CAN ONLY MAINTAIN AN ACTION UNDER THE UTPCPL WITH REGARD TO INDIVIDUALS.

To summarize, the Commonwealth has asserted only one count against the ICR Defendants, Count VII, for alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1—201-9.3 ("UTPCPL"). The entire count consists of

three paragraphs, 84-86. The pleading references paragraphs 32-48 of the Amended Complaint, but otherwise does not incorporate anything else from the Amended Complaint in this sole count against the ICR Defendants. Therefore, there are actually no allegations by the Commonwealth concerning Mr. Diorio or Ms. Powell individually.

A. The Definitions Within The UTPCPL Limit Actions To Those Affecting Individuals.

Jurisdiction over the ICR Defendants for this state law claim is premised upon federal Supplemental Jurisdiction contained at 28 U.S.C. § 1367. The UTPCPL at § 201-2 defines "trade" and "commerce" and then defines "unfair methods of competition" and "unfair or deceptive acts or practices" by enumerating a list of 21 items. In § 201-3 of the UTPCPL, those 21 items, if committed in the conduct of any "trade" or "commerce," are declared to be illegal. Section 201-4 gives the Attorney General the power to seek injunctive relief where *both* the elements of "trade" and "commerce" and a violation of one of the 21 enumerated items are present. In this case, the Attorney General never explicitly pleads that the ICR Defendants engage in "trade" or "commerce" within Pennsylvania,[1] but the Attorney General does charge the ICR Defendants with alleged violations of four of the 21 enumerated items, 73 P.S. § 201-2(4) (ii), (iii), (v) and (xxi).

As noted, for the Attorney General to proceed, the action must involve both "trade" or "commerce" and one of the 21 enumerated items. Therefore, the starting point for analysis is the UTPCPL's definition of "trade" and "commerce." The Attorney General in its Opposition Memorandum primarily focuses its response on the term "consumer" and argues that the term

[1] The pleading by the Commonwealth is haphazard and can be hard to follow. In the sole count against the ICR Defendants, the Commonwealth only refers to paragraphs 32-48 of the Amended Complaint, and thereby makes no specific allegation as to the ICR Defendants being engaged in trade or commerce within the Commonwealth. The Commonwealth does blandly allege at paragraph 73 "Defendants have engaged in trade and commerce in the Commonwealth of Pennsylvania by marketing, offering for sale, and selling newsletters and other publications to persons/entities within Pennsylvania and then seeking to collect monies from these persons/entities." Amended Complaint at paragraph 73. This paragraph appears not to be directed at the ICR Defendants since the ICR Defendants do not market or offer for sale any newsletters or seek compensation for such marketing and selling.

should be construed beyond the typical meaning of "consumer" to include businesses. The Attorney General argues that the Court should follow the plain language of the act. Perhaps the Court should do as the Attorney General suggests: the act is named the "CONSUMER Protection Law." To quote the Attorney General, "If the legislature had intended actions under 201-4 to be limited to the purpose of protecting only individual natural persons, it would have said so." Opposition Memorandum at p. 13. Well, the legislature did say so. It named the act the "***Consumer***" Protection Law. To follow the reasoning of the Attorney General, had the legislature intended the UTPCPL to apply to anyone or anything including businesses, then why use the term "consumer" at all in the very name of the act? If the law were intended to apply to anyone and everything, the legislature would have simply called the law the "Unfair Trade Practices Act." Words have meaning, and the legislature did not add the word "consumer" to the name of the law purely to be superfluous.

It is noteworthy that the Attorney General does not mention the definitions of "trade" or "commerce" in its argument that the law is intended to apply to entities other than those individuals which are commonly known by the use of the term "consumer." The UTPCPL defines "trade" and "commerce" as follows:

> "Trade" and "Commerce" mean the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the ***people of this Commonwealth.*** 73 P.S. § 201-3 (emphasis added).[2]

The legislature specifically used the word "***people***." Trade or commerce must affect the "people" of the Commonwealth. The legislature did not say affect "businesses," "corporate

[2] The ICR Defendants do not advertise, offer for sale, sell or distribute any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate. Therefore, the only grounds to maintain an action against the ICR Defendants is under the final phrase of this definition, which would be a trade or commerce directly or indirectly affecting the people of this state.

