IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, *et al.*,<br>*Plaintiffs*,<br>v.<br>AMERICAN FUTURE SYSTEMS, INC., *et al.*<br>*Defendants*. | Civil Action No. 2:20-cv-02266 |

**AFS'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

## I. INTRODUCTION & SUMMARY

The FTC concedes, as it must, that its claims for monetary relief must be dismissed in light of the Supreme Court's ruling in *AMG Capital Management v. FTC*, 141 S. Ct. 1341 (April 22, 2021), which unambiguously held that the FTC cannot obtain money damages or any other backward-looking remedy under Section 13(b) of the FTC Act.

Yet, incredibly, the FTC seeks to proceed with this case as if *AMG Capital* has no effect on its Amended Complaint, which focuses almost exclusively on historic, retrospective conduct. The FTC selectively and deceptively cites the *AMG Capital* decision to claim it is nevertheless entitled to a "permanent" injunction. But the FTC never refers or responds to the Supreme Court's clear admonition that the FTC cannot invoke Section 13(b) to seek permanent injunction relief that is not directly related to a previously obtained preliminary injunction. The Supreme Court also made clear that Section 13(b) is not to be used as a tool to investigate and prosecute purported past misconduct; rather, it was intended to be a mere stop-gap measure to halt *ongoing* illegal conduct *while* administrative proceedings were instituted and pending. That is why

Section 13(b) may be invoked only upon plausible allegations that the defendant "*is violating*" or "is about to violate (not 'has violated')" the law, *id.* at 1348, and why the Court observed that relief provided by Section 13(b) should be "directly related" to previously granted temporary or preliminary injunctive relief issued in anticipation of administrative proceedings, *id.* at 1346, 1348.

Unlike the cases cited by the FTC in its Opposition, until this moment, the FTC has made no pretense of claiming that Defendants were *presently* violating the law; indeed, it has permitted AFS to proceed with its business during the course of this years-long investigation and litigation without a whiff of concern that any present unlawful acts were occurring. If the FTC actually believed that any present violations of the FTC Act were ongoing, would it not have attempted to seek a preliminary injunction pending the resolution of this case? It did not, because it has no such evidence. Instead, it has deliberately avoided any hearing or consideration of the merits where AFS could defend itself, preferring to bully and badger AFS with expensive and time-consuming "discovery" in a fishing expedition hoping to find some cherry-picked examples of supposed misconduct and browbeat AFS into surrender. All the FTC can muster are implausible and conclusory pleadings that seek to extrapolate present violations based on purported—but non-existent—violations over a 23-year period that, at most, would constitute a miniscule percentage of the tens of thousands of interactions AFS has had each year and the thousands of satisfied and repeat subscribers. The FTC's claim for an injunction is not proper and should be dismissed.

## II. THE MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE GRANTED BECAUSE THE FTC IS WITHOUT STATUTORY AUTHORITY TO SEEK THE RELIEF CLAIMED.

As noted above, the FTC concedes that *AMG Capital* prohibits it from using Section 13(b) to seek monetary relief, and thus, it is undisputed that AFS's motion should be granted as to those claims for relief.[1] The only remaining dispute is whether the FTC can still invoke Section 13(b) to support a freestanding claim for permanent injunctive relief: (a) based on its bare-bone and implausible claims of ongoing violations of the FTC Act; (b) without having earlier obtained—or even sought—any preliminary injunctive relief through FTC's administrative law procedures or in a federal court; or, (c) without any prospect or previous allegation of a need to immediately halt violations of the Act, and absent any indication that it intends to utilize the administrative procedures established by Section 19 of the Act, or could justify doing so at this late date (which would be unfair, unduly burdensome, and grossly prejudicial to the Defendants). *AMG Capital*, 141 S. Ct. at 1347–48.

This is not about wordplay or semantically parsing the *AMG Capital* decision as the FTC suggests. (Opp. 9-10). The grant of AFS's motion is compelled by the very core of the Court's analysis in *AMG Capital*. Justice Breyer's opinion for a unanimous court begins by setting forth the history of the FTC's path towards its increasing misuse of Section 13(b) in a manner divorced from its limited intended purpose as an adjunct to administrative proceedings, not as a standalone endpoint. 141 S. Ct. at 1345-47 (detailing the FTC's expanding use of Section 13(b) and how, in 2019, it began bringing "far more cases in court than it does in the administrative

---

[1] Notwithstanding the fact that FTC has done nothing to narrow its pleadings, alert the Court of the *AMG Capital* decision, or modify its aggressive, historical discovery demands, the FTC asserts it "has not pursued any claim for equitable monetary relief in this matter" since the *AMG* decision. Opp. 7. The FTC recognizes, however, it is proper for the Court to grant AFS's motion to dismiss as to the claims for monetary relief. *Id.* at 7-8.

