**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| FEDERAL TRADE COMMISSION, *et al.*, | : | Civil Action No. 2:20-cv-02266 |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN FUTURE SYSTEMS, INC., *et al.*, | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

**AFS'S RESPONSE IN OPPOSITION TO PLAINTIFFS' JOINT MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS AND MOTION FOR SANCTIONS**

Defendants American Future Systems, Inc., Progressive Business Publications of New Jersey, Inc., and Edward M. Satell (collectively referred to herein as "AFS"), by their undersigned counsel, file this Response in Opposition to Plaintiffs' Joint Motion to Compel the Production of Documents and Motion for Sanctions [ECF No. 280].

As set forth more fully in the accompanying Memorandum of Law, which is incorporated by reference herein:

1.      The Slack messages sought by Plaintiffs are not in AFS's possession, custody, or control, but rather reside with Slack itself.  AFS does not have the legal right to access this information on demand.  Plaintiffs admit that a court order is required for Slack to produce "private channel" Slack communications.  Plaintiffs further concede that "public channel" Slack communications have minimal relevance, and are inaccessible to AFS after 90 days, without changes to Slack services.

2.      This Court should not order Slack to produce these internal communications because the burden and costs of review and production of this information is not proportional to

the needs of the case.  Slack communications involve only internal communications with little or no relevance to AFS's interactions with its customers, which is the only matter at issue in this lawsuit.  Any ongoing Slack communications, moreover, are unlikely to be of any present relevance since, as of September 3, 2021, AFS entirely ceased telemarketing sales for its publications business, with no prospect for returning to same.

3.     Plaintiffs have no basis to request sanctions.  AFS complied with its discovery obligations by producing the Slack information captured in AFS's custodial files, including in pre-suit discovery in 2018.  AFS, by contrast, was not required to produce Slack information not within its possession, custody, or control.  Moreover, despite the fact that Plaintiffs long evidenced their knowledge of AFS's use of Slack, including by using AFS Slack communications as exhibits to their own motions and designating Slack communications as a 30(b)(6) topic, Plaintiffs failed to seek access to this third-party data in a timely fashion.

WHEREFORE, AFS respectfully requests that Plaintiffs' Joint Motion be denied.

Respectfully submitted,

**WHITE AND WILLIAMS, LLP**

*/s/ Morgan S. Birch*
David H. Marion, Esquire
Morgan S. Birch, Esquire
PA ID Nos. 3590; 319358
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7000
Fax: (215) 789-7517
*mariond@whiteandwilliams.com*
*birchm@whiteandwilliams.com*

**FAEGRE DRINKER BIDDLE & REATH, LLP**

*/s/ Paul H. Saint-Antoine*
Paul H. Saint-Antoine, Esquire
PA Attorney ID No. 526224
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Tel: (215) 988-2700
Fax: (215) 988-2757
*paulsaint-antoine@faegredrinker.com*
*andrew.reeve@faegredrinker.com*

**DLA PIPER LLP**

*/s/ Ilana H. Eisenstein*
Ilana H. Eisenstein, Esquire
PA ID No. 94907
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3351
Fax: (215) 606-3551
*ilana.eisenstein@us.dlapiper.com*

*Attorneys for Defendants American Future Systems, Inc.,*
*Progressive Business Publications of New Jersey, Inc., and Edward M. Satell*

Dated: February 14, 2023

**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | : | Civil Action No. 2:20-cv-02266 |
|  | : |  |
| *Plaintiffs*, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| AMERICAN FUTURE SYSTEMS, INC., *et al.*, | : |  |
|  | : |  |
| *Defendants*. | : |  |
|  | : |  |

**AFS'S MEMORANDUM OF LAW IN SUPPORT OF ITS RESPONSE
IN OPPOSITION TO PLAINTIFFS' JOINT MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS AND MOTION FOR SANCTIONS**

30294272v.1

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION AND FACTUAL BACKGROUND ....................................................1

II.    ARGUMENT ...........................................................................................................5

    A.    AFS Does Not Have Possession, Custody, or Control Over the Slack Messages. ....................................................................................................5

        1.    AFS Does Not Have Possession, Custody, or Control Over Private Slack Messages or Private-Channel Slack Messages. .................................7

        2.    AFS Has No Possession, Custody, or Control Over Public-Channel Slack Messages. ....................................................................................9

        3.    AFS Has Produced All of Its Relevant Slack Messages that Were Transmitted Via Email. ...........................................................................10

    B.    Production of Slack Information Is Not Proportional to the Needs of the Case. .........................................................................................................11

    C.    If this Court Were to Order Slack to Produce AFS Documents, Any Production Should Be Refined to Proportionately Meet the Needs of this Case and Be Subject to Relevance and Privilege Review. ....................................15

III.    PLAINTIFFS HAVE NO BASIS FOR DISCOVERY  SANCTIONS. ...........................17

IV.    CONCLUSION .......................................................................................................19

30294272v.1

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Barton v. RCI, LLC*,
No. 10-3657 (PGS), 2013 U.S. Dist. LEXIS 46590 (D.N.J. Mar. 28, 2013) ..........................6

*Benebone LLC v. Pet Qwerks, Inc.*,
No. 8:20-cv-00850-AB-AFMx, 2021 U.S. Dist. LEXIS 43449 (C.D. Cal. Feb.
18, 2021) ....................................................................................................................................7

*Beneficial Corp. v. F.T.C.*,
542 F.2d 611 (3d Cir. 1976)......................................................................................................12

*Calendar Research LLC v. StubHub, Inc.*,
No. 17-4062-SVW, 2019 WL 1581406 (C.D. Cal. Mar 14, 2019) ...........................................7

