UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION, *et al*.,

Plaintiffs,

v.

AMERICAN FUTURE SYSTEMS, INC., *et al*.,

Defendants.

Case No. 2:20-cv-02266

**PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES**

## I. INTRODUCTION

On the issues of UTPCPL liability, injunctive relief and restitution,[1] the record is clear:

- The sales scripts, *on their face*, fail to first clearly, affirmatively and expressly state the legal identity of the seller and fail to first clearly, affirmatively and expressly state that the purpose of the call was to sell goods or services AFS;

- The Commonwealth is not required to meet the cognizable danger test for injunctive relief. ***After Shire was decided and while AbbVie was pending, the Third Circuit expressly affirmed the holdings of Percudani, TAP and Navient that Pennsylvania law authorizes injunctive relief under the UTPCPL based solely on past conduct***; and

- There is no genuine issue of material fact that between 2016 and 2021, AFS acquired the undisputed amount of $24,734,172 by means that violated the UTPCPL.

## II. ARGUMENT

### A. There is No Issue of Fact that the Scripts on their Face Fail to "first clearly, affirmatively, and expressly" State the Seller's Identity and the Purpose of the Call[2]

As set forth in the totality of Plaintiffs' summary judgment submissions (including the FTC's Reply) AFS's contention that the scripts are "literally true," and its ongoing effort to challenge the admissibility, validity, and volume of countless consumer complaints do not defeat the Commonwealth's right to summary judgment on all counts and relief. [ECF 338-1, 339-1, 339-3, 348.] More importantly, the scripts on their face violate the UTPCPL even if the Court declines to consider admissible consumer complaints[3] and AFS employee testimony and messages.

---

[1] The FTC's Reply addresses issues equally applicable to both Plaintiffs so, with the exception of Sections E and F herein, the Commonwealth limits its discussion to UTPCPL issues.

[2] AFS's opposition includes a "Counter-Statement of Facts," but fails to satisfy Section V of Judge Slomsky's Policies and Procedures because it cites no evidence. [ECF 349, at 14–18.] Plaintiffs incorporate their response to AFS's original statement of facts. [ECF 348-3, at 2–28, ¶¶ 1–45.]

[3] Plaintiffs will set forth in detail the bases for admissibility of consumer complaints in a motion in limine to be filed on August 2, 2023 in accordance with the current case management order.

Unable to ignore Section (xvii)[4] in its response to the Commonwealth's summary judgment motion,[5] AFS misrepresents case law and ignores FTC guidance. Contrary to AFS's assertion,[6] the Court in *C4C* began its TSR discussion as follows: "***Section 310.4(d)*** of the TSR lays out required oral disclosures that telemarketers must make." *Corp. for Character, L.C.*, 116 F. Supp. 3d at 1278 & n.69 (emphasis added) (citing 16 C.F.R. § 310.4(d)(1)-(3) (*C4C*)). AFS then selectively quotes *FTC v. Magazine Solutions,*[7] where the entirety of the court's statement is, "[w]hile the [FTC] was unwilling to find that 'prompt' required disclosure at the beginning of the telephone call, it did agree that ***'[a]t a minimum ... 'prompt' disclosure should be made prior to the time any substantive information about a prize, product, or service is conveyed to the consumer.***" *Fed. Trade Comm'n v. Mag. Sol.'s., LLC*, Civil Action No. 7-692, 2008 WL 11383877, at *7 (W.D. Pa. Dec. 1, 2008) (quoting Statement of basis and purpose and final rule, 60 Fed. Reg. 43,842-01 at *43856 (Aug. 23, 1995) (emphasis added)). Finally, AFS completely

---

[4] 73 P.S. § 201-2(4)(xvii) (defining "unfair or deceptive acts or practices" to include "Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating: (A) the identity of the seller; (B) that the purpose of the call is to sell goods or services . . ."

[5] In its own Motion for Summary Judgment, AFS requests summary judgment on Count VI without even acknowledging Section (xvii) or arguing that it has not violated Section (xvii), even referring to Count VI as "the Commonwealth's *copycat* 'failure to disclose claim." [ECF 342, p. 14.]

[6] AFS incorrectly says, "[i]n *United States* v. *Corporations for Character, L.C.*, 116 F. Supp. 3d 1258, 1277-78 (D. Utah 2015), the regulatory requirements for identification . . . involved a different provision of the Telemarketing Sales Rule-§ 310.4(a)(8), ***not § 310.4(d)***." [ECF 349, p. 69 (emphasis added).] NOTE: In citing ECF filings, the Commonwealth refers to the ECF pagination.

