IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN FUTURE SYSTEMS, INC., et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 20-2266 |

**OPINION**

**Slomsky, J.**                                                                                                                           **June 11, 2024**

**I.     INTRODUCTION**

On March 29, 2024, following a fifteen-day non-jury trial, this Court issued a 52-page Opinion (Doc. No. 463) with an accompanying Judgment (Doc. No. 464) in favor of Defendants American Future Systems, Inc., Progressive Business Publications of New Jersey, Inc. and Edward M. Satell ("AFS Defendants") and against Plaintiffs the Federal Trade Commission ("FTC") and the Commonwealth of Pennsylvania (collectively "Plaintiffs") on each claim alleged in Plaintiffs' Amended Complaint.  (Doc. Nos. 463, 464.)  Presently before the Court is Plaintiff FTC's Motion to Alter or Amend Judgment and for Other Relief (Doc. Nos. 466, 468) and Plaintiff Commonwealth of Pennsylvania's Motion to Amend or Make Additional Findings Pursuant to Federal Rule 52(b) and to Alter or Amend Judgment Pursuant to Federal Rule 59(e) (Doc. No. 467).

In Plaintiff FTC's Motion, it argues that judgment should be entered in their favor to "correct clear errors of law and fact in the Opinion as well as to prevent manifest injustice."  (Doc. No. 466 at 1.)  In support of this claim, the FTC argues that (1) "[t]he Opinion applies a perpetual-

1

giving theory of consumer understanding, which lacks the persuasiveness and universality of the FTC's actual theory"; (2) "the Opinion overlooked the FTC's alternative statement of its claim, which contests the adequacy of the script's disclosures"; (3) "AFS's telemarketing script, when analyzed for adequacy of disclosure and through the prism of a two-sample trial, has a deceptive net impression"; and (4) "[t]he Opinion overlooks the FTC's argument about the unlawful process AFS used to market updates to its [Center for Education and Employment Law ("CEEL")] books." (Doc. No. 466-1 at 1-19.)

Plaintiff Commonwealth of Pennsylvania essentially makes similar claims in its Motion, but adds that the Court erred by (1) "failing to give effect to the plain meaning of every word of Section xvii [of the UTPCPL]"; (2) "failing to consider [Telemarketing Sales Rules ("TSR")] case law and regulatory guidance"; (3) "applying rigid and inapposite FTC Act law to the Commonwealth's deception claims" and (4) "failing to consider AFS's negative option renewal process for CEEL books, and, therefore, entering judgment against the Commonwealth on Count VIII." (Doc. No. 467-1 at 1-22.)  For reasons that follow, Plaintiffs' Motions will be denied.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 52(b) provides that, no later than 28 days after the entry of judgment, a party may move to have the court "amend its findings – or make additional findings." A Rule 52(b) motion may accompany a motion for new trial under Federal Rule of Civil Procedure Rule 59.  A motion filed pursuant to Rules 59[1] and 52(b) is "a device . . . used to allege

---

[1] Federal Rule of Civil Procedure 59 ("New Trial; Altering or Amending a Judgment") states in pertinent part:

(a) In General.

(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

legal error," United States v. Fiorelli, 337 F.3d 282, 288 (3d Cir. 2003), and may only be used to "correct manifest errors of law or fact or to present newly discovered evidence." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).

Thus, the moving party must show one of the following to prevail on a Rule 59(e) motion: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)).

In sum, a motion to alter judgment should only address "factual and legal matters that the Court may have overlooked." In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). It is improper that such a motion ask the court to "rethink what it had already thought through—rightly or wrongly." Id. (quoting Glendon Energy Co., 836 F. Supp. at 1122). A motion to alter judgment is not a tool to present new legal theories or arguments that could have been asserted to support the first motion. Federico v. Charterers Mut. Assur. Ass'n, Ltd., 158 F.

---

. . .

    (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

. . .

