# Exhibit A

**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, Pennsylvania 19103-7300,
UNITED STATES OF AMERICA
www.dlapiper.com

Ilana H. Eisenstein

September 27, 2024
*VIA E-MAIL*

Derek E. Diaz
Federal Trade Commission
1111 Superior Avenue, Suite 200
Cleveland, Ohio 44114
ddiaz@ftc.gov

**Re: Demand to Cease Ongoing Disparagement of American Future Systems, Inc. and Edward M. Satell**

Dear Mr. Diaz:

On behalf of American Future Systems, Inc. ("AFS") and its Chief Executive Officer, Edward M. Satell, we write to kindly request that the Federal Trade Commission ("FTC") take immediate action to cease its ongoing campaign of knowingly false disparagement of AFS and Mr. Satell, including the ongoing publication of various press releases and statements that include false assertions with respect to Mr. Satell and AFS that were disproven at the trial in this matter. The failure of FTC to correct and remove this false and defamatory information even after it was resoundingly rejected by the Court is a continuation of the FTC's substantially unjustified conduct towards AFS and Mr. Satell, detailed in AFS's pending Motion for Fees and Costs Under the Equal Access to Justice Act. *See* ECF No. 478, *FTC v. Am. Future Sys., Inc.*, No. 20-02266 (E.D. Pa. Sept. 3, 2024). If the offending material is not removed from public circulation by Friday, October 4, 2024, we intend to take further action, including, at a minimum, raising this matter with the Honorable Joel H. Slomsky.

As you know, on March 29, 2024, Judge Slomsky entered an opinion and judgment in favor of AFS and Mr. Satell and against the FTC, finding that AFS and Mr. Satell did not engage in deceptive or unlawful conduct as alleged by the FTC. On June 11, 2024, Judge Slomsky denied the FTC's motion for reconsideration, and the Court's order became final on August 12, 2024. Notwithstanding the Court's clear findings that AFS and Mr. Satell did not engage in the alleged conduct, the FTC continues to falsely represent to others through publicly available publications that AFS and Mr. Satell have engaged in deceptive business practices. This inappropriate campaign to tarnish AFS and Mr. Satell's reputations has caused and continues to cause them substantial and ongoing harm and must cease immediately.

By way of example, in a press release dated May 13, 2020, which remains accessible and is publicly available online at https://www.ftc.gov/news-events/news/press-releases/2020/05/ftc-files-complaint-alleging-telemarketers-debt-collectors-worked-together-bilk-organizations, the FTC makes numerous

disparaging statements concerning AFS and Mr. Satell that ***it knows are false***. Those knowingly false and harmful statements include, but are not limited to, the following:

| **Knowingly False & Disparaging Statement FTC Continues to Improperly Publish** | **The Findings of Fact By The Court** |
|---|---|
| AFS and Mr. Satell worked together with debt collectors "To Bilk Organizations for Subscriptions and Books They Never Ordered." | "For more than three decades, AFS published and sold specialty newsletters and books to thousands of businesses and organizations. AFS's telemarketing calls resulted in numerous satisfied customers who renewed their subscriptions year after year." *FTC v. Am. Future Sys.*, No. 20-2266, 2024 U.S. Dist. LEXIS 57396, at *11 (E.D. Pa. Mar. 29, 2024) ("*AFS I*").<br><br>"[T]elemarketers must get an affirmation from the consumer before they can send out the newsletters and the book." *AFS I* at *60. |
| AFS and Mr. Satell operated a "telemarketing scheme" pursuant to which "they charged organizations such as businesses, schools, fire and police departments, and non-profits for books and newsletter subscriptions they never ordered." | "AFS maintained a quality control department which ensured, among other things, that telemarketers adhered to the script and that customers understood and agreed to the subscription terms." *AFS I* at *32.<br><br>"[T]elemarketers must get an affirmation from the consumer before they can send out the newsletters and the book. And sales call recordings that did not contain affirmative consent by the customer to receive AFS's publications were subject to 'quality cancels,' and no newsletters or books were sent." *AFS I* at *60.<br><br>"Plaintiffs had two employees of organizations contacted by telemarketers testify at trial, Kelly Rickard and Daniel Dewey. . . . [T]heir testimony showed that they understood Defendants' offer." *AFS I* at *58. |

