IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al, | |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 20-2266 |
| AMERICAN FUTURE SYSTEMS, INC. et al, | |
| Defendants. | |

## OPINION

**Slomsky, J.**                                                      **July 30, 2025**

I.     **INTRODUCTION** ............................................................................................. 3

II.    **PROCEDURAL HISTORY** ............................................................................ 3

III.   **ANALYSIS** ........................................................................................................ 4

   A.   **AFS's Total Award will be Reduced for Apportionment
        Between AFS and Edward Satell** ........................................................... 4

   B.   **AFS's Total Award will not be Reduced for Apportionment
        Between Plaintiffs FTC and the Commonwealth of Pennsylvania** .............. 6

   C.   **Attorneys' Fees** ........................................................................................ 8

        1.   White and Williams LLP ................................................................. 10

        2.   DLA Piper LLP .............................................................................. 13

        3.   Faegre, Drinker, Biddle & Reath LLP ........................................... 16

        4.   Eckert Seamans ............................................................................. 18

5.   MoloLamken .................................................................................. 20

6.   Godfrey Kahn .................................................................................. 21

**D.   Expenses** ........................................................................................ 22

1.   Expert Witnesses ............................................................................ 22

2.   Database Hosting, E-Discovery Services and Trial Technology ................................. 28

3.   Special Master Fees ........................................................................ 30

**E.   Costs** ............................................................................................ 32

**F.   Total Fees and Expenses Pursuant to the Equal Access to Justice Act** ..................... 33

## I.    INTRODUCTION

This Opinion is a continuation of the Court's prior Opinion and Order dated May 16, 2025 in which Defendant American Future System ("AFS"), Progressive Business Publications of New Jersey, Inc. ("PBPNJ") and Edward Satell, Chief Executive Officer ("CEO") and sole shareholder of AFS (collectively, "Defendants") Motion for Attorneys' Fees, Expenses and Costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, was granted in part against Plaintiff the Federal Trade Commission (the "FTC").  (See Doc. Nos. 483, 484.)  In that Opinion, the Court found that AFS and PBPNJ were entitled to attorneys' fees and expenses under the EAJA because the FTC's factual and legal position in this case was not substantially justified.  (See id.)  AFS and PBPNJ were also found to be entitled to costs under the EAJA.  However, AFS and PBPNJ were directed to supplement their request for reimbursement for fees, expenses and costs in accordance with the requirements set forth in the EAJA.  (See id.; see also 28 U.S.C. § 2412.)

For the reasons that follow, AFS and PBPNJ will be awarded fees, costs and expenses in the amount of $3,046,291.94.

## II.    PROCEDURAL HISTORY

On September 3, 2024, Defendants AFS, PBPNJ, and Edward Satell filed a Motion for Attorneys' Fees, Expenses and Costs Pursuant to the Equal Access to Justice Act ("EAJA") against the FTC.  (Doc. No. 478).  On May 16, 2025, the Court issued a seventy (70) page Opinion in which it found that AFS/PBPNJ were prevailing parties in this litigation and that the position of the FTC was not substantially justified.[1]  (See generally Doc. No. 483.)  In that Opinion, the Court

---

[1]    PBPNJ engaged in the same telemarketing business as AFS and was created, in part, to comply with the tax laws of New Jersey.  For purposes of this Opinion, the reference to "Defendant AFS" shall cover both AFS and PBPNJ.

directed AFS to address again its requests for attorneys' fees, expenses and costs as authorized to be paid under the EAJA.  (See id.; see also Doc. No. 484.)  On May 30, 2025, AFS filed a Supplemental Memorandum in Support for Attorneys' Fees, Costs and Expenses. (Doc. No. 486.)  On June 13, 2025, the FTC filed its Supplemental Memorandum in Opposition.  (Doc. No. 489.)  On June 20, 2025, AFS filed a Reply.  (Doc. No. 490.)

AFS's Motion for Attorneys' Fees, Expenses and Costs is now ripe for disposition.

## III.    ANALYSIS

Before determining the amount of attorneys' fees, expenses and costs AFS is entitled to, the FTC makes two (2) arguments that must be addressed as to why AFS's total award should be reduced:  (1) Defendant Satell is not an eligible party under the EAJA, and (2) the Commonwealth of Pennsylvania was a co-Plaintiff in this case.  (See Doc. No. 489 at 7-14.)  Each argument will be discussed in turn.

### A.  AFS's Total Award will be Reduced for Apportionment Between AFS and Edward Satell

As mentioned in the Court's prior Opinion, an award for attorneys' fees must be apportioned between eligible and ineligible parties.  In this case, it was previously determined that AFS/PBPNJ are eligible parties, but Defendant Edward Satell is not.  (Doc. No. 483 at 16-25.)

The Third Circuit's decision in Citizens Council of Delaware v. Brinegar, 741 F.2d 584 (3d Cir. 1984) controls.  In Brinegar, the court found that two township plaintiffs, although prevailing in the case, were ineligible for fees under the EAJA.  Id. at 592.  For the other two eligible plaintiffs, a college and civic association, the Third Circuit held that they were still entitled to attorneys' fees.  Id. at 597 ("Our decision that the Townships are not entitled to attorneys' fees does not dispose of the appeal from the order granting fees, or the cross-appeal, because two other

4

plaintiffs (the College and the Civic Association) . . . joined in the petition.")  Brinegar instructed the district court to apportion the fee request for the two eligible plaintiffs.  Id. at 598.

Here, Defendants did not apportion their fee request between the eligible and ineligible parties, that is, between AFS and Edward Satell, respectively.  See Brinegar, 741 F.2d at 597 (finding the fee petition was submitted jointly between eligible and ineligible parties and the attorneys failed to apportion their fee request among the eligible parties).  Therefore, the Court will apply a 20% reduction to Defendants' total award to account for Edward Satell's ineligibility under the EAJA.  This apportionment percentage is appropriate and consistent with the Court's prior findings that AFS was the primary target in this litigation and Satell's involvement in the case related to his conduct on behalf of the corporation.  (See Doc. No. 483 at 24.)

Defendants also contend that because Brinegar held that apportionment among prevailing claims would be inappropriate, this Court should not apportion Defendants' fee award among AFS, PBPNJ and Satell because their defense was similarly interrelated.  (Doc. No. 486 at 22 (emphasis added).)  In this regard, the defendants in Brinegar attempted to argue that because the plaintiffs did not prevail on all claims in their motion for summary judgment, the court should have only awarded fees for the claims that the plaintiffs prevailed on.  Brinegar, 741 F.2d at 594-95.  The Third Circuit rejected this argument and found that all of the claims in the plaintiffs' complaint were "substantially related to each other" and that "the plaintiffs' motion for summary judgment was not grounded on the separate claims for relief asserted in the complaint but rather on the several legal theories on which it ultimately prevailed."  Id.  Here, Defendants prevailed on all claims against Plaintiffs, so that issue in Brinegar is factually inapposite to the facts in issue here.

But Brinegar's holding regarding the eligibility for reimbursement of the parties is clear—fees under the EAJA shall be apportioned between eligible and ineligible parties.  Brinegar, 741

F.2d at 597.  For these reasons, Defendants' total award will be reduced by 20% because Edward

Satell is an ineligible party under the EAJA.  This calculation will be done, <u>infra</u>.