entities," "non-profits," "governmental entities," etc. The legislature did not use the word "person" that it had just defined in the definition immediately preceding this one in § 201-2. On the contrary, the legislature used the word "*people*." The term "people" is not ambiguous (and frankly, the term "consumer" is not ambiguous either). Use of "people" refers to trade or commerce affecting *individuals*, not business entities. The term "consumer" has a commonly understood meaning to be an individual. Despite that common meaning, and lack of ambiguity in the word, the Attorney General seeks to go beyond the plain meaning and extend the term "consumer" to a whole host of other entities or organizations in the name of advancement of policy objectives. Assuming the Attorney General would resort to the same type of reasoning regarding the meaning of the word "people" here are multiple dictionary definitions of the word "people":

> From Merriam-Webster:
> **Definition of *people*"**
> **1***plural:* human beings making up a group or assembly or linked by a common interest
> **2***plural:* HUMAN BEINGS,PERSONS—often used in compounds instead of *persons* sales*people*
> https://www.merriam-webster.com/dictionary/people (last visited March 25, 2021)
>
> From the Cambridge Dictionary:
> **People**: Men, women and children.
> https://dictionary.cambridge.org/us/dictionary/english/people (last visited March 25, 2021).

While definitions of the word "people" may interchangeably use as part of the definition the word "person," it is unequivocally clear that the term "people" refers to *human beings*. For the UTPCPL to apply, the particular trade or commerce must affect *people* of the Commonwealth. Therefore, the Attorney General cannot maintain this action with regard to any entity that is not an individual.

B. The Facts As Pleaded Do Not State Causes Of Action Under The Sub-Sections Cited By The Attorney General, And The Count Must Therefore Be Dismissed.

Reviewing the factual allegations plainly shows that there is not a single factual assertion in the Amended Complaint that any of the ICR Defendants made a representation as to "source, sponsorship, approval or certification" of any service. This subsection was intended to prohibit a schemer from representing that his "good" had a sponsorship or approval of some official body (such as an approval of the FDA, or state or some governing or licensing body or a certification from some recognized source). The allegations in this Amended Complaint have nothing to do with that kind of representation and it is a strained argument that a debt collection call to a debtor somehow constitutes a representation that ICR has some sort of sponsorship, approval or certification. Therefore, this portion of the Commonwealth's claims must be dismissed.

Under the second sub-section, the Commonwealth maintains that somehow the Amended Complaint sets forth facts as to affiliation, connection with or certification by another. Again, there are no factual allegations in the Amended Complaint that any ICR Defendant ever represented to another that ICR had a certification, affiliation or connection to some other organization. Therefore, this portion of the Commonwealth's claims must be dismissed

Under the third sub-section the ICR Defendants are accused of violating, the Commonwealth asserts that the factual allegations of this Amended Complaint somehow constitute representations as to *goods* or *services* that have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." Again, a plain reading of this sub-section shows that it is aimed at a company making representations to a consumer that a good would have an approval (such as the FDA, etc.) or uses that it does not have (*e.g.,* a representation that some sort of "miracle drug' has the benefit of curing cancer when the fake elixir does not have that benefit). Therefore, this portion of the Commonwealth's claims must be dismissed

That leaves one item for the Commonwealth: the "catch-all" at sub-section xxi, which states that any fraudulent or deceptive conduct that has the likelihood of causing confusion or misunderstanding would be a violation. However, the Court needs to note two items when using this so-called catch-all. First, the conduct has to be deceptive. Second the alleged representation must have the likelihood of causing confusion. The Attorney General does not discuss what the legal standard is for the likelihood of causing confusion or of misunderstanding. In the world of debt collection, the standard would be akin to the "least sophisticated consumer" standard. The "least sophisticated consumer" is someone who is naïve or gullible. Plaintiffs ignore that the businesses that owe commercial debts could never be a "least sophisticated consumer."[3]

Third, there must be some sort of loss or damage on the part of the person to whom the misrepresentation was directed. Conspicuously absent from the Amended Complaint is a single factual allegation identifying (i) anyone that supposedly paid the ICR Defendants as a result of the alleged misrepresentations or (ii) an amount supposedly paid by one of these business debtors. Due to the lack of such factual pleading, neither Plaintiff has the standing to bring this action.