process"). To be sure, the Court acknowledged that Section 13(b) authorize a Court-ordered "permanent injunction." *Id.* at 1347; *see* 15 U.S.C. § 53(b) ("[I]n *proper cases* the Commission may seek, and after proper proof, the court may issue, a permanent injunction." (emphasis added)). But the Court admonished that such language must be read in light of "[t]he language and structure of § 13(b), taken as a whole," which "indicate that the words 'permanent injunction' ***have a limited purpose***." *Id.* at 1348 (emphasis added). That "limited purpose" is illuminated by the "lengthy provision" in which the grant of injunctive power is provided. The Court explained:

> Taken as a whole, the provision focuses upon relief that is prospective, not retrospective. Consider the words "is violating" and "is about to violate" (not "has violated") setting forth when the Commission may request injunctive relief. Consider too the words "pending the issuance of a complaint," "until such complaint is dismissed," "temporary restraining order," "preliminary injunction," and so forth in the first half of the section. These words reflect that the provision ***addresses a specific problem, namely, that of stopping seemingly unfair practices from taking place while the Commission determines their lawfulness***. . . . And the appearance of the words "permanent injunction" (as a proviso) ***suggests that those words are directly related to a previously issued preliminary injunction.***

141 S. Ct. at 1348 (emphasis added). The FTC deliberately ignores all of this, and tries to focus this Court's attention only on the Supreme Court's next sentence, which offers that these provisions "might also be read, for example, as granting authority for the Commission to go one step beyond the provisional and ("***in proper cases***") dispense with administrative proceedings to seek what the words literally say (namely, an injunction)." *Id.* But while the Court might have been more descriptive what constitutes a "proper case" for a court-ordered permanent injunction, it did make clear that the FTC cannot broadly use "section 13(b) as a substitute for § 5 and § 19," *id.* at 1349, and, as noted above, was highly critical of the FTC's avoidance of available administrative procedures. "In light of the historical importance of administrative proceedings,

that reading [which appears to be the "reading" that the FTC is now reaching for] would allow a small statutory tail [Section 13(b)] to wag a very large dog [Section 19]." *Id.* at 1348. In sum, the FTC makes no pretense that its claim for an injunction has any connection to Section 13(b)'s purpose of providing a stop-gap pending commencement of FTC administrative proceedings, which it never instituted during the three years of pre-litigation investigation or during the fifteen months this case has been pending. As a result, it falls squarely within the type of relief specifically prohibited by the Supreme Court's decision in *AMG*.

More fundamentally, the FTC's Opposition only underscores the flimsiness of any claim to ongoing violations of the FTC Act. The FTC hinges its claim for injunctive relief on a single paragraph of its lengthy Amended Complaint (Opp. 12): Paragraph 55, which makes the barest of conclusory claims that "[b]ased on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission." ECF 20-3. This type of flatly conclusory allegation (as compared to the detailed description in AFS's Answer of how it takes steps to avoid misleading its subscribers) falls lightyears short of basic pleading requirements under *Iqbal* or *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" (internal quotations omitted)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)). The FTC claims AFS "raise no argument regarding paragraph 55." Opp. 12. AFS did not address Paragraph 55 in its opening memorandum because it *contains no facts whatsoever*, and therefore AFS could not imagine that the FTC would rely upon a one line conclusory allegation as the

primary argument supporting a years' long investigation, followed by intrusive and burdensome litigation to claim an entitlement to injunctive relief.

Without any facts to support any claim that ongoing or future violations will occur, the FTC tries to bootstrap its retrospective and historic allegations into a claim for injunctive relief. *See* Opp. 13- 15. To do this, the FTC tries to rely on the Third Circuit's use of the "likelihood of recurrence" language in *FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 159 (3d Cir. 2019) and *FTC v. AbbVie, Inc.*, 976 F.3d 327, 381 (3d Cir. 2020). Opp. 14. Tellingly, the FTC ignores the rest of *Shire ViroPharma,* which rejected "FTC's interpretation—that 'about to violate' means only that a violation could recur at some future point" and which further "reject[ed] the FTC's contention that Section 13(b)'s 'is violating' or 'is about to violate' language can be satisfied by showing a violation in the distant past and a vague and generalized [alleged] likelihood of recurrent conduct." 917 F.3d at 159. Significantly, the FTC does not and cannot cite *a single* factual allegation that demonstrates it can meet any standard which satisfies the U.S. Supreme Court's detailed analysis of the governing law in *AMG*. Instead, the FTC relies on the unadorned conclusion that "a defendant's past conduct is relevant," Opp. 15, without even attempting to connect its smattering of allegations of past violations and unverified hearsay complaints into a plausible claim that ongoing violations are presently occurring. Indeed, the ***most recent*** consumer complaints cited in the Amended Complaint pertaining to AFS date back to ***2013***—more than ***seven years***, before the Amended Complaint was filed; and even these are based on hearsay, unverified "alerts" reported by the discredited and biased Better Business Bureau.