*Davis v. Gamesa Tech. Corp.*,
No. 08-4536, 2009 U.S. Dist. LEXIS 97507 (E.D. Pa. Oct. 20, 2009) ....................................6

*Gerling Int'l Ins. Co. v. C.I.R.*,
839 F.2d 131 (3d Cir. 1988)..................................................................................................6, 8

*In re Actavis Holdco U.S., Inc.*,
No. 19-3549, 2019 WL 8437021 (3d Cir. Dec. 6, 2019)........................................................16

*Inline Connection Corp. v. AOL Time Warner Inc.*,
No. C A 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006)..................................3, 9, 10

*Laub v. Horbaczewski*,
No. CV 17-6210-JAK, 2020 U.S. Dist. LEXIS 247102 (C.D. Cal. Nov. 17,
2020) .............................................................................................................................6, 7, 10

*Mobile Equity Corp. v. Walmart Inc.*,
No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 1135 (E.D. Tex. Jan. 4,
2022) ........................................................................................................................................15

*Newill v. Campbell Transp. Co.*,
No. 2:12-CV-1344, 2013 WL 6002349 (W.D. Pa. Nov. 12, 2013)..........................................17

*Pierce v. Underwood*,
487 U.S. 552 (1988)..................................................................................................................18

*Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*,
316 F.R.D. 89 (D. Del. 2016) ....................................................................................................6

-ii-

*Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC,*
   No. 19-10119-MLW, 2022 U.S. Dist. LEXIS 162470 at \*38-39 (D. Mass.
   Sept. 8, 2022) ................................................................................................................15

*Searock v. Stripling,*
   736 F.2d 650 (11th Cir. 1984) ..........................................................................................8

*Tracinda Corp. v. DaimlerChrysler AG,*
   502 F.3d 212 (3d Cir. 2007)..............................................................................................18

*UPMC v. Highmark Inc.,*
   No. 2:12-CV-00692-JFC, 2013 WL 12141530 (W.D. Pa. Jan. 22, 2013)..............................16

## RULES AND STATUTES

FED. R. CIV. P. 26 ............................................................................................................11, 12, 18

Fed. R. Civ. P. 34 ..........................................................................................................6, 10, 17

FED. R. CIV. P. 37 ..................................................................................................................18

The Stored Communication Act, 18 U.S.C. § 2701 et seq. ......................................................7, 8

30294272v.1

Defendants American Future Systems, Inc., Progressive Business Publications of New Jersey, Inc., and Edward M. Satell (collectively referred to herein as "AFS"), by their undersigned counsel, file this Memorandum of Law in Opposition to Plaintiffs' Joint Motion to Compel the Production of Documents and Motion for Sanctions [ECF No. 280].

## I.      INTRODUCTION AND FACTUAL BACKGROUND

AFS cannot and should not be compelled to produce Slack messages because, other than the Slack messages that were directed to AFS employees' email accounts (which AFS has produced), that information is maintained by Slack—a third-party cloud computing service—not by AFS.  AFS does not maintain Slack messages in the ordinary course of business and the information Plaintiffs now demand is outside AFS's possession, custody, or control.

Plaintiffs' arguments to the contrary fail to differentiate between Slack's different levels of service, which allow Slack customers different administrative rights to access their files, control the preservation of data, or request data.  For its publishing business, AFS utilized only the most basic form of Slack services—the "free" version.  Slack's free accounts allow a limited number of individuals to exchange instant messages on private channels but allow an administrator of the account to access "public-channel" messages for only 90 days after they are sent.  Moreover, AFS has no central repository from which AFS could access those messages in the ordinary course of its business.  In contrast, the caselaw and arguments Plaintiffs advance involve companies which use various paid forms of Slack, including its "enterprise functionality," which would have afforded those companies the ability to control and produce

-1-

documents.  AFS did not and does not have that type of Slack service for its publication business.[1]

An important distinction also exists between the potential to access Slack's "public" and "private" channels.[2]  Plaintiffs acknowledge that, with AFS's free Slack services, "private channel" messages are maintained only by Slack itself and can be accessed only through a court order or through a third-party subpoena to Slack with authorization by each individual channel participant—many of whom are former AFS employees who did not have AFS email addresses. AFS, therefore, was not obliged or able to produce Slack private messages, which are estimated to account for 99% of all messages on AFS's publication Slack channel.[3]

As to "public" Slack channels, Plaintiffs know that AFS's "public channels" were of minimal, or no relevance, consisting of personal conversations, pictures of employees' cats, dogs

---

[1]     AFS does have two "paid" accounts for its current Lead Generation business and for SuccessFuel, *see* Townsend Depo Tr., 61: 3-9 [AFS App. 004]; however, as AFS' witnesses have explained, and as Plaintiffs' own 30(b)(6) witnesses have confirmed, these businesses do not sell subscriptions to publications via telemarketing and do not engage in *any* of the alleged practices complained of by Plaintiffs.  *See* Drummond Depo Tr., 166:9-167:3; 217:25-218:10 [AFS App. 008-011].  **Mr. Townsend further explained that since AFS ceased all outbound publication telemarketing sales on September 3, 2021, only one of these channels, SuccessFuel, is being actively used for AFS businesses.**  *See* Townsend Depo Tr., 61: 3-9 [AFS App. 004].

[2]     As Slack's website describes it, "public channels" can by joined by "[a]ny member of your workspace . . . Messages or files posted in a public channel can be searched by other members of your workspace."  By contrast, "[p]rivate channels are for conversations that should not be open to all members. People must be added to a private channel by someone who's already a member of the channel. Messages or files posted in a private channel can only be searched by members of that channel."  *See* Slack Help Center, "Public vs. private channels," *available at https://slack.com/help/articles/360017938993-What-is-a-channel* (last accessed February 14, 2023).