[7] "Also, contrary to the very premise of the Commonwealth's UTPCPL claim here, the court in *Magazine Solutions* noted the FTC's guidance that 'prompt disclosure' does not 'require[] disclosure at the beginning of the telephone call.'" [ECF 349, p. 70.]

ignores the following: "[T]he seller is the entity that provides goods or services to the consumer in exchange for payment. . . . If the seller commonly uses a fictitious name ***that is registered with appropriate state authorities***, it is fine to use that name instead of ***the seller's legal name.***" FED. TRADE COMM'N, *Complying with the Telemarketing Sales Rule,* https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule#promptdisclosures (last visited June 25, 2023) (FTC Guidance) (emphasis added).

The Court should grant summary judgment on Count VI based on AFS's admissions that telemarketers used "the publication name,"[8] and that only two of approximately 25 AFS publications are registered fictitious names in Pennsylvania. [ECF 349, p. 70, ¶¶ 19, 20, 71.] *See C4C*, 116 F. Supp. 3d at 1278 (holding that a trade name or product name is insufficient to identify the seller); FTC Guidance, *supra*. AFS argues *only* that the seller's identity and the purpose of the call they were "clearly and timely disclosed," providing no legal standard for these terms[9] failing to even argue that the required statements were "affirmatively" and "expressly" made, as required by Section (xvii). *Id.* [ECF 349, p. 69.][10]

Moreover, AFS does not identify a single word or phrase in the sales scripts that states, in any manner, that the purpose of the call is to sell goods or services, arguing only:

---

[8] The Commonwealth *legally* disputes that AFS's acronym "PBP" and its shortened name "Progressive Business" were sufficient to satisfy the legal requirements for identification of the seller, because only "Progressive Business Publications" and "Progressive Business Publications, Inc." are registered legal entities in Pennsylvania. [ECF 349, ¶¶ 19, 48.] However, because AFS admits that it used unregistered publication names, the Court does not need to resolve this issue to grant summary judgment for the Commonwealth.

[9] The term "timely" does not even appear in Section (xvii). The statute requires statements to ***"first"*** be made. 73 P.S. § 201-2(4)(xvii).

[10] In contrast, the Commonwealth has provided case law, FTC interpretation, and a thorough analysis of the plain meaning of the language in Section (xvii) [ECF 338-1, p. 37-45.]

> The terms of the subscription are provided immediately after the sales representative discusses with the customer the features and benefits of the particular newsletter and publication. . . . Also, contrary to the Commonwealth's allegation, the telemarketing Script is clear that the purpose of the call is to sell newsletter and books.

[ECF 349, p. 70.]

AFS's "[u]nsupported assertions [and] conclusory allegations" are insufficient to overcome the Commonwealth's motion for summary judgment for Count VI based on Section (xvii). *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010), *cert. denied*, 562 U.S. 1272 (2011).[11] Accordingly, the Court should grant summary judgment for the Commonwealth on Count VI.

### B. According to the Third Circuit, *Percudani* Is Authoritative on Injunctive Relief for UTPCPL Claims, and the Commonwealth Does Not Have to Prove "Cognizable Danger"

**The Third Circuit has cited *Commonwealth v. Percudani* as the controlling law on the question of a Court's authority to enter an injunction for UTPCPL claims.** *Pennsylvania v. Navient Corp.*, No. 19-8005, Doc. 003113225708 (3d Cir., filed April 30, 2019) (attached hereto as Exhibit 1) (citing *Commonwealth v. Percudani*, 844 A.2d 35, 44-46 (Pa. Commw. Ct. 2004)) (*Navient* Interlocutory Appeal Order).[12] Accordingly, the "cognizable danger" standard does not

[11] Even if AFS's reference to "[t]he terms of the subscription" is an attempt to identify something from the script that hints at the purpose of the call being to sell, by AFS's own admission, these terms were not given until ***after*** telemarketers describe "features and benefits of the products," which does not comport with *Magazine Solutions* and FTC guidance. *Magazine Solutions,* 2008 WL 11383877, at *7; TSR Final Rule, 60 Fed. Reg. at 43,856 ("At a minimum . . . 'prompt' disclosure should be made prior to the time any substantive information about a prize, product, or service is conveyed to the consumer.").

[12] In *Percudani*, the Commonwealth Court held that it would be "absurd" and "unreasonable" to permit a party to "avoid liability [under the UTPCPL] by discontinuing its actions even after proceedings are commenced and claim that the matter is moot." *Percudani,* 844 A.2d at 44-46.

apply to the Commonwealth's claims; the Court may grant injunctive relief based solely on AFS's past conduct; and the Court should grant summary judgment for the Commonwealth on injunctive relief.