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

3

Supp. 2d 565, 578 (E.D. Pa. 2001).  Furthermore, "[b]ecause reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted 'sparingly,' and only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered."  United States v. Meehan, No. 10-713, 2012 WL 12930581, at *1 n.1 (E.D. Pa. Aug. 7, 2012) (quoting Brunson Communications, Inc. v. Arbitration, Inc., 246 F. Supp. 2d 446, 447 (E.D. Pa. 2003)).  It should not give a party a "second bite at the apple." Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir. 1995).

### III. ANALYSIS

#### A. Plaintiff FTC's Motion to Alter or Amend Judgment Will Be Denied

As noted, in the FTC's Motion to Alter or Amendment Judgment, it argues that this Court should grant its Motion for four (4) reasons: (1) "The Opinion applies a perpetual-giving theory of consumer understanding, which lacks the persuasiveness and universality of the FTC's actual theory"; (2) "the Opinion overlooked the FTC's alternative statement of its claim, which contests the adequacy of the script's disclosures"; (3) "AFS's telemarketing script, when analyzed for adequacy of disclosure and through the prism of a two-sample trial, has a deceptive net impression"; and (4) "[t]he Opinion overlooks the FTC's argument about the unlawful process AFS used to market updates to its [Center for Education and Employment Law ("CEEL")] books." (Doc. No. 466-1 at 1-19.)  Each argument will be addressed in turn.

##### 1. The FTC's Argument that the Opinion Applies a Perpetual-Giving Theory of Consumer Understanding, Which Lacks the Persuasiveness and Universality of the FTC's Actual Theory, is Meritless

First, Plaintiff FTC contends that this Court's "Opinion applies a perpetual-giving theory of consumer understanding, which lacks the persuasiveness and universality of the FTC's actual theory." (Doc. No. 466-1 at 8.)  It argues that its actual "net impression" theory was "that consumers perceived AFS's offer as involving two, free trial samples . . . when in reality the

4

consumer was being confronted with a purchase decision." (Id. at 9.) This argument is unpersuasive because contrary to the FTC's contention, the Court considered the claim in its Opinion.

As previously noted, "[b]ecause reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted 'sparingly,' and only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered." Meehan, 2012 WL 12930581, at *1 (quoting Brunson, 246 F. Supp. 2d at 447). The motion should not give a party a "second bite at the apple." Bhatnagar, 52 F.3d at 1231.

Here, a "second bite at the apple" is what the FTC is seeking. Contrary to the FTC's contention, the Court did consider the FTC's "two free, trial sample" proposed net impression argument in its Opinion. On page 41 of the Opinion, after analyzing AFS's telemarketing script, the Court found that "[n]o reasonable employee with purchasing power of a business or organization would hear this information and believe, as Plaintiffs suggest, that they are receiving free newsletters into perpetuity." (Doc. No. 463 at 41.) The FTC, however, jumps on the language "into perpetuity" in that sentence as if it was the only consideration the Court gave to the deception analysis. It was not the only consideration. In any event, the Court concluded that there was no deception in the telemarketing script after analyzing the script as a whole and the FTC's "net impression" arguments.

In the Opinion, the Court considered the telemarketing script and evidence about it introduced by the FTC. After analyzing the telemarketing script, the Court found that the script "explicitly describes to the consumer how the subscription will work" and "explains what a consumer can do to cancel the subscription." Further, the Court found that no portion of the subscription was "free" when it held that "the script does not imply the alleged 'net impression'

that consumers would receive publications 'for free at no risk.'" [2] (Id. at 42.) The Court found that if the consumer agreed to the subscription, they would receive the first two newsletters "at no risk" but had to follow the cancellation process to avoid getting charged for the full year of publications. (Id. at 42-43.) In making these findings that the script's terms were not misleading, the Court rejected the suggested "two free, trial sample" theory advanced by the FTC.