DLA PIPER



| | |
|---|---|
| AFS and Mr. Satell "bill businesses and other entities for books and newsletters that were never ordered, and then send them to collections when they don't pay." (quoting Bureau of Consumer Protection Director Andrew Smith). | "[T]he consumer must verbally affirm that they accept the terms of the subscription. They are asked to affirm the terms in three different parts of the script." *AFS I* at *51.<br><br>"Not all of Defendants' subscriptions included a book . . . in addition to the newsletter, but when it did, Defendants' telemarketers received consent from the customer to send the book." *AFS I* at *60. |
| "AFS telemarketers often fail to disclose up-front that they are selling subscriptions, or deny they are selling anything at all." | "AFS used targeted telemarketing practices to reach business and organization managers and executives, tell them about AFS's specialized newsletters and reference guides, and present the subscription terms." *AFS I* at *17.<br><br>"[T]here was no deception in the telemarketing script." *FTC v. Am. Future Sys.*, No. 20-2266, 2024 U.S. Dist. LEXIS 104220, at *9 (E.D. Pa. June 11, 2024) ("*AFS II*").<br><br>"[T]he script's terms were not misleading." *AFS II* at *9.<br><br>"[T]he script explicitly describes to the consumer how the subscription will work." *AFS I* at *49; *see also AFS II* at *13 (same).<br><br>"[T]he script disclosed the material terms and conditions of the offer, including the structure of the subscription, the cost of the subscription and the cancellation policy." *AFS I* at *53.<br><br>"[S]ome scripts mistakenly included language that were explicitly against AFS's policies. . . . For example, one 'Secretary Script' included the question '[a]re you selling something?' and instructed the telemarketer to answer 'No, that's not it . . . ' Senior management at AFS worked hard to find these mistakes and correct them." *AFS I* at *19. |

DLA PIPER



| | |
|---|---|
| | "[T]here were what appears to be a small number of mistakes made in scripts that were corrected by AFS personnel as expeditiously as possible. Given the size of the organization and the large number of telemarketers and employees across many branches, mistakes will inevitably occur, but they were not AFS sanctioned affirmative false statements. Extensive quality control was in place to prevent mistakes." *AFS I* at 48 n.69. |
| "[B]y the end of the call, if an employee agrees to accept what many believe to be free newsletters, AFS enrolls their organization in a negative option program without their consent, under which they are automatically invoiced for annual subscriptions to the newsletters." | "When AFS's telemarketers contacted a potential subscriber, they offered a 'no risk' subscription model. 'No risk' meant that a subscriber would have a sixty-day period to review the publication and the terms of the offer without charge and decide whether to subscribe." *AFS I* at *15.<br><br>"Because AFS did not store subscribers' credit card information, subscribers had to affirmatively opt in every year." *AFS I* at *32.<br><br>"Plaintiffs contend that Defendants omitted material terms of the offer to mislead reasonable consumers into believing that the publication was free. . . . However, Plaintiffs have not proven this 'net impression' by a preponderance of the evidence." *AFS I* at *48.<br><br>"[T]he script does not imply the alleged 'net impression' that consumers would receive publications 'for free at no risk.'" *AFS I* at *49.<br><br>"No reasonable employee with purchasing power of a business or organization would hear this information and believe, as Plaintiffs suggest, that they are receiving free newsletters into perpetuity. Not only does the script explicitly state that they are only receiving the first two newsletters 'at no risk', which is true, it also explains what a consumer can do to cancel the subscription." *AFS I* at *51. |