### B.  AFS's Total Award will not be Reduced for Apportionment Between Plaintiffs FTC and the Commonwealth of Pennsylvania

The FTC also avers that any fee award should be apportioned to account for the

Commonwealth of Pennsylvania's participation as a co-Plaintiff in this case.  (Doc. No. 489 at 12.)

A fee award under the EAJA may only be brought against an agency of the United States.

28 U.S.C. §§ 2412(d)(1)(A) & (2)(C).  However, the Third Circuit has noted that "attorney hours

'fairly devoted' to one defendant that also supports the claims against other defendants are

compensable."  <u>Rode v. Dellarciprete</u>, 892 F.2d 1177, 1185 (3d Cir. 1990).

The FTC initially brought this case as the sole Plaintiff against Defendants.  (<u>See</u> Doc. No.

1.)  The FTC then filed an Amended Complaint, adding the Commonwealth of Pennsylvania as a

co-Plaintiff because the state law claims being brought by the Commonwealth were "virtually

identical" to those brought under federal law.  (<u>See</u> Doc. No. 41 at 8-9.)

In this case, the following claims were brought by the FTC against Defendants in the

Amended Complaint:

- **Count I**:  Misrepresentation of trial offers, in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

- **Count II**:  Failure to disclose negative option terms, in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a)(1).

- **Count IV**:  Sending and billing for unordered merchandise, in violation of the Unordered Merchandise Statute, 39 U.S.C. § 3009.

(Doc. No. 43 at ¶¶ 56-63, 67-68.)

And the following claims were brought by the Commonwealth of Pennsylvania against

Defendants:

- **Count V**: Deceptive Misrepresentations, in violation of 73 P.S. § 201-3.

- **Count VI**: Failure to disclose material terms, in violation of in violation of 73 P.S. § 201-3.

- **Count VIII**: Sending and billing for unordered merchandise, in violation of the Unordered Merchandise Statute, 39 U.S.C. § 3009.

(Id. at ¶¶ 69-83, 87-95.)

Based on these claims, the FTC sought a permanent injunction against Defendants for violations of 13(b) of the FTC Act,[2] and the Commonwealth sought a permanent injunction and money damages against AFS Defendants for alleged violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL").

As noted in the Court's Opinion Entering Judgment in Favor of AFS Defendants, "the legal test for deceptive conduct alleged in Counts I, II, V and VI is the same. . . ." (Doc. No. 463 at 36-37 (citing Gregg v. 76 Ameriprise Fin., Inc., 245 A.3d 637, 647 (Pa. 2021); Pennsylvania v. Monumental Props., Inc., 329 A.2d 812, 817–18 (Pa. 1974).) Additionally, the FTC and Commonwealth's claims under the Unordered Merchandise Statute, 39 U.S.C. § 3009, were analyzed together. (See id. at 50.) Therefore, the work performed by Defendants to defend the claims brought either by the FTC or the Commonwealth was the same.

The FTC argues that because the Commonwealth sought both monetary and injunctive relief, whereas the FTC only sought injunctive relief, the FTC would be held responsible for some fees and expenses unrelated to its own case against Defendants. (Doc. No. 489 at 12.) It also submits that Defendants expended additional time pursuing their laches defense and other

---

[2] As previously noted, the FTC was unable to seek monetary damages due to the United States Supreme Court decision AMG Capital Management, LLC v. F.T.C., 593 U.S. 67 (2021), which held that Section 13(b) does not authorize the FTC to receive equitable monetary relief such as restitution or disgorgement.

affirmative defenses against the Commonwealth that were unrelated to the case with the FTC.  (Id. at 12 n.5.)  But, as noted in Brinegar, the Court's task in awarding fees under the EAJA is not to focus on "discrete arguments rather than essential claims" brought by the prevailing party.  Brinegar, 741 F.2d at 595.  Rather, "the district court's task is [ ] to identify the claims that the plaintiff's suit presented, to determine which claims were [un]successful, and apportion the [prevailing parties'] compensation accordingly."  Id.

Here, Defendants were successful on all Counts brought by the FTC and the Commonwealth of Pennsylvania.  These claims were intrinsically intertwined, and while some of the claims for relief were different, or some defenses asserted for certain claims were different, the claims themselves were the same.  And because AFS was tasked with defending all these claims in essentially the same manner, it is entitled to an award as the prevailing party on those claims.

### C. Attorneys' Fees

As noted in the Court's prior Opinion, AFS is entitled to fees and expenses under the EAJA because the FTC's position in this litigation was not substantially justified.  (See Doc. No. 483; see also 28 U.S.C. § 2412(d)(1)(A).)  To award fees and expenses, the EAJA reads in pertinent part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed . . . .

> \*\*\*

> "[F]ees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services

furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C. §§ 2412(d)(1)(B) & (d)(2)(A).

First, AFS seeks $2,954,889.62 for attorney fees. (Doc. No. 486 at 6.) The Court must determine whether the fee request is reasonable. To determine reasonableness, a "thorough and searching analysis" is undertaken and the Court must "go line, by line, by line through the billing records." Evans v. Port Auth. of New Jersey, 273 F.3d 346, 362 (3d Cir. 2001) (internal citations omitted). "Summaries showing the daily activities of the lawyer, as well as 'a general description of the activities provided' have been held sufficiently specific." Moyer v. Colvin, No. 1:23-CV-2137, 2025 WL 221802, at *3 (M.D. Pa. Jan. 16, 2025) (citing Keenan v. City of Phila., 983 F.2d 459, 473 (3d Cir. 1992)). Then, "[t]he [C]ourt must make an initial fee calculation based on the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Id. (quoting Hensley v. Eckerhard, 461 U.S. 424, 433 (1983)).

In its Supplemental Memorandum in Support of its Motion for Attorneys' Fees, AFS submitted a sworn declaration by one of its trial counsel, Ilana Eisenstein, Esquire, attesting to the reasonableness and necessity of the legal services rendered. (Doc. No. 486-1.) The Supplemental Memorandum also contains new timesheets with the total work time performed and billable rates for the six (6) firms that represented AFS in this litigation: (1) White & Williams LLP (Doc. No. 486-2 at 2-209), (2) DLA Piper LLP (id. at 210-277), (3) Faegre, Drinker, Biddle & Reath LLP (id. at 278-307), (4) Eckert Seamans (id. at 308-367), (5) MoloLamken (id. at 368), and (6) Godfrey Kahn (id. at 369). A total of 369 pages of timesheets were submitted. (Id.) A review of each firms' timesheets with a "line-by-line" analysis reveals the following.

### 1. White and Williams LLP

White & Williams LLP had six (6) attorneys, two (2) paralegals, and one (1) litigation support staffer work on this case.[3]  It submitted approximately 210 pages of timesheets from May 2020 through August 2024, billing 5,797.2 hours for a total of $1,436,176.29 in attorneys' fees.[4] (See id. at 2-209.)

Within these entries are detailed descriptions of the work performed, including calls and emails exchanged with co-counsel and clients, analyzing and drafting motions and discovery related matters and time spent preparing for and attending trial.  (Id.)  Notably, David H. Marion, Esquire, and Morgan Birch, Esquire, spent extensive time litigating this case from its infancy, including preparing pre-trial discovery and drafting motions.  Morgan Birch, Esquire, also participated on behalf of Defendants in the fifteen-day trial.  Some examples of the hundreds of entries on their timesheets follow:

- 5/28/2020 David H. Marion, Confer with M. Birch; work on drafting answer and affirmative defenses, 1.3 time billed; (id. at 3.)