C. The Attorney General, In Its Prayer For Relief, Cannot Seek Any Injunctive Relief Effective Outside Of The Commonwealth And Cannot Seek Any Restitutionary Type Of Relief For Any Person Or Entity Outside Of The Commonwealth.

In the Prayer for Relief, Plaintiffs are jointly making the request for relief, which would mean that the Attorney General seeks a permanent injunction as well as redress for businesses who have allegedly been financially harmed. The Attorney General does not clarify that it is seeking injunctive relief only *within the Commonwealth* or for restitutionary measures for parties residing *within the Commonwealth*. As such, the ICR Defendants (and the Court) are left to assume that

[3] Likewise, a commercial enterprise should not be considered a "reasonable consumer" under applicable FTC standards. The very fact that the business entity is a commercial enterprise means that the business is not a typical consumer.

the Attorney General's joint request with the FTC would include nationwide injunctive relief and redress for consumers nationwide. The Attorney General does not possess such powers.

In the Opposition Memorandum, the Commonwealth quotes from 73 P.S. § 201-4, which indicates that "[w]henever the Attorney General . . . has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice." One fact the Commonwealth seems to conveniently ignore is that each and every one of the ICR Defendants is domiciled in the State of New York. *See*, Amended Complaint at paragraph 13, acknowledging that ICR is a New York entity. The Commonwealth also conveniently ignores that the ICR Defendants, according to the allegations, have done business nationwide, from their New York location. It is simply not legally possible for the Attorney General to seek an injunction against New York entities from doing business in jurisdictions other than Pennsylvania.

The UTPCPL itself says that the Attorney General must have reason to believe that a defendant is violating section 3 of the Act. It would certainly be novel for the Attorney General to claim that section 3 of the UTPCPL applies in 49 other states and that the Attorney General has such a broad sweeping power to impose an injunction on out of state entities and make them follow Pennsylvania law in 49 other states. This is simply an impossible leap, and the Commonwealth does not have the power to demand relief as broad as a national injunction under the UTPCPL.

Since the Commonwealth cannot seek a nationwide injunction imposing Pennsylvania law requirements in 49 other states, it follows that the Commonwealth cannot then seek any other form of redress potentially available under the UTPCPL for entities outside the Commonwealth. The

Commonwealth, anticipating the argument that it does not possess powers to obtain nationwide injunctive or monetary relief with regard to the ICR Defendants, refers the Court to *Danganan v. Guardian Pro. Servs*., 645 Pa. 181, 179 A.3d 9 (2018) (a private right of action case under the UTPCPL where an injunction would not be at issue) for the proposition that the UTPCPL protects those who reside *outside* the Commonwealth as well as Pennsylvania residents. In bringing that case to this Court's attention, the Commonwealth ignores this simple fact: the defendant in that case was headquartered *within Pennsylvania*. In other words, the case holds that a consumer in another state affected by a company *based in Pennsylvania* could sue that Pennsylvania business in Pennsylvania courts for a violation of Pennsylvania law. That is not what it is happening here: the Commonwealth is seeking an injunction against New York defendants which would prohibit (enjoin) their business from operating in 49 other states. The Attorney General simply does not have that power. As set forth above, the Commonwealth's case against the ICR Defendants should be dismissed for multiple reasons, primarily that the accounts at issue in this case are for business-to-business transactions. But in the event that this Court permits this action to continue, it should be made clear that the Commonwealth only has jurisdiction under the UTPCPL with regard to businesses domiciled within Pennsylvania.

## II. PLAINTIFFS HAVE FAILED TO ESTABLISH THAT THE ICR DEFENDANTS HAVE A LEGAL OBLIGATION OR DUTY TO INDEPENDENTLY VERIFY A COMMERCIAL DEBT PRIOR TO ATTEMPTING COLLECTION EFFORTS OR WHEN A BUSINESS DISPUTES A COMMERCIAL DEBT.