The absence of any current factual allegations is particularly glaring in light of the FTC's *multi-year* pre-suit investigation through which the FTC collected 70,000 pages of documentation from AFS, recordings of 300 sales calls, spent significant time listening to

recorded AFS sales calls which FTC elected to monitor, and had access to AFS's scripts, policies, and procedures.[2] If these comprehensive materials contained any plausible basis to plead ongoing or future violations, surely the FTC would have asserted it. Their failure to cite even a single particular violation is revealing and demonstrates that the FTC cannot go beyond "vague and generalized" claims that do not suffice to sustain a claim for injunctive relief. *See FTC v. Facebook, Inc.*, --- F. Supp 3d ---, 2021 WL 2643627, at *18-19 (D. D.C. June 28, 2021) (dismissing request for relief under Section 13(b) because the FTC failed to plead that any ongoing or imminent violation of the antitrust laws and the defendant had not engaged in any of the conduct complained of in eight years); *see also FTC v. AdvoCare International, L.P.*, Case No. 19-715, 2020 WL 6741968, at *5 (E.D Tex. Nov. 16, 2020) (dismissing request for an injunction under Section13(b) where "every factual allegation that the FTC presents refers to past misconduct").

## III. DISMISSAL OF THE REMAINING STATE-LAW CLAIMS IS NOW PROPER AND IS NOT BARRED AS A "RECONSIDERATION" OF THE COURT'S PRIOR ORDER.

Because all of the federal claims must be dismissed, this Court should decline to exercise supplemental jurisdiction over the newly added state-law claims, as demonstrated in AFS's

---

[2] Although constrained by the applicable rules from introducing evidence, AFS nevertheless notes that it regularly monitors its own sales calls to ensure quality, adherence to the scripts and policies, and compliance with all applicable laws. As an example, AFS reviewed the recordings on the 20 tapes requested by and produced to FTC during its pre-suit investigation. AFS found 98.9% of the calls followed the script, none used the words "free" or "trial," which are considered quality infractions by AFS, and none misrepresented that the newsletters or reference guides were free. In 89 out of 275 calls, an order was placed. In all but 1 of the 89 placed orders, the script was delivered in its entirety and the customers were in agreement with the offer. In one exception where an order was placed after the sales representative deviated from the script, the customer canceled after receiving 5 issues of the newsletter and no money was collected. That same customer ordered another subscription to the same newsletter 5 months later, and cancelled after the second issue. The FTC's Amended Complaint cites not a single call from these produced tapes.

opening memorandum of law (Opening Mem. 14-17)**.** The FTC is incorrect that this request amounts to an improper request for reconsideration of this Court's prior ruling [ECF No. 42] (Opp. 17-18). Rather, AFS's prior opposition to the exercise of supplemental jurisdiction over the state-law claims pre-dated *AMG Capital* and was premised on the federal claims remaining in the Amended Complaint. And even if the Court were to construe this as a reconsideration motion (which it is not), it would be procedurally proper in light of the change in controlling law (the *AMG Capital* decision) and change in operative facts (dismissal of all federal claims). *See Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, Case No. 02-4373, 2006 WL 2385519, at *1 (E.D. Pa. Aug. 16, 2006) (granting reconsideration as a result of an intervening change in the controlling law).

The Commonwealth's separate Opposition contributes little to the analytical mix. Its principle thrust appears to be that the Court should exercise supplemental jurisdiction because the parties litigated a motion to dismiss in this forum. Commw. Opp. 2-3. This argument is unavailing. As explained at-length in AFS's opening memorandum, it takes more than Rule 12 motion practice to justify this Court's continued jurisdiction over state law claims where the basis for federal jurisdiction no longer exists. *See Overall v. Univ. of Pennsylvania*, 393 F. Supp. 2d 341, 343 (E. D. Pa. 2005) (remanding case to state court in which *summary judgment* had previously been granted and then appealed to Third Circuit); *see also Bloom v. Independence Blue Cross*, 340 F. Supp. 3d 516, 525 (E.D. Pa. 2018) (declining to extent supplemental jurisdiction despite the completion of discovery). The same considerations of judicial economy, convenience, and fairness must guide this Court's decision to exercise supplemental jurisdiction as in *Overall* or *Bloom*, and warrant this Court's declination of jurisdiction over the Commonwealth's claims in this matter.