[3]     *See* AFS' January 2, 2023 letter to Plaintiffs, at Plaintiffs' App. 101.

and Christmas trees.[4]  Even then, the public channel messages were only available to AFS for only 90 days.  Although Plaintiffs demand AFS upgrade its Slack services to gain access to a longer time-frame of these minimally relevant, public channel Slack communications, courts have recognized that the "legal right" to demand documents necessary for "possession, custody and control" is governed by the parties' actual contract, not by any hypothetical ability to change the terms of access through upgrades to services. *See, e.g., Inline Connection Corp. v. AOL Time Warner Inc.*, No. C A 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006).

Plaintiffs' Motion is also not proportionate to the needs of the case, which revolves around AFS's *external* sales practices with potential subscribers "through the sales, billing, and collection processes," not *internal* messages among AFS's employees on Slack.  AFS's intent, knowledge, or its employees' mental state is not at issue.  The Plaintiffs' external focus is confirmed not only by the pleadings and causes of action, but also by Plaintiffs' own 30(b)(6) witnesses, who each confirmed that the FTC and the Pennsylvania Attorney General are basing their case on AFS's one-page script used in telemarking calls with potential subscribers. Plaintiffs have had those scripts since long before this lawsuit began.[5]

Meanwhile, even if internal communications among AFS employees were ever relevant, Plaintiffs have received a multitude of them in discovery and do not need duplicative and/or now inaccessible Slack messages.  AFS has produced over **11.6 million pages** of information relating

---

[4]     *See* Townsend Depo Tr., 57: 7-18 ("In a public channel, every – it's generally available to anybody who wants to take a look. And that's where we tend to have the cats and dogs, Christmas trees now. And there are private channels – and also developer questions; my computer is going slow. There's a public channel for that. Private channels might be more the tech team has a channel that is only for interaction among tech people.") [AFS App. 003].

[5]     *See* Bandy Depo. Tr., at 34:3, 6-8 [AFS App. 015]; L. Oleckna Depo. Tr., at 128:15-129:4, [AFS App. 019-020].

to AFS's interactions with its potential and actual subscribers from 2015 through present, including all email and mail correspondence with customers, cancellation requests, customer service notes, customer files, recordings of customer service and telemarketing sales calls, invoices, and collections information.  AFS has also produced over **500,000 pages** of custodial files that include internal email communications among its sales staff.  Plaintiffs have engaged in an enormous fishing expedition for information among those documents, only to resort back to and rely upon the one-page scripts that they have had for many years.  Plaintiffs have failed to justify why they now need to demand additional internal messages, which AFS does not maintain or control, to advance their case.

Given these circumstances, Plaintiffs' demand for sanctions is completely unfounded. AFS has never concealed its use of Slack.  In April and July of 2018, two years before the Complaint was filed and nearly ***five-years ago***, AFS produced documents to the FTC, which included emails and other documents reflecting AFS's use of Slack messaging.  The Plaintiffs knowledge of AFS's Slack communications was further demonstrated in October 2021, when Plaintiffs designated AFS's use of Slack as a 30(b)(6) topic.  AFS did not object to that topic and its designee, William Townsend, testified at length about the type of Slack services used and the nature of the channels at issue.  In addition, as Plaintiffs' own Motion confirms, AFS produced additional documents in its document productions in August, September, and October of 2022, which included several Slack messaging conversations which were sent to users' email address.[6]

---

[6]      Slack users have the ability to turn on a feature which sends Slack messages they would receive to their email address, a feature utilized at times by Colin Drummond (AFS head of telemarking sales), Denise Haney (AFS customer service representative); Mike Gorton (AFS Director of Operations); Meg Haas (AFS quality control representative);  Lisa Kott (AFS customer service representative); Cindy Reasor (AFS customer service representative), Jennifer Rann (AFS CEEL customer service representative); and Nikki Shimmel (AFS customer service representative).

-4-

And, because the information held by Slack is not in AFS's possession, custody, or control, AFS

was not obligated to list Slack in its list of "electronic services" used as repositories for

"electronically stored information."  Yet Plaintiffs have delayed until this late date to demand

Slack information that AFS cannot access.

## II.    ARGUMENT

To summarize, Plaintiffs' Motion to Compel and for Sanctions should be denied because:

(1) AFS lacks possession, custody or control over the Slack messages, which are maintained by

an unaffiliated third-party, Slack, and not AFS; (2) Plaintiffs admit that Slack will produce

private messages *only* with a court order or with authorization by each *individual* current or

former employee participating in the channel; and (3) public-channel messages are of no

relevance and were only accessible to AFS for 90 days.

Meanwhile, AFS produced information about its Slack usage long before the complaint

was filed, producing dozens of emails containing references to Slack, as Plaintiffs acknowledged

since at least October 2021, when they designated Slack messages as a 30(b)(6) topic (Pl. Mot.

3), and certainly since Fall 2022, when they attached emails with Slack content to several of their

own motions.  Their eleventh-hour motion to compel is therefore entirely misplaced: if they have

any entitlement to this information (which they should not given the lack of relevance,

disproportionate burden, and potential cost), Plaintiffs could have, and failed to, seek this

information at an earlier juncture through a third-party subpoena or Court order.  They cannot

now seek sanctions from AFS to make up for their own delay.