The Third Circuit's approval of *Percudani* arose in an interlocutory appeal of *Pennsylvania v. Navient Corp.*, 354 F. Supp. 3d 529, 556 (M.D. Pa. 2018), *aff'd*, 967 F.3d 273 (3d Cir. 2020). Citing *Percudani* and other Pennsylvania Commonwealth Court case law,[13] the District Court in *Navient* denied a motion to dismiss UTPCPL claims where the Commonwealth's complaint sought to enjoin conduct that allegedly ceased a decade prior to filing. *Navient*, 354 F. Supp.3d at 555-57.[14] The *Navient* decision "was premised on how Pennsylvania state courts have interpreted the [UTPCPL] in permitting past conduct to be a basis for injunctive relief[,]" and the District Court "made a prediction . . . as to how the Pennsylvania Supreme Court would have ruled regarding Section 201-4 of the CPL and whether the complaint sufficiently states a claim for relief." *Pennsylvania v. Navient Corp.*, 3:17-CV-1814, 2019 WL 1052014, at *6 (M.D. Pa. March 5, 2019).

AFS argues that *Navient* was inapposite, in part because "the opinion was issued before – and without the guidance of – *AMG*, *AbbVie* and *Shire ViroPharma*." [ECF 349, p. 20 n.2.]

---

[13] *Commonwealth v. TAP Pharm. Prod., Inc.*, 36 A.3d 1112, 1169 (Pa. Commw. Ct. 2011), *vacated on other grounds*, 626 Pa. 25, 94 A.3d 364 (2014) (holding that "1) an injunction can issue to restrain future conduct based on prior unlawful activity; 2) that cessation of the offending conduct does not, in and of itself, bar a claim for injunctive relief; and 3) the Court may [or should] consider whether the offending conduct is likely to reoccur absent the grant of an injunction.").

[14] While *Navient* and *Percudani* both arose in the context of challenges to initial pleadings, the decisions turned on, and are directly relevant to, the circumstances under which permanent injunctive relief is available under the UTPCPL. Moreover, in *TAP*, the Commonwealth Court decided the same question in the same way in post-trial motions. *See supra* note 12; *see also*, *infra* note 14.

However, ***after Shire* was decided, and *while AbbVie* was pending in the Third Circuit,** the District Court in *Navient* certified the UTPCPL "injunctive authority issue" as one of three issues for interlocutory appeal based on a "substantial ground for difference of opinion." *Navient*, 3:17-CV-1814, 2019 WL 1052014, at *6 (M.D. Pa. March 5, 2019).[15] The *Navient* Court recognized that *Percudani* and *TAP* permit injunctive relief in UTPCPL cases based solely on past conduct, while the Third Circuit's decision in *Shire* does not for FTC Act violations. *Navient*, 2019 WL 1052014, at *7.[16]

In the case before this Court, the inquiry into the validity of *Percudani* must end with the Third Circuit's Order issued by a three-judge panel denying interlocutory appeal on the issue of UTPCPL injunctive authority:

> Although the appellate court may exercise interlocutory jurisdiction over any issue "fairly included" in the certified order [citation omitted], we certify only…two questions for interlocutory review. …Petitioner's request to certify the question of whether the Commonwealth has adequately pleaded a claim for injunctive relief under the UTPCPL is denied. ***See Commonwealth v. Percudani, 844 A.2d 35, 44-46 (Pa. Commw. Ct. 2004).***

[15] The defendant in *Navient* framed the issue for interlocutory appeal as, "whether a court can enjoin conduct that the plaintiff (a) concedes ceased a decade ago and (b) fails to allege will recur," while the Commonwealth described it as "whether an injunction can issue under the CPL if the alleged unlawful conduct has ceased." *Navient*, 2019 WL 1052014, at *5, n.1 (citations omitted). This framing *by both the Commonwealth and the defendant* makes clear that the parties considered the issue to extend beyond only the *pleading* stage of the case.

[16] Specifically, the *Navient* Court explained, "[t]he difference of opinion with respect to the [UTPCPL] injunctive authority issue lies in consideration of the Third Circuit's recent ruling in *FTC v. Shire ViroPharma, Inc.*, ––– F.3d ––––, No. 18-1807, 2019 WL 908577 (3d Cir. Feb. 25, 2019), where the Circuit reached a different conclusion than this Court in analyzing a similar statute under similar factual circumstances. In *Shire*, the Third Circuit analyzed the reach of the FTC's injunctive authority under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b)." *Navient*, 2019 WL 1052014, at *7.