Moreover, as noted, the FTC's fixation on the Court's use of the word "into perpetuity" is incorrect. As stated above, the Court rested its decision on much more than this language. In any event, the FTC overlooked that "newsletters into perpetuity" would include the initial two newsletters, as well as newsletters that would be sent in the future.

In sum, since the Court previously evaluated and held that the FTC did not prove its "net impression" claim by a preponderance of the evidence, the FTC's argument for reconsideration fails because it is only expressing dissatisfaction with the Court's ruling and seeking a "second bite at the apple" which may not provide a basis for relief under Federal Rule of Civil Procedure 52(b) and 59. See e.g., Bolick v. DFS Services LLC, Civ. No. 10-5211, 2012 WL 13018253, at *1 (E.D. Pa. Jan. 25, 2012) ("[Plaintiff's] dissatisfaction does not provide a basis for the Court to reconsider its ruling.")

### 2. The FTC's Argument that the Opinion Overlooked the FTC's Alternative Statement of its Claim also Fails

Second, Plaintiff FTC argues that "the Opinion overlooked the FTC's alternative statement of its claim, which contests the adequacy of the script's disclosures." (Doc. No. 466-1 at 11.) This

---

[2] This Court found that the subscriptions were not "free" in two different findings. First, it found that telemarketers were banned from using the word "free" when explaining the subscription. (See Doc. No. 463 at 14, n.34.) Second, after analyzing the text of the script, this Court held that "[n]o reasonable employee . . . would hear this information and believe, as Plaintiffs suggest, that they are receiving free newsletters into perpetuity." (Id. at 42.) While Plaintiff FTC disagrees with the Court's word choice of "into perpetuity," the core consideration still stands—at no point is the publication being offered for "free."

argument fails because the FTC is attempting to reargue a matter the Court previously analyzed and rejected.

In Count II of the Amended Complaint, Plaintiff FTC alleged that Defendants violated the FTC act by "fail[ing] to disclose or disclose adequately to consumers" various material terms. (Doc. No. 43 at 15-16.)  In the FTC's current Motion to Alter or Amend Judgment, it alleges that the Court addressed the alleged "fail[ure] to disclose" prong but failed to address the second prong—whether Defendants' telemarketers "adequately disclosed" the material terms of Defendants' offer.  (Doc. No. 466-1 at 11.)  This argument is meritless because, contrary to the FTC's contentions, the Court considered and rejected the "adequately disclosed" prong of Count II of the Amended Complaint.

In the Opinion, the Court found, through its discussion of the telemarketing script, that the telemarketers' disclosures were adequate.  See, e.g., id. at 39 ("[T]he script explicitly describes to the consumer how the subscription will work."); id. at 39–40 ("Not only does the script explicitly state that they are only receiving the first two newsletters 'at no risk,' which is true, it also explains what a consumer can do to cancel the subscription.")  Accordingly, the Court found the telemarketers' disclosures to be adequate, and although the FTC attempts to reargue its claim now, nothing argued by the FTC changes the finding that it did not prove its claim by a preponderance of the evidence.

### 3. The FTC's Argument that AFS's Telemarketing Script, When Analyzed for Adequacy of Disclosure and Through the Prism of a Two-Sample Trial, has a Deceptive Net Impression Fails

Third, the FTC once again asks this Court to reconsider its finding that Defendants' telemarketing script did not have a deceptive "net impression" by arguing that the "telemarketing script, when analyzed for adequacy of disclosure and through the prism of a two-sample trial, has

7

a deceptive net impression."[3]  (Doc. No. 466-1 at 12.)  Specifically, it argues "[o]ne factor above all makes the script's disclosures inadequate and its net impression deceptive: recurring innuendo about when the subscription begins." (Id.)  However, this argument is once again asking the Court to rethink its finding that the script did not have a deceptive "net impression" and that the telemarketers' disclosures were adequate.