DLA PIPER



| | |
|---|---|
| | "[T]he Court extensively analyzed all parts of the script and concluded that they were not misleading. . . . the script was not deceptive." *AFS II* at *13 n.4. |
| "[O]rganizations have complained that they were billed for subscriptions they never ordered, and in many cases, never received." | "A small number of customers filed complaints through formal and informal channels." *AFS I* at *34.<br><br>"[A] forensic data expert, testified that out of a random sample of 500 invoices, only 2.4% (12 of 500) contained the statements 'did not order' or 'did not subscribe.'" *AFS I* at *35.<br><br>"Some complaints Plaintiffs offered as exhibits to show deceptiveness merely indicate that consumers understood the offer and sought to cancel after receiving the first two newsletters. Some complaints simply are not relevant to Plaintiffs' deceptiveness claim. Moreover, the evidence at trial proved that Defendants often sought to remedy complaints lodged against them by following up, investigating if there were quality control issues or reworking their systems." *AFS I* at *56.<br><br>"[C]omplaints were made by a very small minority of consumers contacted by telemarketers." *AFS I* at *58. |
| "After six months, for organizations that have not paid for unwanted and unordered subscriptions, the complaint alleges AFS forwards their accounts to a debt collection firm, International Credit Recovery, Inc. (ICR), which then uses false threats to collect the supposed debt." | "AFS' standard cancellation period was 60 days. . . . AFS also had an informal cancellation policy that extended the standard cancellation period. Up to 150 days. . . . While AFS instructed customers to cancel by returning the invoice with the word 'cancel' marked on it, AFS also honored cancellations communicated by other methods, including phone, voicemail, email, fax or letter." *AFS I* at *31. |
| "[F]or more than a decade several organizations, including the Better | "[I]t was shown at trial that these complaints were not reliable." *AFS I* at *37. |

DLA PIPER



| | |
|---|---|
| Business Bureau, have warned consumers about the defendants' deception." | "[E]xpert Margaret Daley, a forensic data expert, testified that these 671 complaints to the BBB represent less than .09% of all orders between January 5, 2015 and March 31, 2020." *AFS I* at *37 n.52. |
| "[T]he defendants' deceptive tactics violate the FTC Act and the Unordered Merchandise Statute." | "Plaintiffs Have Not Proven by a Preponderance of the Evidence that Defendants Have Engaged in Deceptive Conduct." *AFS I* at *42–43.<br><br>"Plaintiffs did not reliably prove that a reasonable consumer or even a 'significant minority' of reasonable consumers were deceived by Defendants' telemarketing calls." *AFS I* at *55.<br><br>"Plaintiffs have failed to prove, under any definition or percentage level, not only that a significant minority were misled by Defendants' telemarketing calls, but also a reasonable consumer was misled." *AFS I* at *56.<br><br>"Plaintiffs have not shown by a preponderance of extrinsic evidence through extrinsic evidence that Defendants' telemarketing calls were misleading." *AFS I* at *58.<br><br>"[B]ecause Plaintiffs did not show through a facial evaluation of the script nor through extrinsic evidence that Defendants' offer 'was likely to mislead consumers acting reasonably under the circumstances', Plaintiffs did not prove by a preponderance of the evidence the second element of a violation of the FTC Act." *AFS I* at *58.<br><br>"Plaintiffs Have Not Proven by a Preponderance of the Evidence that Defendants Violated the Unordered Merchandise Statute." *AFS I* at *58.<br><br>"Plaintiffs argue that the CEEL books were mailed without the prior express consent of the recipient. . . . The |