- 3/11/2021 David H. Marion, Final review and edits to reply brief re Motion to Dismiss; review FTC's Opposition to our Motion for Leave to Reply on Protective Order Motion, 2.5 time billed; (id. at 12.)

- 6/14/2021, David H. Marion, Revise motion for judgment on the pleadings, 1.9 time billed; (id. at 15.)

---

[3]  White & Williams LLP's employees are identified as:  David H. Marion, Esquire (senior counsel), Morgan Birch, Esquire (associate), Mark E. Nakahara, Esquire (associate), Farzana Islam, Esquire (associate), Natalie B. Molz, Esquire (associate), Joseph Carr, Esquire (associate), Reth Sorn (paralegal), Arthur J. Cautilli, (paralegal) and Ryan C. Penny (litigation support).

[4]  For the reasons described in the Court's prior Opinion, the hourly attorneys' fees will be capped at $252.52, which represents the statutory rate of $125 per hour plus a cost-of-living adjustment. (Doc. No. 483 at 59.)  No attorneys are entitled to an increase in the statutory rate based on special factors.  (See id.)  AFS's timesheet submitted as part of its supplemental fee request complies with this ruling.

- 3/25/2022, David H. Marion, Review latest discovery dispute submissions; review and revise draft requests for admission to FTC and same for Com. PA; planning additional admissions; review draft Interrogatories to FTC and PA AG and revise same; review 30(b)(6) depositions topics draft, 3.4 time billed; (<u>id.</u> at 26.)

- 6/21/2023 David H. Marion, Complete review and edits for entire Motion for Summary Judgment and supporting memo; review multiple emails from co-counsel; call with co-counsel; review new draft containing all changes, 5.8 time billed; (<u>id.</u> at 46.)

- 9/19/2023, David H. Marion, Prep for and attend Pre-trial conference before J. Slomsky, 3.8 time billed; (<u>id.</u> at 51.)

- 9/26/2023, David H. Marion, Prepare for and attend trial, 5.9 time billed; (<u>id.</u>)

- 5/26/2020, Morgan Birch, Review complaint; background research; draft and file entry of appearance; call with E. Satell; call with D. Marion, 5.1 time billed; (<u>id.</u> at 53.)

- 1/27/2021, Morgan Birch, Draft correspondence to FTC re updated response to AFS's Objections and Responses to the FTC's Second Request for Production and send to counsel for FTC; prepare for meet and confer; review background materials; confer with D. Marion, 3.1 time billed; (<u>id.</u> at 62.)

- 4/25/2022, Morgan Birch, Meet and confer with counsel for FTC and counsel for Commonwealth; Supplemental edits to Requests for Production; Correspondence with D. Marion; Finalize and send letter with deposition notice to the Commonwealth and the FTC re 30(b)(6) depositions; Correspondence with co-counsel; Review of correspondence from I. Eisenstein; Review of correspondence from Plaintiffs re alleged outstanding discovery disputes; review of prior correspondence and production preparing for meet and confer call with Plaintiffs per the Court's directive; Review of correspondence with client and follow up regarding same, 7.8 time billed; (<u>id.</u> at 104.)

- 3/28/2023, Morgan Birch, Review of Plaintiffs Joint Motion related to AFS's Objections and Responses to Plaintiffs' Joint RFAs and follow up

correspondence with co-counsel re responding to same, 2.2 time billed; (<u>id.</u> at 156.)

- 6/15/2023, Morgan Birch, Review of FTC declarant depositions for support to Motion for Summary Judg[]ment, deposition summary report, and deposition designations for trial, 6.3 time billed; (<u>id.</u> at 168.)

- 8/2/2023, Morgan Birch, Review of Motion in Limine, collection of exhibits for same, and providing multiple rounds of edits to same, 2.6 time billed; (<u>id.</u> at 175.)

- 8/8/2023, Morgan Birch, Trial preparation including review of exhibits, 1.0 time billed; (<u>id.</u> at 176.)

- 8/15/2023, Morgan Birch, Review of Plaintiffs' objections to AFS' exhibits and preparing rebuttal chart, 2.9 time billed; (<u>id.</u> at 177.)

- 10/6/2023, Morgan Birch, Preparing for, attending trial and trial team meeting after trial, 5.6 time billed.  (<u>Id.</u> at 187.)

The entries show that the White & Williams attorneys, especially David Marion, Esquire, and Morgan Birch, Esquire, worked on this case every week, if not every day, from May 2020 to December 2023.  Additionally, the entries are not broad or excessive based on the hours submitted for each activity.

As for the two (2) paralegals and one (1) litigation support staff, the declaration submitted by Ilana Eisenstein, Esquire, states that their standard market rates are less than the cost-of-living-adjusted statutory maximum of $252.52.  (Doc. No. 482-2 at ¶¶ 23-26.)  Specifically, paralegals Reth Sorn and Arthur J. Cautilli, have a standard market rate ranging from $85 to $180 per hour.  (<u>Id.</u> at ¶¶ 24-25.)  Ryan C. Penny, a litigation support specialist, has a market rate of $180 per hour.  (<u>Id.</u> at ¶ 26.)  The services performed and the rates submitted for the White & Williams LLP employees are sufficient and eligible for an award under the EAJA.

## 2. DLA Piper LLP

DLA Piper LLP had eight (8) attorneys and eleven (11) paralegals work on this case.[5]  It submitted approximately 67 pages of timesheets from May 2021 through October 2024, billing 2,162.3 hours for a total of $546,013.09 in attorneys' fees.  (Id. at 210-277.)  DLA Piper was brought in to represent Defendants in this case approximately one (1) year after the initial Complaint was filed.  Notably, Ilana Eisenstein, Esquire, was instrumental in representing Defendants both pre-trial and as lead trial counsel in this case.  She gave the opening statement at trial on behalf of Defendants and conducted several direct and cross-examinations of FTC witnesses.  Some of her timesheets include the following work product for Defendants:

- 5/14/2021, I. Eisenstein, Conduct legal research concerning potential dismissal arguments, 0.4 time billed; (id. at 211.)
- 6/9/2021, I. Eisenstein, Review and revise motion for judgment on the pleadings, 1.2 time billed; (id.)

- 12/14/2022, I. Eisenstein, Defend 30(b)(6) deposition of Colin Drummond, 8.2 time billed; (id. at 214.)

- 3/9/2023, I. Eisenstein, Deposition preparation with former telemarketing representative Kelly Strosnider via zoom; Deposition preparation with former customer service representative Melissa Schwenk; legal research, 4.6 time billed; (id. at 216.)

- 6/18/2023, I. Eisenstein, Draft section of the motion for summary judgment, 2.8 time billed; (id. at 218.)

- 7/28/2023, I. Eisenstein, Revise and edit draft pretrial memorandum, 1.4 time billed; (id. at 219.)

---

[5]  DLA Piper LLP's employees are identified as:  I. Einsentein, Esquire (partner), P. Karanjia, Esquire (partner), R. Klyman, Esquire (partner), A. Peck, Esquire (senior counsel), J. Feldman, Esquire (of counsel), M. Bussey-Garcia, Esquire (associate), B. Feldman, Esquire (associate), M. Keramisas, Esquire (associate), J. Hudson (paralegal), I. Sarcletti (paralegal), J. Stone (paralegal), M. Lodato (paralegal), S. Brogi (paralegal), R. Chambers (paralegal), J. Messinger (paralegal), D. Elder (paralegal), C. Baker (paralegal), B. Yang (paralegal) and J. Newby (paralegal).