Plaintiffs argue that the entirety of the ICR Defendants' arguments surrounding the lack of any duty or obligation to verify a commercial debt should be rejected simply because the ICR Defendants reference the Fair Debt Collection Practices Act (the "FDCPA"). While the Plaintiffs' allegations do not stem from violations of the FDCPA, what the Plaintiffs fail to grasp, however, is that the comparison and contrast of the collection of consumer debts pursuant to the FDCPA,

with the collection of commercial debts, which are not subject to the FDCPA, is necessary to establish and understand the differing obligations and duties when collecting *commercial* versus *consumer* debt. Essentially Plaintiffs are asking this Court to create a *stricter and more burdensome standard* for the collection of *commercial* debts than for the collection of consumer debts from individual persons, which is not provided for in caselaw, or any statute or regulation. In fact, Plaintiffs have not citied a single case, statute, or regulation in their Opposition Memorandum to contradict the ICR Defendants' contention that there is no legal obligation for the ICR Defendants to independently verify a commercial debt prior to initiating collection efforts or after a business disputes a commercial debt. The ICR Defendants' entire point in explaining and referencing the FDCPA was to illustrate that Plaintiffs' entire complaint rests on a legal theory that would turn the FDCPA on its head, stating that businesses are entitled to more protection than individual consumers. The ICR Defendants have no duty or obligation to independently verify the debts which they collect on AFS' behalf; they are permitted to rely upon AFS' information that the debts are valid. Plaintiffs have failed to prove otherwise.

Plaintiffs then argue that since the Amended Complaint does not specifically allege that the ICR Defendants violated an obligation to verify the debts, but instead contains sweeping conclusory allegations that the ICR Defendants violated the FTC Act and the UTPCPL by making deceptive representations to induce payment, the Motion to Dismiss should not be granted. However, Plaintiffs fail to acknowledge or recognize that since the ICR Defendants were permitted to rely upon the information provided by AFS regarding the debts, there can be no deceptive conduct on the part of the ICR Defendants. In the Amended Complaint, Plaintiffs allege that the ICR Defendants engaged in deceptive conduct by representing that the debts were valid and consumers had a legal obligation to pay the debts. There is no deception when the ICR Defendants

represent that the debts are valid and that businesses have a legal obligation to pay the debts, because the ICR Defendants believe the debts are valid based upon the information provided to them, which they are legally permitted to rely upon.

Plaintiffs further argue that it is a factual contention that the ICR Defendants are permitted to rely upon the information provided by the AFS Defendants, and thus, as a factual contention, not subject to a Motion to Dismiss. However, it is not a factual contention, it is legal contention, which the Plaintiffs have failed to contradict. Again, Plaintiffs have failed to offer before this Court even one case or statute that holds the ICR Defendants have a legal obligation or duty to verify a debt either prior to collection or after receiving a dispute from a business.

Additionally, Plaintiffs attempt to bolster their arguments by asserting that the ICR Defendants should have known based on the number of complaints received that the debts were not valid. However, Plaintiffs fail to acknowledge the industry in which ICR Defendants operate, debt collection. A debt is only referred to collection after a lengthy period of time in which the original creditor attempted, but was unable to, collect the debt for the goods sold or services performed. Thus, a debt collection agency is involved with a subset of businesses, that for whatever reasons, refused to pay the debt originally. Therefore, it logically follows that the ICR Defendants will meet with some resistance and complaints from the businesses it attempts to collect debts from. Moreover, the majority of complaints are unverified complaints on the Better Business Bureau website. However, just because one reads it on the internet does not make it true. As the Plaintiffs must clearly realize, the internet is ripe with untruths.

## III. CONCLUSION

For the above stated reasons, the ICR Defendants respectfully request that this Honorable Court grant its' Motion to Dismiss.

Respectfully submitted,
**HLADIK, ONORATO & FEDERMAN, LLP**

Date: March 25, 2021

By: __/s/ Stephen M. Hladik______

Stephen M. Hladik, Esquire
Pamela Cunningham, Esquire
*Attorneys for Defendants*
*International Credit Recovery, Inc.,*
*Richard Diorio, Jr., and*
*Cynthia Powell*