## IV. THE FTC'S REPEATED RELIANCE ON *VYERA PHARMACEUTICALS* IS MISPLACED.

The FTC relies repeatedly on the Southern District of New York's decisions in *FTC v. Vyera Pharmaceuticals, LLC,* Case No. 20-706, both in its Opposition to AFS's Motion and its Reply to the ICR Defendants' Response to AFS's Motion. The citation is inapposite. Factually, *Vyera* is distinguishable because the FTC's operative pleading in that matter contained far more detail about the defendants' on-going or threatened misconduct than the one the FTC defends here. As noted in Judge Cote's opinion addressing defendants' motion to dismiss on *Shire* grounds, the FTC alleged the existence of a web of anticompetitive agreements that allowed defendants to maintain control of the market for a branded drug, asserted that web of agreements continued to impede generic entrants into the market place up to the filing of the complaint, and pleaded that even though a generic competitor to the branded drug had obtained FDA approval, that approval was obtained *after* the filing of the litigation. *See FTC v. Vyera Pharma., LLC,* 479 F. Supp. 3d 31, 44 (S.D.N.Y. 2020). In the matter *sub judice*, however, there are no similar allegations; as AFS has laid out, the FTC's Amended Complaint contains only bare-bones conclusory allegations that do not plausibly point to facts supporting any on-going or threatened misconduct.

*Vyera* is further distinguishable on procedural grounds. Following the Supreme Court's decision in *AMG*, the FTC affirmatively moved in *Vyera* to withdraw its claim for equitable monetary relief, Defendants cross-moved for summary judgment, and rather than rule on either motion, the Court "dismissed" the FTC's "prayer for equitable monetary relief" without explanation. *See* Order, June 2, 2021, ECF No. 453. The case at bar is not in a similar posture. AFS seeks judgment on the pleadings because *AMG* and other authority undermines the *entire legal basis* for the FTC's case, not just it claims for equitable monetary relief. *Those* issues were

*not* before the court in *Vyera* and certainly were not addressed in any meaningful way in the court's post-*AMG* decision. In sum, the FTC's reliance on *Vyera Pharmaceuticals* is misplaced.

## V. THE ONLY DECEPTION IN THIS CASE REMAINS TO BE CONDUCT OF THE FTC.

The FTC has done everything possible in this case to weaponize discovery and harass the defendants, thereby avoiding any hearing or proceeding that might allow AFS to defend its business practices and reputation against the FTC's false claims. Now, the FTC asks this Court to ignore the Supreme Court's ruling in *AMG Capital*, which deplores the FTC's conduct in avoiding the administrative proceedings and court hearings that would have accompanied a cease and desist order or preliminary injunction. The Supreme Court also requires that a "permanent" injunction must be preceded by a preliminary injunction. The FTC threatens now (Opp. 7-8) to obtain a Congressional reversal of the Supreme Court's rulings and to use such to re-impose the threat of draconian financial disaster to bring these defendants to their knees. Further, the FTC purports to declare new legal principles that are plainly absurd. For example, they claim that when AFS's Motion to Dismiss was filed in February 2021, "all of the arguments that they now make in support of the present Motion were available to them," (Opp. 3), and are presumably not to be considered by this Court, even though *AMG Capital* was not decided until two months after.

## VI. CONCLUSION

AFS respectfully requests that this Court grant its motion for judgment on the pleadings under Rule 12(c) and enter an order dismissing *with prejudice* the FTC's claims and dismissing the Commonwealth of Pennsylvania's claims for lack of jurisdiction. AFS further respectfully requests that the Court award them all such other and further relief to which they may be justly entitled.

Respectfully submitted,

**WHITE AND WILLIAMS, LLP**

*/s/ David H. Marion*
David H. Marion, Esquire
Morgan S. Birch, Esquire
PA ID Nos. 3590; 319358
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7000
Fax: (215) 789-7517
*mariond@whiteandwilliams.com*
*birchm@whiteandwilliams.com*

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

*/s/ Mark S. Stewart*
Mark S. Stewart, Esquire
Casey Coyle, Esquire
PA ID Nos. 75958; 307712
213 Market Street, 8th Floor
Harrisburg, PA 17101
Tel: (717) 237-7192
Fax: (717) 237-6019
*mstewart@eckertseamans.com*
*ccoyle@eckertseamans.com*

**DLA PIPER LLP**

*/s/ Ilana H. Eisenstein*
Ilana H. Eisenstein, Esquire
PA ID No. 94907
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3351
Fax: (215) 606-3551
*Ilana.eisenstein@us.dlapiper.com*

*Attorneys for Defendants American Future Systems, Inc.,*
*Progressive Business Publications of New Jersey, Inc., and Edward M. Satell*

Dated: July 14, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2021 the foregoing Reply Brief in Support of its Motion for Judgment on the Pleadings filed by AFS was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt who may access this filing through the Court's system.

*/s/ Morgan S. Birch*
Morgan S. Birch