### A.    AFS Does Not Have Possession, Custody, or Control Over the Slack Messages.

The Motion to Compel should be denied because AFS lacks the requisite "possession,

custody, or control," over the information maintained by Slack, a third-party collaboration

company.  *See* Fed. R. Civ. P. 34.  The Third Circuit defines "control" as the "legal right to obtain documents on demand."  *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988) (internal quotation omitted).  "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce."  *Id.*  The party seeking production of documents bears the burden of establishing the opposing party's control over those documents.  *See Davis v. Gamesa Tech. Corp.*, No. 08-4536, 2009 U.S. Dist. LEXIS 97507, at *4 (E.D. Pa. Oct. 20, 2009); *Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, 316 F.R.D. 89, 90 (D. Del. 2016); *Barton v. RCI, LLC*, Civil Action No. 10-3657 (PGS), 2013 U.S. Dist. LEXIS 46590, at *17 (D.N.J. Mar. 28, 2013).  Plaintiffs incongruously assert that Slack data is "reasonably accessible to AFS," while in the same paragraph conceding that ***a Court order is required*** for export of Slack data. Pl. Mot. 16 ("stated by Slack's Lead Director of Privacy, all that AFS must do ***is provide an Order from this Court*** for AFS to produce all of its Slack data" (emphasis added)).

Although Plaintiffs cite a few cases involving ***different*** circumstances and Slack services that provide greater levels of data access (Pl. Mot. 18), they tellingly omit any mention of *Laub v. Horbaczewski*, No. CV 17-6210-JAK (KSx), 2020 U.S. Dist. LEXIS 247102 (C.D. Cal. Nov. 17, 2020), the leading case evaluating discovery of basic Slack services like the "free" version of Slack that AFS utilized.  In *Laub*, the defendant (as here) had a low-level Slack plan, and the court held the Slack private channels and messages "were inaccessible to Defendants because they were electronically stored information ("ESI") housed at Slack.com and, therefore, DRL did not have possession, custody, and control over them," and "[t]hus, Defendants have no present obligation to produce those messages and to require them to do so would impose an undue burden."  *Id.* at *4.  The Court in *Laub*, specifically found that the Defendant's Slack plan "does

not permit DRL to search messages sent via 'private' channels or 'direct messages," and that this "tool is only available to accounts on Slack's "Plus" tier or above, which Defendants do not have." *Id.* On that basis, the Court in *Laub* distinguished *Calendar Research LLC v. StubHub, Inc.*, No. 17-4062-SVW, 2019 WL 1581406 (C.D. Cal. Mar 14, 2019)—the case now relied on by these Plaintiffs here—because in that case, "the defendants initially used a free Slack account without access to messages sent over private channels," but "they subsequently upgraded to a premium account that included a utility tool allowing them to extract private channel messages, and the court in that case granted the motion to compel those messages." *See Laub*, 2020 U.S. Dist. LEXIS 259004, at *5 n.3.[7] The Court found that the appropriate method of obtaining such documents would be a third-party subpoena to Slack[8]; however, even then, found that blanket consent to all such documents was "untimely, overbroad, and not proportional to the needs of the case." *Id.* at *5. The same is true here.

### 1. AFS Does Not Have Possession, Custody, or Control Over <u>Private</u> Slack Messages or <u>Private-Channel</u> Slack Messages.

AFS does not have "possession, custody, or control" over the private direct Slack messages (direct messages between two users) or over private-channel Slack messages

---

[7] The other case cited by Plaintiffs, *Benebone LLC v. Pet Qwerks, Inc*., No. 8:20-cv-00850-AB-AFMx, 2021 U.S. Dist. LEXIS 43449, at *3 (C.D. Cal. Feb. 18, 2021), is distinguishable because that case involved a form of Slack service where the messages could be readily accessed and produced by the parties using traditional e-discovery tools that were "comparable to email." Plaintiffs acknowledge that is not the case here.

[8] The Stored Communication Act, 18 U.S.C. § 2701 et seq. might nonetheless prohibit Slack from producing data pursuant to a civil subpoena. *See* Slack, Data Request Overview, *available at https://slack.com/intl/en-gb/trust/data-requests* (providing that the "Stored Communications Act, section 2701 et seq. of Title 18 USC, strictly prohibits a provider such as Slack from disclosing the contents of communications to third parties. A civil subpoena or civil court order is not sufficient under the SCA to obtain content from a Slack workspace.") (last accessed on February 14, 2023).

(messages exchanged within a sub-group of users).  As the Plaintiffs acknowledge, Slack will only export data from all channels if the requestor provides "(a) valid legal process, or (b) consent of members, or (c) a requirement or right under applicable laws in order to export data." Pl. Mot. 12.  Slack requires a ***signed court order*** or consent of all the individual private-channel members before it will export private channel communications and direct messages.[9]  *Id.* at 12-13.  Slack's willingness to produce documents only upon a signed court order or individual members' consent is a far cry from a "legal right to obtain documents on demand."  *Gerling*, 839 F.2d at 140.  *See also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("[C]ontrol is the test with regard to the production of documents [and] is defined not only as possession, but as the legal right to obtain the documents requested on demand").

Plaintiffs provide no applicable legal support for their suggestion, in a footnote, that AFS was somehow obligated to obtain authorization from individual current employees.  For example, the *Sedona Conference Primer on Social Media*, explains, that an employer's demand for employees' social media information "may be viewed as "improper or coercive." and "efforts to compel an organization to produce its employees' information, absent a legal right to do so, would likely run afoul of the [Stored Communications Act]. This is because the organization would lack direct access to the requested information and would instead seek it from the social media provider, a practice forbidden by the SCA."  20 Sedona Conf. J. 1, 38 (2019).  At any rate, obtaining only current employees' consent would be ineffective because Slack requires *all* participants in the private channel to consent, and the majority of those participants are no longer

---

[9]      *See* Slack, "Guide to Slack Import and Export Tools," *available at https://slack.com/help/articles/204897248-Guide-to-Slack-import-and-export-tools#export-overview* (last accessed on February 14, 2023).

employed by AFS, as AFS ceased all outbound publication telemarketing sales as of September 3, 2021.