Exhibit 1, *Navient* Interlocutory Appeal Order (emphasis added).

Stated another way, two months after it decided *Shire*, and while *AbbVie* was pending,[17] the Third Circuit declined to take up the question of whether an injunction may be entered for violations of the UTPCPL *based solely on past conduct*. Further, ***the Third Circuit cited Percudani*** as the basis to deny review of the issue. *Id.* Under these circumstances, it is virtually undeniable that the Third Circuit would reject AFS's contention that any standard other than that set forth in *Percudani* (and *TAP*) applies to entry of an injunction under the UTPCPL. Accordingly, AFS's exhaustive efforts to have this Court apply the "cognizable danger" standard to the Commonwealth's UTPCPL claims must fail. Here, AFS's undisputed violations of the UTPCPL for three decades are sufficient as a matter of law to grant permanent injunctive relief as a matter of law.

**C. AFS's "Denial" of Plaintiffs' of its Verified Net Revenue Amount Does not Create a Genuine Issue of Material Fact, and Plaintiffs' Joint Enforcement Action is Proper**

AFS's response again ignores that the focus of UTPCPL statutory restitution is the "means" which AFS acquired an undisputed $24,734,172. 73 P.S. § 201-4.1. AFS's denial of the verified revenue figures is no denial at all. Rather, AFS dances term "net revenue," including the purported failure of Plaintiffs to "make adjustments to the revenue figures (e.g., for overhead and variable

[17] *See FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147 (3d Cir., Filed: February 25, 2019); *FTC v. AbbVie*, 976 F.3d 327 (3d Cir., Filed: September 30, 2020). The *AbbVie* decision is a consolidation of three separate appeals filed in the Third Circuit in July and August of 2018. *FTC v. AbbVie, Inc.*, ., No. 18-2621, Doc. 003112989097 (filed July 23, 2018), No. 18-2748, Doc. 003113003765 filed August 8, 2018), No. 18-2758, Doc. 003113007167 (filed August 13, 2018), and (3d Cir., filed April 30, 2019) [Notices of Appeal, attached hereto as Exhibit 2.]

costs)."[18] [ECF 349, ¶307.] However, to "make adjustments," *i.e.*, to *deduct expenses*, would provide a *net profit* figure. Restitution as a measure of *net profits* would be inconsistent with a plain reading of the UTPCPL's focus on the means of acquiring money and was never the proper measure of restitution under persuasive FTC case law. *See F.T.C. v. Magazine Solutions., LLC*, 432 F. App'x 155, 158 (3d Cir. 2011) (rejecting argument that District Court "erred in calculating restitution as total net revenue, rather than net profits," and explaining, "[w]e have previously upheld an award of gross revenues in a similar context [and] our sister Courts of Appeals that have considered the question have held that a district court may grant anything up to gross revenues as restitution under the FTCA.") (citations omitted) [*see also* ECF 338-1, p. 68-70.] Here, all of the revenue (over $24.7 million) that AFS acquired from unfair and deceptive telemarketing and book renewals, should be restored, irrespective of any proof of actual deception or reliance or any correlation between revenue and consumers who complained to or about AFS.

### D. There is No Issue of Material Fact that AFS's Affirmative Defense of Laches Fails as a Matter of Law

In arguing against summary judgment on its affirmative defenses, including laches, AFS does not seem to understand that *AFS bears the burden of proof* for its affirmative defenses, just as a plaintiff bears the burden of proof for their legal claims. *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1092 (Pa. 2012). [*See* ECF 349, p. 77 (AFS discussing its affirmative defenses and arguing that Plaintiffs must point to evidence on summary judgment).] As previously set forth in detail,[19]

---

[18] AFS's denial also says cryptically, "Plaintiffs have mischaracterized the categories of revenue" and discusses the irrelevant matter of declining profits, neither of which is a denial of the factual statement regarding total revenue. [ECF 349, ¶ 307.] Similarly, AFS's reference to a non-binding legal statement of the Commonwealth's 30(b)(6) witnesses does not create a genuine issue of material fact for trial. [ECF 348, p. 28 n.16.]

[19] [ECF 338-1, p. 71-73; 348, p. 48-53.]