The crux of the FTC's third argument is that the "recurring innuendo [on the telemarketing calls] about <u>when</u> the subscription begins" is false and therefore creates a deceptive "net impression" in violation of the FTC Act.  (Id. at 12) (emphasis in original).  Thus, the FTC is asking the Court to rethink its finding that the telemarketing script was not deceptive.  However, regardless of how the FTC frames its argument as to why the script is misleading, whether through the lens of the adequacy of disclosure, the sample trial offerings, or the methodology of the script, the Court considered these arguments and found that "Plaintiffs have not proven by a preponderance of the evidence that Defendants have engaged in deceptive conduct" and that "the script explicitly describes to the consumer how the subscription will work."  (Doc. No. 463 at 36, 42.)  Accordingly, the FTC's third argument for reconsideration fails.[4]

---

[3]  Plaintiff also alleges that these innuendos made the disclosures inadequate.  (Doc. No. 46-1 at 12.)

[4]  Plaintiff cites <u>Regina Corp v. F.T.C.</u>, for the proposition that "deception may be accomplished by innuendo rather than by outright false statements."  322 F.2d 765 at 768 (3d Cir. 1963).  As discussed <u>supra</u>, the Court extensively analyzed all parts of the script and concluded that they were not misleading.  From the finding by the Court that the script was not deceptive, it follows that the script did not have "innuendos" or "outright false statements" that would deceive the consumer.  Thus, the Court's holding is aligned with <u>Regina</u>.

### 4. The FTC's Argument that the Court Overlooked the "FTC's Argument About the Unlawful Process AFS Used to Market Updates to its CEEL Books" Also Fails

The FTC's final argument is that "[t]he Opinion overlooks the FTC's argument about the unlawful process AFS used to market updates to its [Center for Education and Employment Law ("CEEL")] books" and therefore improperly held that Defendants did not violate the Unordered Merchandise Statute ("UMS"), 39 U.S.C. § 3009.[5]  Plaintiff Commonwealth of Pennsylvania also makes this argument in its Motion, and accordingly, these claims will be addressed together.[6]  (See Doc. No. 567-1 at 17.)  The crux of Plaintiffs' argument is that the Court failed to discuss the CEEL books' renewal process, which Plaintiffs contend violated the UMS.  Plaintiff Commonwealth of Pennsylvania makes this argument by alleging that a violation of the UMS is an "unfair or deceptive practice" under the UTPCPL.  Plaintiffs' argument, however, fails for two reasons.  First, the Court discussed the CEEL renewal process in its Opinion and found that the entire CEEL subscription process did not violate the UMS and the UTPCPL.  (Doc. No. 463 at 51.)  Thus, Plaintiffs are improperly asking the Court to rethink what it has already thought through.  Second,

---

[5]  39 U.S.C. § 3009, states in pertinent part:

> (b) ... the mailing of un-ordered merchandise or of communications prohibited by subsection (c) of this section constitutes an unfair method of competition and an unfair trade practice in violation of section 45(a)(1) of title 15.
>
> ...
>
> (d) For the purposes of this section, "un-ordered merchandise" means merchandise mailed without the prior expressed request or consent of the recipient.

[6]  In the Court's Opinion (Doc. No. 463), Plaintiffs' claims under the UMS in Counts IV (violation of the UMS) and VIII (violation of the UMS and the UTPCPL) of the Amended Complaint were discussed together.

Plaintiffs' argument is meritless because the CEEL book renewal process did not violate the UMS and the UTPCPL.

Here, Plaintiffs are asking the Court to rethink its finding that Defendants' CEEL book renewal process did not violate the UMS and the UTPCPL. In its Opinion, the Court found that "at trial, Plaintiffs were unable to show that Defendants mailed <u>any</u> CEEL books without the expressed consent of recipient." (Doc. No. 463 at 51.) (emphasis added). Thus, neither the initial CEEL books sent to subscribers nor any CEEL books mailed afterward were mailed in violation of the UMS and the UTPCPL. In short, Plaintiffs did not prove by a preponderance of the evidence that the CEEL renewal process violated the UMS and the UTPCPL.