| | |
|---|---|
| | evidence presented at trial does not support this claim." *AFS I* at *59–60.<br><br>"Plaintiffs were unable to show that Defendants mailed any CEEL books without the expressed consent of recipient. Consequently, Plaintiffs claims under the UMS have not been proven by a preponderance of the evidence." *AFS I* at *60.<br><br>"[N]either the initial CEEL books sent to subscribers nor any CEEL books mailed afterward were mailed in violation of the UMS." *AFS II* at *15. |
| "[T]he FTC is seeking an injunction permanently barring the defendants from the allegedly illegal conduct, as well as monetary relief that may be used to provide refunds to defrauded consumers." | "Judgment will be entered in favor of Defendants American Future Systems, Inc., Progressive Business Publications of New Jersey, Inc., and Edward M. Satell and against Plaintiff Federal Trade Commission on Counts I, II and IV brought under 15 U.S.C. § 45(a) and 39 U.S.C. § 3009 in the Amended Complaint (Doc. No. 43). . . . Because the Court has found in favor of Defendants on all six (6) Counts in the Amended Complaint, Plaintiffs' request for a permanent injunction and money damages under the different statutes will be denied." *AFS I* at *65–66.<br><br>"On Plaintiff Federal Trade Commission's ('FTC') claims in the Amended Complaint (Doc. No. 43) alleging in Count I (Misrepresentation of trial offers in violation of the FTC Act, 15 U.S.C. § 45(a)), in Count II (Failure to disclose material terms and conditions of the offer in violation of the FTC Act, 15 U.S.C. § 45(a)), in Count IV (Violation of the Unordered Merchandise Statute, 39 U.S.C. § 3009), judgment is entered in favor of Defendants American Future Systems, Inc, Progressive Business Publications of New Jersey, Inc., and Edward M. Satell and against the Federal Trade Commission." *AFS I* at *66. |

The above publication is just one example out of many. The FTC is unlawfully, knowingly, and falsely besmirching AFS and Mr. Satell through multiple online publications, including, but not limited to, web and social media posts, press releases, and articles available at the following URLs:

- https://www.ftc.gov/business-guidance/blog/2020/05/risk-no-risk-offers-pose-your-business
- https://www.ftc.gov/news-events/news/press-releases/2023/04/action-ftc-pennsylvania-leads-permanent-ban-debt-collectors-targeted-businesses-non-profits-first
- https://www.ftc.gov/news-events/press-releases/terms/1417
- https://www.ftc.gov/about-ftc/bureaus-offices/regional-offices/press-releases/east-central-region
- https://www.ftc.gov/news-events/news/press-releases/ftc-order-bans-former-pioneer-ceo-exxon-board-seat-exxon-pioneer-deal?page=20
- https://www.ftc.gov/unordered-merchandise
- https://twitter.com/FTC/status/1651286146159091715
- https://www.ftc.gov/legal-library/browse/cases-proceedings/american-future-systems-inc-timeline-item-2020-05-13
- https://www.ftc.gov/legal-library/browse/cases-proceedings/american-future-systems-inc-timeline-item-2021-01-21
- https://www.ftc.gov/legal-library/browse/cases-proceedings/american-future-systems-inc-timeline-item-2023-04-26
- https://www.ftc.gov/news-events/topics/consumer-finance/debt-collection
- https://www.ftc.gov/legal-library/browse/cases-proceedings?field_consumer_protection_topics=1412&page=1
- https://www.ftc.gov/policy/international/ftc-international-monthly/june-2020
- https://www.ftc.gov/legal-library/browse/cases-proceedings/172-3085-american-future-systems-inc

This unlawful campaign by the FTC to tarnish AFS and Mr. Satell's reputation demonstrates that the FTC's substantially unjustified conduct towards AFS and Mr. Satell is ongoing, and it is causing continuing and growing harm to AFS and Mr. Satell. Accordingly, AFS and Mr. Satell request that the FTC promptly remove all false and disparaging statements concerning AFS and Mr. Satell from the FTC's website, its social media, and any other outlets over which it has actual or constructive control. We appreciate the FTC's cooperation in correcting its improper conduct and ask that you confirm in writing by no later than 5:00 p.m. EDT on Friday, October 4, 2024,

that all false and disparaging statements concerning AFS and Mr. Satell have been removed. Otherwise, AFS and Mr. Satell intend to raise this matter with the Court.