- 9/5/2023, I. Eisenstein, Trial preparation work including review of fact exhibits and prior deposition testimony and review of case law on deception, 2.3 time billed; (id. at 220.)

- 9/20/2023, I. Eisenstein, Individual trial preparation including consideration of each witnesses presentation and critical evidence needed for each, 2.5 time billed; (id. at 221.)

- 9/28/2023, I. Eisenstein, Attend trial including defense of Colin Drummond testimony and preparation of testimony for next day, 10.6 time billed; (id. at 222.)

- 10/4/2023, I. Eisenstein, Attendance at full trial day, including presentation of E. Satell testimony and preparation for additional redirect of E. Satell, A. Goode, 9.5 time billed; (id.)

- 11/19/2023, I. Eisenstein, Review and edits to findings of fact and conclusions of law, 1.3 time billed; (id. at 224.)

- 12/19/2023, I. Eisenstein, Present oral closing arguments before Judge Slomsky and final preparation including finalization of slide deck, outline, and final review of cases and evidence, 7.0 time billed. (Id. at 226.)

Additionally, Marie Bussey-Garcia, Esquire, an associate at DLA Piper, contributed to this case by drafting responses to Plaintiffs' motions to compel, doing research for and drafting Defendants' motion for summary judgment and at times attending trial. (See generally id. at 228-274.) Again, DLA Piper submitted hundreds of detailed entries exemplifying the work performed. These timesheets are similarly as comprehensive as the ones submitted by White & Williams LLP.

As for DLA Piper's eleven (11) paralegals, the declaration submitted by Ilana Eisenstein, Esquire, states that all of their hourly rates were in excess of the statutory minimum but adjusted downward to account for the $252.52 statutory cap. (Doc. No. 486-1 at ¶ 8.) Specifically, Jodi Hudson, Case Manager at DLA Piper, has twenty-five (25) years of experience as a senior paralegal and bills at a rate of $430 per hour. (Id. at ¶ 9.) Additionally, Ivy Sarcletti, Paralegal

14

Specialist, is also a senior paralegal with twenty-five (25) years' experience and bills at a rate of $510 per hour.  (Id. at ¶ 10.)  Joanna Stone, former paralegal, had thirty (30) years' experience as a paralegal and bills at a rate of $386.75 per hour.  (Id. at ¶ 11.)  Michael Lodato, Case Manager, has forty (40) years of experience as a paralegal and bills at a rate of $495 per hour.  (Id. at ¶ 12.) Sarah Brogi, former senior paralegal, had thirteen (13) years' experience as a paralegal and bills at a rate of $460 per hour.  (Id. at ¶ 13.)  Next, Rose Chamber, Case Manager, is a senior paralegal with twenty-five (25) years' experience and bills at a rate of $365 per hour.  (Id. at ¶ 14.)  Jennifer Messinger, senior paralegal, had nine (9) years of experience and bills at a rate of $285 per hour.[6] Denise Elder, senior paralegal, had thirty (30) years' experience and bills at a rate of $395 per hour.  (Id. at ¶ 15.)  Chris Baker, Paralegal Specialist, had seventeen (17) years' experience as a paralegal and bills at a rate of $430 per hour.  (Id. at ¶ 16.)  Lastly, Bonny Yang, Paralegal Specialist, is a senior paralegal with twenty-four (24) years' experience and bills at a rate of $515 per hour.  (Id. at ¶ 17.)  The hourly rates for all paralegals were adjusted downward to the $252.52 statutory cap.  And the services performed and the rates submitted for the DLA Piper paralegals are sufficient and eligible for an award under the EAJA.

---

[6]  Ilana Eisenstein, Esquire, notes in her declaration that "[a] single time entry for 0.4 hours in 2023 was billed for Ms. Messinger at a discounted hourly rate of $225.25 and under a prior last name, Newby.  Because that entry is below the cost-of-living-adjusted statutory maximum of $252.52 per hour, it was billed at the billed rate of $225.25 for purposes of the EAJA Motion.  The timesheets attached as Exhibit A reflect a correction to the billed rate for this single entry. Because the remaining time entries for Ms. Messinger were billed to AFS at her standard, market rate, which exceeds the cost-of-living-adjusted statutory maximum of $252.52 per hour, her remaining hours were billed at this maximum rate for purposes of the EAJA Motion."  (Doc. No. 482-1 at ¶ 15.)

### 3.  Faegre, Drinker, Biddle & Reath LLP

Faegre, Drinker, Biddle & Reath LLP had five (5) attorneys and three (3) paralegals work on this case.[7]  Approximately 29 pages of timesheets were submitted covering from January 2022 through August 2024, billing 1,876.1 hours for a total of $473,752.77 in attorneys' fees.  (Id. at 278-307.)  Notably, Paul Saint-Antoine, Esquire, also lead trial counsel with Ilana Eisenstein, Esquire, questioned witnesses on direct examination of Defendant's case and conducted cross-examination of FTC witnesses.  (See id. at 298-299, some noted infra.)  A review of Faegre Drinker's timesheet reveals, in part, the following:

- 2/5/2023, P.H. Saint-Antoine, Complete work on AFS's responses to FTC interrogatories; e-mail to Morgan Birch; e-mail exchange with Ilana Eisenstein, 2.4 time billed; (id. at 283.)

- 3/8/2023, P.H. Saint-Antoine, Prepare for deposition of FTC declarant (Kelly Rickard); e-mails with co-counsel, 5.3 time billed; (id. at 284.)

- 7/8/2023, P.H. Saint-Antoine, Additional work on summary judgment opposition; email with M. Birch, 6.1 time billed; (id. at 288.)

- 9/9/2023, P.H. Saint-Antoine, Pretrial work, including preparation for direct and cross examination of witnesses; e-mails regarding witness prep sessions, 5.3 time billed; (id. at 290.)

- 10/3/2023, P.H. Saint-Antoine, Attend Day 5 of trial, including cross examination of Kelly Rickard; post-trial discussion with client and co-counsel; work on cross examination preparation, 11.6 time billed; (id. at 291.)

- 10/5/2023 P.H. Saint-Antoine, Attend Day 7 of trial, including cross examination of Rich Diorio, and final prep for cross; post-trial meeting with

---

[7]  Faegre, Drinker, Biddle & Reath LLP's employees are identified as:  P.H. Saint-Antoine, Esquire (partner), J.L. Roach, IV, Esquire (partner), H. Grabbe, Esquire (associate), A.P. Reeve, Esquire (associate), B. Lehman, Esquire (associate), K. Bonsell (paralegal), S.S. Lemmon (paralegal) and E. Andrulyte (paralegal).

client; final preparations for examination of BBB (Andrew Goode), 12.2 time billed; (id.)

- 10/6/2023 P.H. Saint-Antoine, Attend Day 8 of trial, including cross examination of BBB; discussion with client and co-counsel; e-mail with co-counsel, 4.2 time billed; (id.)

- 10/10/2023 P.H. Saint-Antoine, Attend Day 9 of trial, including cross of Susan Grabert; post-trial discussion with client and co-counsel; prep for cross examinations, 10.6 time billed; (id.)

- 10/12/2023, P.H. Saint-Antoine, Attend Day 11 of trial, including cross exam of John Vega; final prep for Vega cross; prepare for direct examinations; post-trial discussion with client and cocounsel; witness prep session; confer with H. Grabbe, 12.7 time billed; (id. at 292.)