### 2.  AFS Has No Possession, Custody, or Control Over <u>Public-Channel</u> <u>Slack Messages.</u>

As to the ***public-channel*** Slack messages and information, Plaintiffs concede at the outset that these consist almost entirely of irrelevant personal messages, pet photos, and similar exchanges unrelated to the issues of the litigation.  Pl. Mot. 4.  *See also* Townsend Depo. Tr., 57: 7-11 [AFS App. 003] ("In a public channel, every – it's generally available to anybody who wants to take a look. And that's where we tend to have the cats and dogs, Christmas trees now.").

Slack allows AFS access to public-channel messages through its "free" platform for only 90 days; after 90 days, those messages are no longer accessible to AFS, a point Plaintiffs also concede.  Pl. Mot. 11.[10]  After that time, Plaintiffs' Motion establishes that AFS lacks "possession, custody, or control," of the public-channel messages because to "unlock access" to the message and file history, it must pay to "upgrade its workspace," *i.e.*, change its Slack services to a "paid" account.  Pl. Mot. 11.[11]  Plaintiffs have no legal authority that AFS was obligated to *change* its Slack services and upgrade to a different form of Slack services for purposes of this litigation.  That specific argument was rejected by the well-reasoned decision in *Laub*.  It is also contrary to the basic principle that discovery extends to information kept in the normal course of business operations and does not include an obligation to create new services or information for purposes of litigation.  *See* Fed. R. Civ. P. 34(b)(2)(E).  Moreover, even if AFS

---

[10]     *https://slack.com/help/articles/115002422943-Message-file-and-app-limits-on-the-free-version-of-Slack*, (last accessed February 13, 2023), attached Pl. Mot. at App. 111.

[11]     Plaintiffs cite to the Slack website that states, "Slack will start hiding messages and files older than 90 days to make room for new ones. If you upgrade your workspace to a paid plan, you'll unlock access to your entire message and file history."  Pl. Mot. 11.

could have upgraded to a "paid" account, that does not establish that it has a legal right to the messages in the "free" account.  Rather, courts in the Third Circuit evaluate the actual contractual relationship between the parties.  For example, in *Inline Connection Corp. v. AOL Time Warner Inc*., No. C A 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006), the Court found no legal right of defendants to obtain documents in possession of third-party telephone companies, noting that whether the company "*hypothetically* could have pursued a contractual provision during negotiations which provides [the party] a right of access to [the requested] information *is irrelevant* to the determination of whether [the parties] presently have or had legal control of the [requested] information because *there is no evidence that such a contractual provision exists*."  *Id.* at *3.  Plaintiffs admit that AFS does not have access to the public-channel information under the terms of its current Slack service.

### 3.     AFS Has Produced All of Its Relevant Slack Messages that Were Transmitted Via Email.

While AFS does not have custody over messages and channels housed by Slack, it has produced emails that contain relevant messages from Slack.  That is because Slack allows users to select an option to receive Slack messages via an email address registered to their Slack account.  In addition, Slack messages are also transmitted automatically via email when a Slack user is away from their desk and Slack marks them "away" or "idle." in the Slack application.[12] Lastly, Slack allows users to select an option that ensures any message which mentions the user

---

[12]     Slack's policies on email notification are as follows: "By default, you'll receive email notifications when you join a Slack workspace and haven't enabled mobile notifications. When you're not active in Slack, you can receive email notifications to alert you of mentions, DMs and replies to threads you're following. These notifications are bundled and sent once every 15 minutes or once an hour, depending on your preferences." *See https://slack.com/help/articles/360025446073-Guide-to-Slack-notifications* (last accessed February 13, 2023).

by name, will be automatically sent to the user's email account.[13]  As a result, while there are surely Slack messages that were not captured by email, thousands of Slack messages were contained within AFS's email accounts, collected in AFS's electronic records collection and produced by AFS in response to Plaintiffs' Requests for Production.[14]

> **B.      Production of Slack Information Is Not Proportional to the Needs of the Case.**

The Court should not issue a court order for Slack to produce this data because the demand for duplicative and voluminous *internal* messaging is unduly burdensome and not proportional to the needs of this case, which, as noted above, is entirely focused on AFS's *external* interactions with its subscribers and potential subscribers.  *See* Fed. R. Civ. P. 26 (considerations include "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  The Plaintiffs' demand for Slack messages is also duplicative and cumulative: Plaintiffs have received over 11.6 *million* pages of discovery, including over 500,000 pages of custodial documents that cover every facet of AFS's interactions with its customers including its scripts, written correspondence, emails, invoices, complaint records, recordings of its outbound telemarketing sales calls, and quality assurance records.  The few examples that Plaintiffs muster of purportedly "relevant" Slack messages demonstrate that these messages are likely duplicative

---

[13]      *See e.g.* Pl. Mot. at App 049 (AFS0525555) (Slack message sent from Slack directly to Cindy Reasor, a member of AFS' customer service team, in which Denise Haney write "@cindyincs got this complimentary email yesterday! way to go! You provided great service and I greatly appreciate your assistance. Should I change my mind, I'll be certain to re-order down the road.").

[14]      These documents were produced to the Plaintiffs in August, September, and October of 2022. Moreover, AFS produced dozens more of these Slack messages captured by a user's email address in April and July of 2018, in response to the FTC's CID.

-11-

of material produced through custodial productions or other means.[15]  FED. R. CIV. P.