AFS's laches defense against the Commonwealth fails as a matter of law for all of the following reasons: (1) laches cannot be raised as a defense in this exercise of the Commonwealth's police power, *St. Clair Area Sch. Dist. Bd. Of Educ. V. E.I. Assocs.*, 733 A.2d 677, 682 (Pa. Commw. Ct. 1999); (2) AFS proffers no law or evidence to support a finding of "a stronger case of delay or acquiescence" or "a higher degree of prejudice" than is required in cases asserting laches against private actors, *Id.* at 681-82; (3) it is undisputed that AFS *did not* change its position during any alleged "delay" by the Commonwealth, *Weinberg v. Com., State Bd. of Examiners of Pub. Accts.*, 501 A.2d 239, 245 (Pa. 1985)[20]; and (4) AFS's laches defense relies almost entirely on Ed Satell's inadmissible hearsay, which cannot be considered for purposes of summary judgment. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

**E. The Parties' Joint Enforcement Action is Proper[21]**

AFS has incessantly suggested without any legal authority, that there is something improper or nefarious about the addition of the Commonwealth to this lawsuit while *AMG* was pending in the Supreme Court. [ECF 342, n. 36.] This argument is meritless and was recently rejected by another District Court. *FTC v. Roomster Corp.*, -- F. Supp.3d --, No. 22 CIV. 7389, 2023 WL 1438718, at *8-9 & n.10 (S.D.N.Y. Feb. 1, 2023) ("There is nothing improper about [the FTC] bringing an enforcement action together with states whose own consumer protection statutes [have] been violated by allegedly unlawful conduct. There is nothing exceptional about these circumstances. This sort of thing happens all the time.").

[20] To the contrary, AFS admits that it continued its same practices from 2017 until, of course, more than a year after this lawsuit was filed. [ECF 342, p. 22, 23, 25, 56.]

[21] This issue, as well as the Constitutional law issue discussed in Section F, are applicable to both the Commonwealth and the FTC.

### F. AFS has No Constitutional Right to Deceive Consumers

Because commercial speech is entitled to first amendment protection only if it is neither misleading nor related to unlawful activity, AFS's actions have no First Amendment protections. *In re R.M.J.*, 455 U.S. 191, 203 (1982).[22] AFS even grossly misrepresent the issues by suggesting that Plaintiffs seek to restrict the content of AFS's actual publications, which is a gross misrepresentation of the claims. [ECF 349, p. 50.] AFS further provides no legal support for its tortured Fifth and Fourteenth Amendment arguments.[23] [ECF 349 at 46-51.]

## III. CONCLUSION

For the foregoing reasons, together with those set forth in the totality of the Plaintiffs' summary judgment submissions, the Commonwealth respectfully requests that the Court grant the Commonwealth's Motion for Summary Judgment in its entirety.

---

[22] AFS has already had one Judge reject its attempt to use the First Amendment to protect its "fraudulent or misleading" speech, in conjunction with selling its cookware to college students. *AFS v. Pennsylvania State University*, 752 F.2d 854, 873 (3d Cir. 1984) (concurrence, J. Sarkin))

[23] Any alleged "positive reviews" of AFS are irrelevant and do not preclude summary judgment. *Basic Books, Inc. v. FTC,* 276 F.2d 718, 721 (7th Cir. 1960) ("[T]hat petitioners had satisfied customers was entirely irrelevant. They cannot be excused for the deceptive practices here shown and found, and be insulated from action by the Commission in respect to them, by showing that others, even in large numbers, were satisfied with the treatment petitioners accorded them."); *See also FTC v. Kutzner,* Case No. 16-00999, 2017 U.S. Dist. LEXIS 174299, at *37, n.8 (C.D. Cal. Sept. 5, 2017).

OFFICE OF ATTORNEY GENERAL

Michelle A. Henry
Attorney General

Dated: 7/24/2023

*/s/ Heather Z. Kelly*

SARAH A. E. FRASCH (PA I.D. #203529)
JOHN M. ABEL (PA I.D. #47313)
HEATHER Z. KELLY (PA I.D. # 86291)
JONATHAN R. BURNS (PA I.D. #315206)
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
Frasch: (717) 497-5123
sfrasch@attorneygeneral.gov
Abel: (717) 497-5931
jabel@attorneygeneral.gov
Kelly: (717) 678-4613
hkelly@attorneygeneral.gov
Burns: (717) 645-7269
jburns@attorneygeneral.gov
Fax: (717) 705-3795

Attorneys for Plaintiff
COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2023, copies of the foregoing PLAINTIFF COMMONWEALTH OF PENNSYLVANIA'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF ISSUES was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt who may access this filing through the Court's system.

*/s/ Heather Z. Kelly*
Attorney for Plaintiff Commonwealth of