Plaintiffs also argue that Defendants' CEEL renewal process violated the UMS because it does not satisfy the UMS's requirement that businesses must obtain "expressed request or consent of the recipient" before they send or bill for merchandise. 39 U.S.C. § 3009(d). And, as noted above, Plaintiffs further assert, as they did in the Amended Complaint, that a violation of the UMS is an "unfair or deceptive act[] or practice[]" in violation of the UTPCPL. (Doc. No. 43 at 25.) These arguments fail because Defendants did not meet their burden of proving that the CEEL renewal process violated the statutes.

The plain language of the UMS defines un-ordered merchandise as merchandise mailed without the prior express request or consent of the recipient. 39 U.S.C. § 3009(d). The word "prior" requires that the consent happens before the merchandise is mailed. As discussed in the Court's Opinion, before the first CEEL book was mailed to a subscriber, a telemarketer obtained consent on the phone from the subscriber. (<u>See</u> Doc. No. 463 at 51.) Then, because updated CEEL books are mailed annually, Defendants obtain consent to send the second CEEL book when the subscriber is mailed their first invoice for payment. The invoice states:

> When you subscribe to Center for Education & Employment Law books, we'll send you advance notice of future issues about two months before your annual subscription expires. If you want to extend your standing order, do nothing. We'll send you the new updated volume of your publication. If you don't want to continue subscribing on a standing-order basis, let us know in writing on the advance notice we send you. In either case, you always have thirty days to decide.

(Def. Ex. 2072; see also Doc. No. 433 at 44:2-4.) Because Defendants did not store subscribers' payment information, the customer had to affirmatively take action to pay the first invoice. (See Doc. No. 463 at 24.) Without paying the first invoice, the second updated CEEL book would not be mailed to the subscriber. In this way, subscribers consented to be bound by the quoted language on the invoice. This process repeats every year with every updated CEEL book. Thus, no violation of the UMS or the UTPCPL was proven. Accordingly, Plaintiff FTC's Motion to Alter or Amend Judgment (Doc. No. 466) in its entirety will be denied.

    **B.    Plaintiff Commonwealth of Pennsylvania's Motion to Alter or Amend Judgment Will Be Denied**

As discussed earlier, in its post-trial Motion, Plaintiff Commonwealth of Pennsylvania ("the Commonwealth") contends that the Court's Judgment should be altered or amended for four (4) reasons. It argues that the Court erred by (1) "failing to give effect to the plain meaning of every word of Section xvii [of the UTPCPL]"; (2) "failing to consider [Telemarketing Sales Rules ("TSR")] case law and regulatory guidance"; (3) "applying rigid and inapposite FTC Act law to the Commonwealth's deception claims" and (4) "failing to consider AFS's negative option renewal process for CEEL books, and, therefore, entering judgment against the Commonwealth on Count VIII." (Doc. No. 467-1 at 1-22.) The Court will address each argument in turn.

### 1. The Commonwealth's Argument that the Court Failed to Give Effect to the Plain Meaning of Every Word of Subsection xvii of the UTPCPL Fails

First, the Commonwealth argues that the Court "erred by failing to give effect to the plain meaning of every word of Section xvii [of the UTPCPL]."[7] (Doc. No. 467-1 at 6.) This argument is without merit because it is asking the Court to rethink its conclusion that Defendants' telemarketing practices did not violate the UTPCPL.

Here, the Commonwealth is attempting to reargue that the telemarketing script violates subsection xvii of the UTPCPL by arguing that the Court failed to "address or even include any of the following terms from the statute: 'first,' 'affirmatively,' 'expressly,' 'identity of the seller,' and 'is to sell goods or services.'" (Id. at 7.) Contrary to the Commonwealth's contentions, the Court analyzed the plain language of subsection xvii of the UTPCPL, which included those terms. (Doc. No. 463 at 52.)