In addition, AFS and Mr. Satell expressly reserve all rights to take appropriate action against all responsible parties.

Sincerely,

Ilana H. Eisenstein

cc: Christian M. Capece
Maris K. V. Snell
Conor P. Duffy

United States of America
FEDERAL TRADE COMMISSION
East Central Region

Derek Diaz
Attorney
1111 Superior Avenue, Suite 200
Cleveland, Ohio 44114

ddiaz@ftc.gov
216.263.3421 (office)
216.263.3426 (fax)

October 4, 2024

**Via email**

Ilana H. Eisenstein, Esq.
DLA PIPER LLP (US)
One Liberty Place, Suite 5000
1650 Market Street
Philadelphia, Pennsylvania 19103

**Re: *FTC v. American Future Systems, Inc*. (E.D. Pa. No. 20-2266)**

Dear Ms. Eisenstein:

I received your September 27 letter. You identify various matters the Federal Trade Commission has posted on its official website, and you demand that those postings be removed. As of yesterday, the FTC has updated the information in its electronic legal library to show the Court's recent rulings in this case.[1] The FTC declines to take any further action as a result of your letter.

Sincerely,

Derek Diaz

cc: David H. Marion, Esq.
Morgan S. Birch, Esq.
Marie Bussey-Garza, Esq.
Paul H. Saint-Antoine, Esq.

[1] *See* https://www.ftc.gov/legal-library/browse/cases-proceedings/172-3085-american-future-systems-inc

**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street
Suite 5000
Philadelphia, Pennsylvania 19103-7300,
www.dlapiper.com

Ilana H. Eisenstein
Ilana.Eisenstein@us.dlapiper.com
T 215.656.3351
F 215.606.3351

October 8, 2024
*VIA E-MAIL*

Derek E. Diaz
Federal Trade Commission
1111 Superior Avenue
Suite 200
Cleveland, Ohio 44114
ddiaz@ftc.gov

**Re: Demand to Cease Ongoing Disparagement of American Future Systems, Inc. and Edward M. Satell**

Dear Mr. Diaz:

I am in receipt of your October 4, 2024 letter in which you indicate that the Federal Trade Commission ("FTC") declines to cease its ongoing campaign of knowingly false disparagement of American Future Systems, Inc. ("AFS") and Mr. Satell, including the ongoing publication of various press releases and statements that include false assertions with respect to Mr. Satell and AFS that were disproven at the trial in this matter. Although we appreciate that FTC has posted on ***one*** of the many offending web posts links to the Honorable Judge Joel H. Slomsky's opinions from March 9, 2024, and June 11, 2024, this action does not absolve FTC of its unlawful conduct in continuing to publish knowingly false and defamatory statements concerning AFS and Mr. Satell. As you know, these statements have caused and continue to cause substantial and growing harm to AFS and Mr. Satell.

FTC has not identified any basis for its insistence on continuing to unjustly and falsely besmirch AFS and Mr. Satell by publicizing disparaging information that FTC knows is false—and there is no reasonable basis for FTC's continued improper conduct. Accordingly, we reiterate our request that FTC promptly remove all false and disparaging statements concerning AFS and Mr. Satell from the FTC's website, its social media, and any other outlets over which it has actual or constructive control. Please confirm in writing by no later than 5:00 p.m. EDT on Friday, October 11, 2024, that all false and disparaging statements concerning AFS and Mr. Satell have been removed.

As noted in my earlier letter, we intend to raise this issue with Judge Slomsky, as FTC's unreasonable refusal to end its knowingly false smear campaign evinces the same type of

DLA PIPER



substantially unjustified conduct that FTC employed in its investigation of and litigation against AFS. In addition, AFS and Mr. Satell expressly reserve all rights to take appropriate action against all responsible parties.

Sincerely,

Ilana H. Eisenstein

cc: Christian M. Capece
Maris K. V. Snell
Conor P. Duffy