- 10/13/2023 P.H. Saint-Antoine, Attend Day 12 of trial, including direct exam of Curt Brown and cross exam of Bill Sasso; post-trial discussion with client and co-counsel, 8.2 time billed; (id.)

Additionally, A.P. Reeve, Esquire, associate at Faegre Drinker, assisted with many pre-trial matters including preparation for depositions, reviewing FTC productions and doing legal research for the motion for summary judgment. (Id. at 301-305.) Likewise, Henry Grabbe, Esquire, an associate, did considerable work on behalf of Defendants in preparation for trial including drafting motions in limine, bench memoranda, and proposed findings of fact and conclusions of law. (Id. at 295-301.) For these reasons, the Faegre Drinker timesheets are similarly complete and detailed.

As for its paralegals, the declaration submitted by Ilana Eisenstein, Esquire, states that "[a]ll three paralegals from Faegre Drinker who assisted on this matter have standard market rates in excess of the cost-of-living-adjusted statutory maximum of $252.52," but were adjusted to the statutory cap. (Doc. No. 486-1 at ¶ 19.) Specifically, Emilija Andrulyte, a senior paralegal at Faegre Drinker, has over twenty (20) years' experience as a paralegal and bills at a rate of $365

17

per hour.  (Id. at ¶ 20.)  Additionally, Kaitlyn Bonsell is also a senior paralegal and bills at a rate of $375 per hour.  (Id. at ¶ 21.)  Lastly, Shaun Lemmon, a paralegal, bills at a rate of $430 per hour.  (Id. at ¶ 22.)  All paralegal rates were adjusted downward in accordance with the $252.52 statutory cap.  And the services performed and the rates submitted for the Faegre Drinker paralegals are sufficient and eligible for an award under the EAJA.

### 4.  Eckert Seamans

Eckert Seamans had fourteen (14) attorneys work on this case.[8]  Approximately 60 pages of timesheets were submitted from October 2020 through July 2023, billing 3,541.20 hours for a total of $480,084.22 in attorneys' fees.  (Id. at 308-367.)  Eckert Seamans was the only co-counsel with White & Williams LLP at the beginning of this case.  Mark Stewart, Esquire, and Susan Yocum, Esquire, worked early on to communicate with and exchange discovery with the FTC.  For example, their timesheets state, in part, as follows:

- 10/26/2020, MARK S. STEWART, CONTACTS RE FTC DISCOVERY, 0.30 time billed; (id. at 309.)

- 11/25/2020, MARK S. STEWART, PREP FOR CALL WITH FTC AND REVIEW DISCOVERY REQUESTS, OBJECTIONS AND LETTERS; RECEIVE FTCS SECOND PRODUCTION; MEET AND CONFER SESSION WITH FTC, 1.30 time billed; (id. at 309.)

- 6/24/2021, MARK S. STEWART, CONTACTS WITH CO-COUNSEL RE MOTION; LETTER FROM FTC; CONTACTS RE DISCOVERY; REVIEW FILINGS RE MOTION AND DISCOVERY, 0.70 time billed; (id. at 314.)

---

[8] Eckert Seamans's employees are identified as:  Mark S. Stewart, Esquire (attorney), John Wertelet, Esquire (attorney), Dough Seftas, Esquire (attorney), Robert K. LarRoche, Esquire (attorney), Scott J. Whitacre, Esquire (attorney), Matthew Ward, Esquire (attorney), Susan A. Yocum, Esquire (attorney), George Pomper, Esquire (attorney), Traci Torrence, Esquire (attorney), Larry Casella, Esquire (attorney), Andrew Bond, Esquire (attorney), Zachary M. Wallack, Esquire (attorney), David C. Hittinger, Jr., Esquire (attorney) and Casey Alan Coyle (attorney).

- 6/6/2022, MARK S. STEWART, CONTACTS WITH PARTIES RE DISCOVERY AND DEPOSITIONS; PREP FOR AND ATTEND STATUS CONFERENCE WITH JUDGE SLOMSKY; CONTACTS WITH E SATELL, 8.60 time billed; (id. at 329.)

- 11/10/2020, SUSAN A YOCUM, CALL TO ED SATELL; REVIEW OF PRIOR DOCUMENT PRODUCTIONS TO PROVIDE RESPONSES TO FTC SECOND DEMAND FOR PRODUCTION, 2.50 time billed; (id. at 354.)

- 1/26/2021, SUSAN A YOCUM, REVIEW OF CONUSUMER COMPLAINTS AND RESPONSES THERETO IN PREPARATION FOR FTC CALL, 2.90 time billed; (id. at 355.)

- 11/2/2021, SUSAN A YOCUM, DRAFTING OF MOTION IN OPPOSITION TO FTC MOTION TO COMPEL, 6.20 time billed; (id. at 356.)

Additionally, several other Eckert Seamans attorneys spent substantial time reviewing documents for privilege:

- 9/2/2022, JOHN WERTELET, REVIEW OF CLIENT DOCUMENTS FOR RELEVANCE, PRIVILEGE AND CONFIDENTIALITY, 8.30 time billed; (id. at 337.)

- 07/01/22, DOUG SEFTAS, REVIEW OF CLIENT DOCUMENTS FOR RELEVANCE AND PRIVILEGE; ANSWER REVIEWER QUESTIONS REGARDING SAME, 6.50 time billed; (id. at 339.)

- 6/30/2022, ROBERT K LAROCHE, REVIEW OF CLIENT DOCUMENTS FOR RELEVANCE, PRIVILEGE AND CONFIDENTIALITY, 8.0 time billed; (id. at 346.)

- 7/9/2022, SCOTT J WHITACRE, REVIEW AND CODE DOCUMENTS, 4.00 time billed; (id. at 350.)

- 7/26/2022, GEORGE POMPER, REVIEW OF CLIENT DOCUMETNS FOR RELEVANCE, PRIVILEGE AND CONFIDENTIALITY, 5.0 time billed; (id. at 359.)

- 8/8/2022, TRACI TORRENCE, REVIEW OF CLIENT DOCUMENTS FOR RELEVANCE, PRIVILEGE AND CONFIDENTIALITY, 8.0 time billed; (id. at 362.)

- 8/25/2022, LARRY CASELLA, REVIEW AND CODE DOCUMENTS, 4.70 time billed.  (Id. at 364.)

These timesheets are similarly adequate for the reasons stated above.  And the work performed was reasonable and necessary given the extensive amount of discovery produced by Defendants in this case, which required a thorough review for privileged and/or confidential information.

### 5.  MoloLamken

MoloLamken had one (1) attorney work on this case.[9]  It submitted one (1) timesheet from January 2022 through April 2023, billing 54.9 hours for a total of $13,863.35 in attorneys' fees. (Id. at 368.)  The partner submitted a detailed timesheet for work, which included a review of transcripts and depositions and participation in team calls.  (See id. (2/7/22, Review emails from co-counsel; review discovery orders and briefing; review Third Circuit cases re: mandamus standard in discovery cases, 1.6 time billed); (4/12/2022, Review and propose revisions to requests for admissions to the FTC and Commonwealth; emails with team; review package of materials re: prior investigation by Pennsylvania AG; review decision by special master re: scope of 30(b)(6) deposition, 3.0 time billed); (4/18/2023, Review emails from client; team call re: strategy; call with M. Birch; review case filings and decisions, 7.0 time billed).)  Though MoloLamken's participation in this litigation was brief, the work and timesheets submitted are sufficient to warrant

---

[9]    The only partner who worked on this case from MoloLamken was Michael Pattillo, Esquire.

payment of its fees.  Therefore, MoloLamken will be awarded fees at the rates it requested for its attorney.