26(b)(2)(C)(i) and (iii) (The court must also limit discovery if the discovery sought is

"unreasonably cumulative or duplicative," or if it falls outside the scope of Rule 26(b)(1)).  Here

"the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P.

26(b)(1).

First, internal Slack messages have minimal relevance to Plaintiffs' challenge to AFS's

sales practices, which involve its <u>external</u> interactions with subscribers and potential subscribers.

It is undisputed that Slack was never used by AFS to communicate with any of its customers.

Although Plaintiffs claim that Slack messages would capture "employees' unfiltered

commentary and observations," *see* Pl. Mot. 15, their probative value of such commentary and

observations is limited where the cause of action depends on an objective analysis of the trade

practices, not on AFS's or its individual employees' intent.  *See Beneficial Corp. v. F.T.C.*, 542

F.2d 611, 617 (3d Cir. 1976) ("An intent to deceive is not an element of a deceptive advertising

charge under § 5.").  FTC's 30(b)(6) designee, Bikram Bandy, repeatedly emphasized that FTC's

claims were based "primarily on the script," and insisted that other emails and communications

with potential customers were not relevant to the issues in this lawsuit. *See* Bandy Depo. Tr., at

34:3, 6-8 [AFS App. 015].  The 30(b)(6) witness for the Commonwealth made the same

assertions that the "script" was the primary issue in the case. *See* Oleckna Depo. Tr., at 128:15-

129:4, [AFS App. 019-020].  Plaintiffs, in any event, already received extensive custodial

---

[15]     By way of example, the Slack message contained within the email found at Pl. Mot. App.
056-060 (AFS0443364-68), is entirely duplicative of documents produced by both AFS and the
Plaintiffs in this litigation, including: FTC-BBBPA-00026171-75 [AFS App. 021-025]; FTC-
BBBPA-00026151-55 [AFS App. 026-030]; AFS0460447-48 [AFS App. 031-032]; and
AFS0460468-69 [AFS App. 033-034]; and FTC-BBBPA-00026440 [an excel spreadsheet
omitted for brevity].

productions of emails and other electronic documents from twenty-nine employees.  Meanwhile,

Edward M. Satell, AFS's President and a named defendant in this litigation, testified that he has

never used Slack.[16]

Second, Plaintiffs distort the record to claim "Slack messages are essentially the sole

source of written communication by ***AFS's telemarketers***," (Pl. Mot. 5) when the record

demonstrates that telemarketing sales representatives did *not* use Slack or email to

communicate.[17]  The documents Plaintiffs cite do not show use of Slack by AFS telemarketers.

To the contrary, the documents show only that AFS telemarketers used Slack for live video

trainings, which was available to new telemarketers during the COVID-19 shutdown by Colin

Drummond.[18]  Prior to the COVID-19 shutdown, telemarketers were not given broader access to

Slack for messaging purposes.

Plaintiffs also misstate the record by claiming that AFS hired "more than 300 new

telemarketing employees and instructed all of them to communicate via Slack," (Pl. Mot. 6)

refers to an email containing video training information.[19]  And the quotations they cite in their

---

[16]    Mr. Satell did, however, routinely communicate through email and AFS has produced over 1,100 emails sent to or from Mr. Satell.

[17]    AFS' telemarketers were not provided AFS sanction email addresses.  There are some instances in which AFS's telemarketers used their personal email accounts to communicate with other AFS employees.  However, AFS lacks access to those individuals personal email accounts.

[18]    For example, Plaintiffs cite a November 11, 2020 email (sent at the height of COVID-19 restrictions) by Colin Drummond to a new hire asking her to download the "tmleadgen.slack.com" Slack account "so that we can video conference and I can share my screen with you."  *See* Pl. App. 073.  This email was directing the sales representative to training via video chat on an unrelated AFS Slack account (a feature not available on AFS' free account), not to a messaging channel.  *See also* Pl. Mot. 8 and Pl. App.077 (May 13, 2021 email from Drummond to an intern (not a "new telemarketer") to log onto Slack for video training).

[19]    Only 268 new telemarketing employees were hired at AFS' Boardman office in the time period referenced by Plaintiffs and of those, it is estimated 40% did not make it past week two of the training.

Motion (at Pl. Mot.15) are not communications among telemarketing sales representatives, but rather internal communications among AFS's customer service team—AFS employees who had access to email and whose communications with customers and other third-parties have been preserved and produced.[20]

Meanwhile, the examples that Plaintiffs provide underscore the duplicative nature of Slack communications, and AFS has given Plaintiffs hundreds of thousands of emails already from these same custodians.  Contrary to Plaintiffs' assertion that they have found "examples of AFS employees avoiding continuing discussion via email and moving the conversation to Slack." (Pl. Mot. 5), the emails cited as examples by Plaintiffs demonstrate that obtaining Slack messages is likely cumulative and duplicative of emails already produced by AFS.