In its Opinion, the Court began by citing to subsection xvii of the UTPCPL, and then described Plaintiff's allegations:

> Plaintiffs allege that Defendants violated this section because its telemarketers did not clearly, affirmatively and expressly first state the identity of the seller and that the purpose of the call was to sell goods or services.

---

[7] Subsection 201- 2(4)(xvii) of the UTPCPL provides that "unfair or deceptive acts or practices" include:

> (xvii) [m]aking solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating:
>
> (A) the identity of the seller;
>
> (B) that the purpose of the call is to sell goods or services;
>
> (C) the nature of the goods or services. . .

73 P.S. § 201-2(4)(xvii)(A)-(C).

(Id.)  Next, the Court analyzed the telemarketing script against the language of the UTPCPL and Plaintiff's allegations in the Amended Complaint and concluded that "Plaintiffs did not prove a violation of 73 P.S. § 201-2(4)(xvii)(A)-(C) by Defendants."  (Id. at 54.)  Thus, while the Commonwealth may disagree with the Court's conclusion reached in the Opinion, this argument is still an improper ground to raise in a motion to amend or alter judgment because the Court considered the language of subsection xvii in its Opinion.  Specifically, the citation above includes the words "first," "affirmatively," "expressly," "identity of the seller," and "is to sell goods or services", all words that the Commonwealth claims the Opinion overlooked.  But, the Court considered those terms when it held that the "initial sentence of the 'executive script'" "clearly identifies who the[] telemarketer works for and the purpose of the call" and covered subsection xvii in the ensuing analysis. (Doc. No. 463 at 52-53.)  Accordingly, the Commonwealth's argument fails because the Court considered the plain language of subsection xvii of the UTPCPL in holding that the telemarketing script did not violate the UTPCPL.

### 2. The Commonwealth's Argument that the Court Failed to Consider TSR Case Law and Regulatory Guidance Fails

The Commonwealth next argues that the Court erred by "failing to consider law interpreting provisions of the [federal Telemarketing Sales Rules] ("TSR")."  (Doc. No. 467-1 at 8.)  To support this argument, it cites to two federal cases for the proposition that Defendants actions violated the TSR and thus, in turn, violated subsection xvii of the UTPCPL.  The Commonwealth's argument fails because the Court considered these cases and found them unpersuasive.

As an initial matter, the Commonwealth recognizes that "there is no Pennsylvania case law interpreting Section xvii [of the UTPCPL] to otherwise instruct the Court," but argues anyway that the Court should "look to FTC law for guidance and interpretation because the relevant provisions

13

of the TSR are virtually identical to Section xvii." (Id.)  However, even though the cases relied on by the Commonwealth are not cited in the Opinion, the Court did review them in deciding whether the telemarketing script violated the UTPCPL.  The Court found those decisions unpersuasive by its holding in the Opinion that "the telemarketers['] script clearly identifies the purpose of the call, the nature of the goods and services and the offer it is providing to the potential subscriber." (Doc. No. 463 at 54.)

The two cases interpreting the TSR that Plaintiff contends the Court overlooked are FTC v. Magazine Solutions, LLC, Civ. No. 7-692, 2008 WL 11383877, at *7 (W.D. Pa. 2008) and United States v. Corps. For Character, L.C., 116 F. Supp. 3d 1258, 1278 (D. Utah 2015).  Both cases were cited and relied on in Plaintiffs joint Proposed Findings of Fact and Conclusions of Law (Doc. No. 459 at 107-08).  The Court did not cite them in the Opinion because it found them unpersuasive, and the Court continues to do so.