### 6.  Godfrey Kahn

Godfrey Kahn had one (1) attorney work on this case.[10]  It submitted one (1) timesheet from May 2020 through November 2020 billing 19.8 hours for a total of $4,999.90 in attorneys' fees.  (Id. at 369.)  The partner submitted a detailed timesheet which included a review of the FTC's initial Complaint and drafting of the initial Answer.  (See id. (6/4/2020, Analyze draft answer to complaint and additional information related to FTC, 0.7 time billed); (6/12/2020, Analyze proposed strategies about FTC litigation and respond, 0.5 time billed).)   Like MoloLamken, Godfrey Kahn's participation was limited, but they are nevertheless entitled to fees for the work performed.  Therefore, Godfrey Kahn will be awarded fees at the rates it requested for its attorney.

As such, the timesheets submitted by the six (6) firms are reasonable under the EAJA. Each firm provided detailed summaries of the activities of their attorneys and/or support staff. And, as previously noted, the timesheets reflect the work necessary for the successful prosecution of this case.  Therefore, AFS will be awarded attorneys' fees as requested, but with the 20% reduction to the total award to account for the ineligibility of Defendant Satell.[11]

---

[10]  The only partner who worked on this case from Godfrey Kahn was Kevin J. O'Connor, Esquire.

[11]  In AFS's Supplemental Reply, it seeks an additional $7,853.37 in reimbursement for "fees incurred to prepare this Reply, made necessary because FTC disregarded the facts and law in its Response."  (Doc. No. 490 at 8 n.1.)  This request will be denied.

### D.  Expenses

Next, AFS seeks $848,036.77 in expenses.  (Doc. No. 478 at 41; Doc. No. 486 at 5.)  These expenses cover the following:  (1) $598,680.86 for expert witness fees of Margaret Daley, a statistical expert at Charles River Associates, and Harris Devor, an accounting expert at Marcum LLP; (2) $150,228.09 for database hosting and e-discovery services; (3) $41,340 for trial technology services; (4) $55,220.92 for the court-appointed special master; and (5) $2,566.90 for service of subpoenas.  (Id.)  The FTC does not object to the fee for service of subpoenas.  (Doc. No. 489 at 14.)  Each contested expense will be discussed in turn.

### 1.  Expert Witnesses

AFS seeks an award of $598,680.86 for its two (2) expert witnesses.  AFS reduced the rate for its experts to $650 per hour, the same rate billed by Plaintiffs' expert, Erik Lioy, who testified at trial as a rebuttal witness to the testimony of Defendants' expert Harris Devor.  (Id. at 11.)

As noted, in order for the Court to award expenses under the EAJA a party must:

> [S]ubmit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

28 U.S.C. § 2412(d)(1)(B).  The statute specifies that "expenses" include "expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case."  28 U.S.C. § 2412(d)(2)(A).  The EAJA also requires that "no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States."  Id.

Margaret Daley, Vice President of Charles River Associates, was retained by Defendants as a forensic data expert.  She and her team conducted a statistical analysis of sampled telemarketing recordings between AFS and its customer base.  They also reviewed complaints filed against AFS from the Better Business Bureau.  Daley submitted an expert report and supplemental and rebuttal expert report of these findings and testified at trial regarding the same. (Trial Ex. 327, 2244; Doc. No. 435 at 84-119; Doc. No. 541 at 3-66; Doc. No. 452 at 3-109.)  A review of the timesheets submitted by Margaret Daley and the employees of Charles River Associates shows that they are comprehensive and describe with sufficient particularity the work necessary to create the export report and to provide expert testimony in this case.  They are also sufficiently detailed as they state the number of hours billed and a description of the work performed.  (See Doc. No. 486-4, "Ex. D.")  For example, some of the entries show the following work was conducted by Charles River Associates:

- 03-Nov-22, Madelyn Moran, Review of data provided and response to counsel regarding changes, 1.50 time billed; (id. at 6.)

- 15-Nov-22, Peggy Daley, Review data received, emails with counsel; call with MM, .50 time billed; (id.)

- 01-Dec-22, Madelyn Moran, Review of data received and construction of sample, 2.50 time billed; (id. at 9.)

- 15-Dec-22, Michael Clifford, Call to review trial, update new template, analysis with calls, 3.00 time billed; (id.)

- 02-Jan-23, Russo, Cynthia, Call recording analysis, 3.00 time billed; (id. at 13.)

- 12-Jan-23 Dyke, Alexandra, Assisted M. Moran and P. Daley with refinement of search terms, parameters, and methods, .80 time billed; (id.)

- 30-Jan-23, Daley, Peggy, Review Better Business Bureau complaint; data analysis and emails, 2.30 time billed; (id.)

- 02-Feb-23, Verma, Saloni, Conducted analysis across produced call data, 3.00 time billed; (id. at 16.)

- 01-May-23, Peggy Daley, Deposition prep; review call recordings, 5.10 time billed; (id. at 27.)

- 02-Oct-23, Lainey Smith, Demonstrative creation for trial, 0.40 time billed; (id. at 38.)

- 17-Oct-23, Peggy Daley, Prep for testimony and attend trial, 8.00 time billed.  (Id.)

Additionally, Harris Devor, Partner at Marcum LLP, was retained by Defendants as an accounting expert.  Devor and his team reviewed AFS's financial data from 2016 through 2021. Devor also testified at trial as to the financial decline of AFS's telemarketing business during this time period.  (Doc. No. 434 at 4-100; Doc. No. 450 at 3-41.)  A review of the documents submitted on behalf of Marcum LLP show similarly adequate notations of the work performed by Defendants' expert in this case.

The FTC challenges Devor's submission for reimbursement because it contends that the documentation does not include any itemized detail of the work Devor and his colleague performed and "it is impossible to tell what specific work was performed and whether the time spent on particular tasks was reasonable."  (Doc. No. 489 at 17.)

In this regard, Keenan v. City of Philadelphia, 983 F.2d 459 (3d Cir. 1992), which both parties rely upon in their supplemental briefs, is instructive.  In Keenan, the court held that "[a] fee petition should include 'some fairly definite information as to the hours devoted to various general activities' . . . [h]owever, 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" Id. at 473 (quoting Rode, 892 F.2d at 1190).  The Third Circuit found that the plaintiffs submitted

only monthly cumulative totals for one of its attorneys which did not meet the standard for specificity.  For example, the inadequate entries in <u>Keenan</u> appeared as follows:

| Date | Time | Description |
|------|------|-------------|
| 10/01/87 | 15.00 | Conferences; Review. (Cumulative for Month.) |
| 11/01/87 | 20.00 | Conferences; Review; Research. (Cumulative for Month.) |
| 12/01/87 | 20.00 | Conferences; Review. (Cumulative for Month.) |

. . . .

<u>Id.</u> at 473 n. 14.