For example, Plaintiffs identify two emails produced by AFS in this litigation, which reference Slack messaging.  In an unremarkable email exchange in April 2018, a customer service representative, Denise Haney, informed her supervisor, Mike Gorton, that she has canceled a particular account and notified AFS's third-party collection agency to cease all collection efforts, and Mike Gorton responds by instructing Ms. Haney to save the documentation of the interaction and the account in the event the subscriber files a formal complaint with the Better Business Bureau ("BBB"). [Pl. Mot. 5; Pl. App. 033-034]  More than underline: four hours later, Mike Gorton writes "Pls sign into slack."  *Id*.  There is no indication in the email what, if anything relevant, Mike Gorton wishes to discuss via Slack messaging.  Plaintiffs have

---

[20]    By way of example, AFS has produced over 22,000 separate emails and attachments sent to or from AFS's customer service team; over 10,500,000 *million* pages of invoices, letters, and other correspondence sent to AFS from its customers; and 128,962 separate incoming audio recordings or voicemails left by AFS's customers.

mischaracterized this routine exchange as "Mr. Gorton abruptly instruct[ing] Ms. Haney to 'Pls sign into slack.'" *Id.*

Plaintiffs cite a second email exchange in which Ms. Haney requested that AFS's regional director of telemarketing, Heather Wood, listen to a recording of the telemarketing sales call relating to a BBB complaint, which was standard procedure when AFS received a formal complaint. [Pl. Mot. 5; Pl. App. 035] Plaintiffs focus on Heather Wood's response "I slacked you on this…," to imply that the relevant information was on Slack not email. But Plaintiffs omit the rest of the email exchange, produced by AFS in this litigation, which includes Ms. Haney's draft response to the BBB complaint (AFS App. 035-037), Heather Wood's approval of the response, (AFS App. 038-039); and Heather Wood's transmittal of the final version of the response to AFS's Director of Telemarketing, Colin Drummond, (AFS App. 040-042). There is no indication that the Slack communication adds anything of significance to this interaction.

### C.   If this Court Were to Order Slack to Produce AFS Documents, Any Production Should Be Refined to Proportionately to Meet the Needs of this Case and Be Subject to Relevance and Privilege Review.

This Court should not order Slack message production, but if it does, should require Plaintiffs to take reasonable measures to confine the production to relevant, non-privileged, proportionate, and targeted search terms. While Plaintiffs assert that their proposed Court order to Slack would incur only "minor additional cost," that neglects the costs of Slack's production of the data, and of AFS's privilege and relevance review of the documents, and the cost of hosting the data. That is why, even in the cases Plaintiffs cite that do involve production of Slack information, the courts limited Slack message production by custodian, search terms, and other factors where possible. In *Mobile Equity Corp. v. Walmart Inc.*, Plaintiffs acknowledge that production of only relevant Slack channels was ordered, yet Plaintiffs do not propose any

30294272v.1

such limitation here.  No. 2:21-cv-00126-JRG-RSP, 2022 U.S. Dist. LEXIS 1135 at *5 (E.D.

Tex. Jan. 4, 2022); *see also* Pl. Mot. 18.  Indeed, in *Mobile Equity* the court specifically ordered

the parties to narrow down the list of potentially relevant Slack channels – a step Plaintiffs seek

to avoid.  *Id.* at *5 n.1.  *Red Wolf Energy Trading, LLC v. Bia Cap. Mgmt., LLC*, similarly

involved targeted searches of Slack data for particular individuals, not wholesale production of

all Slack data regardless of relevance. No. 19-10119-MLW, 2022 U.S. Dist. LEXIS 162470 at

*38-39 (D. Mass. Sept. 8, 2022)

Plaintiffs instead propose the extraordinary step of dispensing with any relevance review

altogether (Pl. Mot. 17).  That is an unreasonable demand and does not address relevance,

proportionality or potential privilege concerns.  To support this request, Plaintiffs cite a handful

of outlier cases that required production without relevance review in circumstances very different

than those here.  *See, e.g., In re Actavis Holdco U.S., Inc*., No. 19-3549, 2019 WL 8437021, at

*2 (3d Cir. Dec. 6, 2019) (noting the list of protective procedures in the multi-district litigation

that prevented injury arising from dispensing with relevance review); *see also id.* (Phipps, J.,

dissenting from denial of writ of mandamus) ("[N]othing in the civil rules permits a court to

compel production of non-responsive and irrelevant documents at any time, much less before the

producing party has had an opportunity to screen those documents."); *Cf. UPMC v. Highmark

Inc.,* No. 2:12-CV-00692-JFC, 2013 WL 12141530, at *2 (W.D. Pa. Jan. 22, 2013) (allowing

production of a single full custodial file of consultant whose  "range of responsibilities is broad,"

and where "any refinement of its request would be 'unworkable and ... exclude relevant

documents'").[21]  These cases, that do not provide a basis for dispensing with the normal

---

[21]     AFS has multiple business lines unrelated to AFS's allegations.  Plaintiffs assert without
adequate support that "there is no clear distinction between AFS's Slack accounts and all of the
accounts contain relevant data" and therefore must be produced without any limitation

-16-

discovery process which would require reasonable focus of documents produced and limitations for relevance and privilege.[22]

## III.   PLAINTIFFS HAVE NO BASIS FOR DISCOVERY SANCTIONS.

Even if this Court were to issue an Order granting Plaintiffs access to any of AFS's Slack data, Plaintiffs have no lawful entitlement to sanctions.  As established above, Slack data is outside of AFS's possession, custody, or control.  Because the messages are in Slack, not AFS's control, Plaintiffs are incorrect in asserting any violation of Federal Rule of Civil Procedure 34. *See* Pl. Mot. 19 (quoting *Newill v. Campbell Transp. Co.*, No. 2:12-CV-1344, 2013 WL 6002349, at *5 (W.D. Pa. Nov. 12, 2013) ("[A] party must undertake a reasonable search to determine whether it has any responsive documents *in its possession, custody, or control*." (emphasis added)).

Neither can Plaintiffs claim that AFS violated its discovery obligations when it did not include Slack in its October 2020 list of "relevant electronic systems," that house AFS's "electronically stored information."  Slack is not an AFS electronic system; it is a third-party's collaboration tool.