Both Magazine Solutions and Corps. For Character do not support Plaintiff's position because they are distinguishable from the case at bar.  In Magazine Solutions, the FTC alleged that defendants Magazine Solutions, LLC and its owners engaged in deceptive acts or practices in violation of the FTC Act by calling consumers and informing them they would receive $1,000 in shopping coupons if the consumer answered questions and "qualified" for the program, but in the second or third call they told the consumers that they "must first agree to purchase a magazine service in order to receive the coupons." 2008 WL 11383877, at *1.  As the court in Magazine Solutions explained:

> Defendants then sent consumers a Mail Order Agreement ("MOA") which they viewed as a non-signature agreement. The MOA contained a clause informing the consumer that he / she had 3 or 7 days to cancel or else would be charged for the magazines. The FTC contends that the coupons were not as promised, that the Defendants refused requests to cancel subscriptions, and that the Defendants

14

threatened legal action against consumers who failed to comply with scheduled payments.

Id. The FTC then filed an action against defendants, alleging claims under the FTC Act and the TSR. Id. In analyzing the meaning of "prompt" in reference to telemarketing disclosures, the court held that "[a]t a minimum. . . prompt' disclosure should be made prior to the time any substantive information about a prize, product, or service is conveyed to the consumer." The court concluded that defendants violated this requirement when "[d]efendants g[a]ve substantive information to the consumer about the 'prize, product or service' before disclosing that the Defendants intended to sell magazines." Id. at 7. Specifically, it held that "[d]uring the first call, the Defendants reference the consumers' receipt of $1,000 in shopping coupons" and "[a]t no time before this substantive information about the coupons is given do the Defendants disclose that they are selling magazines." Id.

Here, the Commonwealth argues that this Court failed to consider the district court's holding in Magazine Solution that telemarketing disclosures "should be made prior to the time any substantive information about a prize, product, or service is conveyed to the consumer." (Doc. No. 467-1 at 8.) However, unlike the defendants in Magazine Solutions, the AFS Defendants satisfied that requirement. In this case, the Court found that during the first call the script "clearly identifies the purpose of the call, the nature of the goods and services and the offer it is providing to the potential subscriber." (Doc. No. 463 at 54.) Further, in rejecting the Commonwealth's claim that the disclosures were not made "affirmatively," the Court found that the first required disclosure was made "in the initial sentence" and the rest followed shortly thereafter. (Id. at 52.) The critical disclosures were made in the first call, not the second or third call, as occurred in Magazine Solutions.

15

The Commonwealth's citation to Corps. For Character is equally unpersuasive. 116 F. Supp. 3d at 1278. The Commonwealth argues that the Court failed to consider that Corps. For Character "requires that the 'identify of the seller' be a legal name or registered fictitious entity." (Doc. No. 467-1 at 9.) In that case, telemarketers hired by "the Coalition for Quality Children's Media" failed to state that they are calling on behalf of "the Coalition for Quality Children's Media" and instead stated that they were calling on behalf of "Kids First" and "the producers of the Velveteen Rabbit." Corps. For Character, 116 F. Supp. 3d at 1278. The court found these disclosures inadequate because the names given were not "registered trade name[s]" and the disclosure rule "allows consumers to judge the seller to prevent future calls" because "[m]erely stating that the call is on behalf of the producers of "The Velveteen Rabbit" does not give the consumer important information." Id.

The facts in this case are distinguishable from the facts in Corps. For Character because here, the Court found that telemarketers adequately stated their identity in the initial sentence of the "executive script" as "PBP," an acronym for the registered name "Progressive Business Publications." (Doc. No. 463 at 53.) The Commonwealth does not cite to any caselaw that holds that an abbreviated version of a registered fictious name is an inadequate disclosure under the UTPCPL. Further, unlike the names "Kids First" and "the producers of the Velveteen Rabbit" which "do not give the consumer important information," or are even remotely linked to the seller's name, here, "PBP" is an acronym for the seller's name, and Defendants' telemarketers provided much more information to potential subscribers than what telemarketers provided in Corps. For Character. For example, in Defendants' telemarketing script, the telemarketer disclosed the name of the publication in the third sentence. (See e.g., Pl. Ex. 0006 at 6-5) ("My company published a newsletter called Communication Bulletin for Managers & Supervisors and I'm sending out a