Here, however, a review of the statements submitted by Harris Devor shows adequately documented expert witness fees in accordance with <u>Keenan</u> and the requirements under the EAJA. (<u>See</u> Doc. No. 486-4 at 40-45, "Ex. C.")  The entries submitted are not like those submitted in <u>Keenan</u>, where the descriptions lack the specificity required to determine whether the expenses were reasonable and necessary.  For instance, one invoice states the following:

> For professional accounting consulting and expert services rendered in connection with the above matter from April 1, through May 8, 2023, including continued analysis of detailed spread sheet presentation prepared by AFS personnel of Results of Operations in Management Format for period 2016-2021, as well as formal financial statements audited or reviewed by Friedman LLP, analysis thereon of individual line item expenses as well as profitability by business segment over time, continued preparation and final issuance of Devor Expert Report signed and delivered on April 7, 2023, preparation for Devor expert deposition on May 3, 2023 as well as attendance at the same, review of opposing expert's Rule 26 report and preparation of Devor comments thereon, attendance at opposing expert's deposition on May 8, 2023, internal team discussions concerning relevant issues and zoom meetings with Counsel and senior management of AFS to discuss all of the above.

(Ex. C at 44.)  Each invoice also contains the total amount of hours performed as well as the rate charged, including a reduction in rate for some entries to the same rate charged by Commonwealth expert Erik Lioy, which was $650 per hour.  (Ex. C at 40.)  These invoices are adequate, and AFS's request to exclude these expenses for lack of specificity is unpersuasive.

The FTC also avers that AFS failed to justify the reasonableness of the fees submitted by the experts. (Doc. No. 489 at 17.) In this regard, the FTC contends that Harris Devor and Margaret Daly had fourteen (14) employees assist them and "AFS provided no information about these individuals' experience or qualifications, apart from a conclusory statement by counsel that the rates are reasonable." (Id. at 17-18.) The Third Circuit, however, rejected a similar argument in Nat. Res. Def. Council, Inc. v. U.S. E.P.A., finding that where the "hours, dates, times and descriptions are included, along with affidavits from experts establishing that the hourly rates charged were below those normally charged by [experts] of comparable experience," the requirements of the EAJA have been satisfied. 703 F.2d 700, 713 (3d Cir. 1983). Here, the declaration submitted by Ilana Eisenstein, Esquire, states that the employees in question are associates in the experts' respective firms and their fees were reduced in order to comply with the same market rate as the Commonwealth's expert, that is, $650 per hour. (Doc. No. 486-1 at 8.) And based upon a review of the documents submitted on behalf of Margaret Daley and Harris Devor, it was reasonable and necessary for AFS to retain these experts to review, analyze, and provide expert testimony in this litigation. Each employee provided the dates, times, descriptions and total amount requested for the work performed on behalf of their respective firms.

Lastly, the FTC objects to an award of the expert witness fees because the United States, i.e., the FTC, did not retain an expert in this litigation. Rather, Erik Lioy was an expert obtained and paid for by the Commonwealth of Pennsylvania, the co-Plaintiff in this case. (Doc. No. 489 at 15.) As such, the FTC contends because it paid no expert witness fees, AFS should not be awarded for the expense of their expert witness. The FTC relies on League of Wilderness Defenders v. Turner, 305 F. Supp. 3d 1156 (D. Or. 2108) and Olympic Marine Servs., Inc. v. United States, 792 F. Supp. 461 (E.D. Va. 1992) in support of their position. (Id.) In Wilderness

<u>Defenders</u>, the government hired one expert who was not paid for his services. 305 F. Supp. 3d at 1175. The court found it could not award the prevailing party's expert witness fees because the government witness's rate was $0 per hour. <u>Id.</u> This case, however, is inapposite here because, as the FTC submits, it did not hire an expert witness and therefore there is no rate paid by the United States to limit AFS's expert witness expenses like there was in <u>Wilderness Defenders</u>. Additionally, in <u>Olympic Marine Servs.</u>, the court stated the following when the United States does not retain an expert witness:

> If the United States paid no experts, then any award to the prevailing party would be contrary to the law because it would be "in excess of the highest rate of compensation for expert witnesses paid by the United States." 28 U.S.C. § 2412(d)(2)(A)(i). Such a case would require the court to choose among the following options: award the full amount of reasonable expert fees requested; award an amount representative of the maximum expert fees the government would have been authorized to expend, if any; or award no expert fees.

792 F. Supp. 461 at 471 n. 19.

When reading the plain language of statute, which again states, "no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States," the EAJA does not preclude a prevailing party from receiving expert witness fees if the United States does not retain an expert in the same case. Instead, it mandates that the expert fees cannot exceed those expended by the United States's expert if one is retained. Nowhere in the EAJA does it disallow expert witness fees because the United States did not obtain an expert themselves in the same case. Therefore, the FTC's argument that AFS is not entitled to expert witness fees for this reason is unpersuasive. Instead, following the logic of <u>Olympic Marine Servs.</u>, the Court will award AFS the full amount of expert witness fees requested.

### 2.  Database Hosting, E-Discovery Services and Trial Technology

Next, AFS seeks $150,228.09 for database hosting and e-discovery services and $41,240 for trial technology services.  (Doc. No. 486 at 12-15, 18-20.)  As noted, expenses under the EAJA include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case."  28 U.S.C. § 2412(d)(2)(A).  The list is not exhaustive.  Patel v. Att'y Gen. of the U.S., 426 F. App'x 116, 118 n.6 (3d Cir. 2011).

Here, AFS states that its database hosting and e-discovery expenses included the "collection, processing (including deduplicating and organizing in searchable platform), hosting and access to searchable user interface, production, and storage of electronically stored information for the purposes of fulfilling AFS's discovery obligations during the litigation."  (Doc. No. 486 at 13-14.)  As such, these services were necessary and essential to the successful resolution of this case.  Stinson v. City of New York, 256 F. Supp. 3d 283, 297 (S.D.N.Y. 2017) (finding "data storage and document ingestion" as a reasonable expense for reimbursement in a class action settlement because they were "necessary to the representation of their clients").  These expenses are also recoverable because they promoted judicial economy by reducing additional attorney billing costs that would have been required in order to collect and process the voluminous discovery produced in this case.  See Norton v. Colvin, No. 3:15-CV-701, 2016 WL 901293, at *3 (M.D. Pa. Mar. 3, 2016) (finding that the conversion of documents using optical character recognition (OCR), a technology that creates a searchable text version of a document, is compensable under the EAJA because "compensation should not be reduced for tasks calculated to make the attorney's work more time efficient in furtherance of his client's cause"); Nat. Res. Def. Council, Inc., 703 F.2d at 713 (holding that the procurement of information through the

Freedom of Information Act was more expeditious than conventional discovery methods and "[a]llowing compensation for such efforts is entirely consistent with the definition of fees and expenses in the [EAJA]").[12]

The FTC argues that these expenses are nothing more than clerical work which is not reimbursable under the EAJA. (Doc. No. 489 at 21.) It is true that "clerical work that can be performed by non-attorneys is not compensable . . . under the EAJA." Torres v. Saul, No. 2:18-CV-1716, 2020 WL 4581825, at *7 (D.N.J. Aug. 10, 2020); United States v. Eleven Vehicles, Their Equip. & Accessories, 200 F.3d 203, 212 n.10 (3d Cir. 2000) ("[T]ime devoted to clerical activities and background research is normally included in overhead and not billable to clients.") However, a review of Third Circuit precedent shows that types of non-compensable "clerical" tasks under the EAJA include one such as preparing and filing documents and other ministerial duties. See Magwood v. Astrue, 594 F. Supp. 2d 557, 562-63 (E.D. Pa. 2009) (finding the preparation of a summons, cover letter, affidavit of service, preparing a table of contents and other filings to be clerical tasks); Norton, 2016 WL 901293, at *2 (holding that "downloading documents is considered a clerical task for purposes of the EAJA, and is therefore not compensable"); Klein v. Colvin, No. 1:14-CV-1496, 2016 WL 3654458, at *4 (M.D. Pa. July 8, 2016) (filing documents, preparing service packets, and completing or reviewing pro hac vice paperwork cannot be reimbursed because they are clerical and overhead tasks).