The record further refutes any allegation that AFS failed to disclose its use of Slack as a third-party communication tool.  AFS produced information demonstrating the use of Slack as a

---

whatsoever.  *See* Pl. Mot. 8.  To the contrary, the documents and witnesses show that AFS's SuccessFuel, Swag Envy, Lead Generation, and Compliance businesses are *not* involved in this litigation – as the Plaintiffs' own witnesses admitted.  Plaintiffs have no basis to seek information from channels dedicated to those unrelated activities.

[22]   Because Slack channels and direct messages may contain privileged, irrelevant, and personal employee information, it would be inappropriate to have Slack produce this information directly to the Plaintiffs.  Rather, Slack would produce the information to AFS, which would then be obliged to undertake a costly and burdensome review of the data, to determine what is appropriate for production.  Moreover, to require the production of this data, at this late stage of the litigation would undoubtedly cause delay and require a *fifth* amended scheduling order in this case.

-17-

messaging platform even before Plaintiffs filed the Complaint in this action.  Contrary to

Plaintiffs' claim that AFS has produced only a "handful," of Slack messages, AFS has produced

dozens of emails containing Slack messages, which were captured and produced in AFS'

electronic production.  As part of its electronic records collection that occurred in June 2022,

AFS collected hundreds of Slack messages contained within AFS's email accounts, and

produced of dozens of Slack messages, which were deemed responsive to Plaintiffs' Requests for

Production.

     As discussed above, Plaintiffs have made repeated reference to Slack and Slack messages

throughout the discovery period of this lawsuit.  Plaintiffs' assertion that they "learned during

AFS' December 15, 2022, 30(b)(6) deposition that AFS' executives, managers, and, most

significantly, telemarketers frequently used Slack to exchange messages regarding highly

probative topics…" is a plain falsehood.

     Under Rule 37, when a motion to compel is granted, the prevailing party may be awarded

reasonable costs of said motion.  FED. R. CIV. P. 37(a)(5)(A).  However, the Court must not

award sanctions if, *inter alia*, the opposing party's nondisclosure or objection was substantially

justified, as is the case here.  FED. R. CIV. P. 37(a)(5)(A)(ii).  Substantial justification in the

context of Rule 37 sanctions occurs when there is a "genuine dispute concerning compliance."

*Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007) (quoting *Pierce v.

Underwood*, 487 U.S. 552, 565 (1988)).

     Here, AFS proceeded reasonably and properly in producing Slack messages contained

within relevant email files that were within its possession, custody, or control, and in producing a

30(b)(6) witness who testified extensively about the use of Slack.  AFS had no obligation to

otherwise obtain information in Slack's control, that it has no legal right to access without the

individual authorization by multiple present and former employees.  Nothing in the record, moreover, evinces any intent by AFS to deprive Plaintiffs of Slack messages, or any prejudice Plaintiffs have suffered.  Instead, Plaintiffs have known since at least October 2021 (if not since their pre-suit investigation in 2018) that AFS employees used Slack and Plaintiffs failed to take steps until this late stage to seek the requisite court order for their production from Slack.  The voluminous discovery AFS produced to date has made clear that this information is not necessary for Plaintiffs' case and such an order is not warranted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants American Future Systems, Inc., Progressive Business Publications of New Jersey, Inc., and Edward M. Satell respectfully request that Plaintiffs' Joint Motions to compel and for sanctions against AFS be denied.

30294272v.1

Respectfully submitted,

**WHITE AND WILLIAMS, LLP**

*/s/ Morgan S. Birch*

David H. Marion, Esquire
Morgan S. Birch, Esquire
PA ID Nos. 3590; 319358
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA 19103
Tel: (215) 864-7000
Fax: (215) 789-7517
*mariond@whiteandwilliams.com*
*birchm@whiteandwilliams.com*

**FAEGRE DRINKER BIDDLE & REATH, LLP**

*/s/ Paul H. Saint-Antoine*

Paul H. Saint-Antoine, Esquire
PA Attorney ID No. 526224
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Tel: (215) 988-2700
Fax: (215) 988-2757
*paulsaint-antoine@faegredrinker.com*
*20ndrew.reeve@faegredrinker.com*

**DLA PIPER LLP**

*/s/ Ilana H. Eisenstein*

Ilana H. Eisenstein, Esquire
PA ID No. 94907
1650 Market Street
One Liberty Place, Suite 5000
Philadelphia, PA 19103
Tel: (215) 656-3351
Fax: (215) 606-3551
*ilana.eisenstein@us.dlapiper.com*

*Attorneys for Defendants American Future Systems, Inc.,*
*Progressive Business Publications of New Jersey, Inc., and Edward M. Satell*

Dated: February 14, 2023

-20-

30294272v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of February, 2023 the foregoing Opposition to Plaintiffs' Joint Motion to Compel the Production of Documents and Motion for Sanctions was filed electronically by AFS.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt who may access this filing through the Court's system.

<i>/s/ Morgan S. Birch</i>
Morgan S. Birch

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | : | Civil Action No. 2:20-cv-02266 |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN FUTURE SYSTEMS, INC., *et al.*, | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

**[PROPOSED] ORDER DENYING PLAINTIFFS' JOINT MOTION TO
COMPEL PRODUCTION OF DOCUMENTS AND MOTION FOR SANCTIONS**

**AND NOW**, this ___ day of _____, 2023, upon consideration of Plaintiffs'
Joint Motion to Compel the Production of Documents and Motion for Sanctions (the "Motion to
Compel") and Defendants American Future Systems, Inc., Progressive Business Publications of
New Jersey, Inc., and Edward M. Satell's Response in Opposition thereto, and for good cause
shown, it is hereby:

**IT IS HEREBY ORDERED** that Plaintiffs' Joint Motion to Compel is hereby
**DENIED**.

_____
**JOEL H. SLOMSKY, J.**

30294272v.1