couple copies for you to look at. . .") Shortly after, the telemarketer offers to guide the caller to the publication's website or send the subscriber an email with a link to the website. (Id.) The publication website provides the subscriber with significant information. For example, on the landing page of the website for "Environmental Compliance Alert," it provides the phone number for Progressive Business Publications, and at the bottom there is a copyright notation with a reference to "Progressive Business Publications." (Pl. ex. 280.) Thus, the potential subscriber is provided with sufficient information to allow them to make decisions regarding the call. In sum, the facts in this case are readily distinguishable from those in Magazine Solutions and Corps. For Character, and the Court finds, as it did before, these cases to be inapposite to this case.

### 3. The Court Applied the Correct Standard to the Commonwealth's Deception Claims

The Commonwealth next argues that the Court improperly conflated the FTC Act and the UTPCPL by "applying rigid and inapposite FTC Act law to the Commonwealth's deception claims."[8] (Doc. No. 467-1 at 11.) Specifically, it argues that the Court (1) "erroneously strayed far from Pennsylvania's liberal 'capacity to deceive' standard," and (2) strayed from "the long-held precedent that UTPCPL claims do not require a showing of actual harm." (Id. at 16.) However, these claims are unfounded because this Court's findings align with Pennsylvania's "capacity to deceive" standard and UTPCPL precedent.

Turning to the Commonwealth's first argument, it contends that "the Pennsylvania Supreme Court applies a broad, liberal standard for determining whether an act or practice is deceptive under the UTPCPL" and cites "it need only be shown that the acts and practices are capable of being interpreted in a misleading way." Com. by Shapiro v. Golden Gate Nat'l Senior

---

[8] Notably, in its previous argument, the Commonwealth argues that federal law should be used to interpret its state law claim, and now, it argues the opposite.

17

Care LLC, 194 A.3d 1010, 1023 (Pa. 2018).  However, this Court's Opinion aligns with this standard.

In the Opinion, the Court found that "Plaintiffs did not show through a facial evaluation of the script nor through extrinsic evidence that Defendants' offer 'was likely to mislead consumers acting reasonably under the circumstances.'"  (Doc. No. 463 at 49.)  Thus, regardless of whether the standard requires one reasonable consumer to be misled, every reasonable consumer to be misled, or even the possibility of the script being interpreted in a misleading way, Plaintiffs did not prove at trial any of those theories by a preponderance of the evidence.

The Commonwealth's second argument that the Court failed to recognize that "UTPCPL claims do not require a showing of actual harm" is similarly unfounded.  As discussed above, the Court concluded, based on the language of the script and the extrinsic evidence, that "Plaintiffs did not show through a facial evaluation of the script nor through extrinsic evidence that Defendants' offer 'was likely to mislead consumers acting reasonably under the circumstances.'" (Id.)  The Court did not base its conclusion on the insufficiency of the evidence to prove the claim on "actual harm" or any percentage of harm, but based it on the tendency or likelihood to mislead consumers acting reasonably under the circumstances.  Because the Commonwealth did not prove its "capacity to deceive" claim under the UTPCPL, the degree of harm did not come into play.  In short, because no deception was proved, there was no harm.  Accordingly, the Commonwealth's arguments for reconsideration fail and its Motion to Alter or Amend Judgment (Doc. Nos. 467, 468) will be denied.

### IV. CONCLUSION

For the reasons stated above, the arguments raised in Plaintiff Federal Trade Commissions Motion to Alter or Amend Judgment (Doc. No. 466) and Plaintiff the Commonwealth of Pennsylvania's Motion to Alter or Amend Judgment (Doc. Nos. 467, 468) do not offer sufficient

grounds to alter or amend the Court's judgment in this case. As a result, Plaintiffs' Motions (Doc. Nos. 466, 467, 468) will be denied. An appropriate Order follows.