The e-discovery and database hosting expenses here, however, are not the types of tasks noted above that have been rejected for reimbursement under the EAJA. Rather, these expenses

---

[12] Additionally, in Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 167 (3d Cir. 2012), the Third Circuit found that the scanning and conversion of files were taxable as costs under 28 U.S.C. § 1920(4). Following this same logic, the Court finds that AFS's database hosting and e-discovery services to convert discovery into searchable documents is compensable as an expense under the EAJA.

were necessary to assist AFS's attorneys in sorting and reviewing thousands of pages of discovery materials in an efficient and timely manner.  Therefore, AFS will be reimbursed for database hosting and e-discovery services.

Additionally, AFS will be reimbursed for trial technology expenses.  AFS maintains that these expenses were necessary "for the preparation of demonstrative exhibits that AFS used to present its case at trial, electronic organization of key exhibits and evidence for use at trial, and timely delivery and presentation of same during trial."  (Doc. No. 486 at 18-19.)  These services were used to assist AFS's attorneys in preparation for the fifteen-day trial that took place over the course of one (1) month.  (See, e.g., Doc. No. 486-2 at 221, timesheet 9/15/2023, I. Eisenstein, "Work with trial graphics team to create demonstratives for opening statement and trial."; id. at 9/18/23, I. Eisenstein, "Design and create demonstratives for trial with graphics design team.")  And the fees requested compared to the time spent litigating this case is reasonable given the voluminous number of exhibits, witnesses and testimony produced at trial.

### 3.  Special Master Fees

The last expense AFS seeks is $55,220.92 for special master fees.[13]  (Doc. No. 486 at 16.)  The FTC objects to this expense for two reasons:  (1) special master fees do not fall within the definition of "expenses" under the EAJA; and (2) "the special master fees were largely the result of AFS's discovery intransigence."  (Doc. No. 489 at 23.)

First, courts have held that special master fees may be recoverable as "costs" under the EAJA.  See Saum v. Widnall, 959 F. Supp. 1310, 1311 (D. Colo. 1997) ("The appointment of [a special master] in this case falls within the meaning of § 1920(6), and his compensation is taxable

---

[13]  As noted, AFS also seeks compensation for service of its subpoenas, which is unopposed by the FTC.  (See Doc. No. 489 at 7.)

as an item of costs."); see also Nat'l Org. For the Reform of Marijuana L. v. Mullen, 828 F.2d 536, 545 (9th Cir. 1987) ("We conclude that master's fees, costs, and expenses are 'costs,' and that 28 U.S.C. § 2412(a) does not preclude payment of them by the federal government.").

In Saum, supra, the court held that although special master fees were compensable under 28 U.S.C. § 1920, which is incorporated in the EAJA under 28 U.S.C. § 2412(a), the defendant should not be allocated 100% of the fees because in that case the special master was in the best position to determine how the parties should share in the costs.  Saum, 959 F. Supp. 1310 at 1312.

Here, when this Court appointed the special master, it required the parties to share his fees equally, with fifty percent (50%) being paid by the FTC and the Commonwealth of Pennsylvania, and fifty percent (50%) being paid by AFS Defendants and ICR Defendants.  (Doc. No. 95.)  The special master assisted in resolving approximately six (6) discovery disputes between the FTC and AFS Defendants.[14]  (See Doc. Nos. 122, 141, 145, 167, 302, 328.)  These rulings were generally favorable to the FTC, and AFS has not convinced the Court that its initial apportionment of special master fees warrants reallocation because many of the disputes involved AFS's deficient discovery compliance in this case.[15]  At this point, to award AFS reimbursement for the fees it paid to the special master would be tantamount to the FTC and the Commonwealth of Pennsylvania paying

---

[14]  Some discovery issues did not involve either the FTC and/or AFS Defendants.  For example, the Special Master issued three (3) R&Rs regarding disputes involving Defendants International Credit Recovery, Richard Diorio and Cynthia Powell, the collection agency Defendants, and the Commonwealth of Pennsylvania, that are not relevant to this Motion.  (Doc. Nos. 129, 133, 138, 313.)

[15]  In hindsight, even with many discovery rulings in its favor, the FTC failed to carry its burden to establish any violation of federal law by Defendants.  This failure does not diminish, however, the fact that the Special Master at times had to nudge Defendants to comply with discovery obligations.

31

100% of the special master's fees. Such a result would be unfair given the disputes that led to the appointment of the special master. Therefore, AFS will not be awarded special master fees.

### E.    Costs

Lastly, AFS seeks $60,259.46 in costs. (Doc. No. 486 at 5.) These costs consist of reimbursement for transcripts, printing and copying. (Id.)

Under the EAJA, a prevailing party is also entitled to costs irrespective of whether the government's position was substantially justified. Specifically, the statute reads:

> Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

28 U.S.C. § 2412(a)(1). Section 1920 identifies costs as items such as fees for transcripts, disbursements for printing and witnesses, making copies of materials and docketing fees. See 28 U.S.C. § 1920; see also Kutoloski v. Astrue, No. CIV.A. 08-0075, 2010 WL 199307, at *2 (E.D. Pa. Jan. 20, 2010); Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 166 (3d Cir. 2012). And, most importantly, the FTC has not objected to these costs.[16] (Doc. No. 489 at 7.) Therefore, AFS will be awarded costs.

---

[16] The FTC maintains that AFS did not file a timely Bill of Costs. (Doc. No. 489 at 7.) This argument was raised and rejected in the Court's prior Opinion granting in part AFS's Motion for Attorneys' Fees, Expenses and Costs. (Doc. No. 483 at 68-69.) The FTC acknowledges the Court's ruling in its Supplemental Opposition and does not object to reimbursement of the transcript and printing costs outlined by AFS.

### F. Total Fees and Expenses Pursuant to the Equal Access to Justice Act

To summarize, AFS will be awarded attorneys' fees, expenses and costs under the EAJA. Specifically, AFS will be awarded attorneys' fees and expenses in the form of expert witness fees, e-discovery and database hosting fees, trial technology services and subpoenas. AFS will not be reimbursed for special master fees. AFS will also be awarded costs for transcripts and printing/copying. These fees, expenses and costs in their entirety will be reduced by 20% to account for the ineligibility of Defendant Satell because he is not a "prevailing party" under the EAJA. A breakdown of this award is as follows:

- Attorneys' Fees:                          $2,954,889.62
- Expert Witness Fees:                   $598,680.86
- Database Hosting/E-Discovery Fees:     $150,228.09
- Trial technology services           $41,240.00
- Subpoenas:                             $2,566.90
- Costs                                  $60,259.46

-    <u>20% reduction</u>

**TOTAL AWARD:**                          **$3,046,291.94**

### IV.    CONCLUSION

For the foregoing reasons, AFS's Motion for Attorneys' Fees, Expenses and Costs pursuant to the Equal Justice Act, 28 U.S.C. § 2412 (Doc. Nos. 478, 486) will be granted in part and denied in part. AFS will be awarded attorneys' fees, expenses and costs as outlined above. An appropriate Order follows.